IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| STEPHEN AGNONE & ENZO AGNONE, DOUGLAS & CYNTHIA PORCELLI, BRIDGE POINTE AT JEKYLL SOUND COMMUNITY ASSOCIATION, INC. ET AL., | ) ) ) ) ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | NO.: 2:14-cv-00024-LGW-JEG |
| | ) | |
| v. | ) | |
| | ) | |
| CAMDEN COUNTY, GEORGIA, WILLIS R. KEENE, JR., JIMMY STARLINE, ET AL, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT

COME NOW Stephen Agnone and Enzo Agnone, Douglas and Cynthia Porcelli, Bridge Pointe at Jekyll Sound Community Association, Inc. ("BPJSCA") and all other named party Plaintiffs in the above-styled action, and, by and through the undersigned counsel, file this First Amended Complaint for Damages and Injunctive Relief pursuant to Fed.R.Civ.P. 15(a)(1)(B), and respectfully show the Court as follows:

## I. PARTIES, JURISDICTION AND VENUE

1.

Stephen Agnone and Enzo Agnone are individuals living in Parlin, New Jersey, and own lot 3 in the Camden County residential subdivision known as Bridge Pointe at Jekyll Sound in Waverly, Georgia ("Bridge Point"). By filing the instant action, Stephen Agnone and Enzo Agnone ("Agnone") have consented to and each submit to the jurisdiction of this Court.

2.

Douglas Porcelli and Cynthia Porcelli are individuals living in Middleton, Delaware, and own lot 300 in the Camden County residential subdivision known as Bridge Pointe in Waverly, Georgia. By filing the instant action, Douglas and Cynthia Porcelli ("Porcelli") have consented to and submit to the jurisdiction of this Court.

3.

BPJSCA is a Georgia non-profit corporation authorized to do business in the state of Georgia and has as its members lot owners in a housing subdivision located in Waverly, Camden County, Georgia, known as Bridge Pointe. BPJSCA is controlled by a duly elected Board of Directors and has the power and authority to pursue the claim herein pursuant to the Declaration of Covenants, Conditions & Restrictions for Bridge Pointe at Jekyll Sound recorded on May 3, 2006 in the Camden County Superior Court records ("Declaration"). In addition, BPJSCA is an owner of lot 180 in Bridge Pointe. By filing the instant action, BPJSCA has consented to and submitted itself to the jurisdiction of this Court.

4.

The other two hundred plus (200+) named Plaintiffs are lot owners in Bridge Pointe, members of BPJSCA, and live or have principal offices either outside or within the state of Georgia. By filing the instant action, each of these additional Plaintiffs has consented to and submitted himself, herself or itself to the jurisdiction of this Court for the purpose of this action.

5.

Camden County, Georgia ("CCG") is a political subdivision of the state of Georgia and is a body corporate and politic authorized by and organized pursuant to Article IX, Section I, *et seq.* of the State of Georgia Constitution. CCG is a person within the meaning of 42 U.S.C. §1983 and is

2

amenable to claims under federal and state law.  At all times relevant hereto, CCG and its commissioners, officers, agents, and employees were acting under color of state law.  CCG may be served with process, as provided by law.

6.

Defendant Willis R. Keene, Jr. ("Keene") is a resident of Camden County, Georgia. Keene is a member of the Camden County, Georgia Board of County Commissioners ("Camden County Board of Commissioners"), and has served as a member of the Camden County Board of Commissioners since January 1, 2007.  Keene is named as a Defendant herein in his official and individual capacities.  Keene may be served with process as provided by law.  Keene is subject to the jurisdiction of this Court.  Keene has been a Commissioner on the Camden County Board of Commissioners for District 1, which encompasses the subdivision known as Bridge Pointe.

7.

Defendant Jimmy Starline ("Starline") is a resident of Camden County, Georgia.  Starline is a member of the Camden County, Georgia Board of Commissioners and is serving a term that started sometime in late 2010, and ends December 31, 2014.  Starline is named as a Defendant herein in his official and individual capacities.  Starline may be served with process as provided by law.  Starline is subject to the jurisdiction of this Court.

8.

Defendant Chuck Clark ("Clark") is a resident of Camden County, Georgia.  Clark is a Commissioner on the Camden County Board of Commissioners and is serving a term that started about January 1, 2013, and ends December 31, 2016. Clark is named as a Defendant herein in his official and individual capacities.  Clark may be served with process as provided by law.  Clark is subject to the jurisdiction of this Court.

3

9.

Defendant Tony Sheppard ("Sheppard") is a resident of Camden County, Georgia. Sheppard is a Commissioner on the Camden County Board of Commissioners and is serving a term that started about January 1, 2013, and ends December 31, 2016. Sheppard is named as a Defendant herein in his official and individual capacities. Sheppard may be served with process as provided by law. Sheppard is subject to the jurisdiction of this Court.

10.

Defendant Gary Blount ("Blount") is a resident of Camden County, Georgia. Blount is a Commissioner on the Camden County Board of Commissioners and is serving a term that started about January 1, 2011, and ends December 31, 2014. Blount is named as a Defendant herein in his official and individual capacities. Blount may be served with process as provided by law. Blount is subject to the jurisdiction of this Court.

11.

Defendant David L. Rainier ("Rainier") is a resident of Camden County, Georgia. Rainier was a Commissioner on the Camden County Board of Commissioners between about January 1, 2009, and December 31, 2012, and was Chair of the Board of County Commissioners during such term. At all relevant times, Rainier was a member of the Camden County Board of Commissioners. Rainier is named as a Defendant herein in his official and individual capacities. Rainier may be served with process as provided by law. Rainier is subject to the jurisdiction of this Court.

12.

Defendant Katherine Nisi Zell ("Zell") is a resident of Camden County, Georgia. Zell was a Commissioner on the Camden County Board of Commissioners between January 1, 2007,

4

and December 31, 2010, and was Vice-Chair of the Board of County Commissioners during such term. At all relevant times, Zell was a member of the Camden County Board of Commissioners. Zell is named as a Defendant herein in her official and individual capacities.  Zell may be served with process as provided by law.  Zell is subject to the jurisdiction of this Court.

13.

Defendant Charlene Sears ("Sears") is a resident of Camden County, Georgia.  Sears was a Commissioner on the Camden County Board of Commissioners between January 1, 2007, and December 31, 2010.  Sears is named as a Defendant herein in her official and individual capacities.  Sears may be served with process as provided by law.  Sears is subject to the jurisdiction of this Court.

14.

Defendant Stephen L. Berry ("Berry") is a resident of Camden County, Georgia.  Berry was a Commissioner on the Camden County Board of Commissioners between January 1, 2007 and December 31, 2010.  Berry is named as a Defendant herein in his official and individual capacities.  Berry may be served with process as provided by law.  Berry is subject to the jurisdiction of this Court.

15.

Defendant Stephen L. Howard ("Howard") is a resident of Camden County, Georgia. Howard has been the County Administrator for Camden County, Georgia since before January 1, 2009, and through and until the date of this Complaint.  Howard is named as a Defendant herein in his official and individual capacities.  Howard may be served with process as provided by law. Howard is subject to the jurisdiction of this Court.

5

16.

Defendant O. Brent Green ("Green") is a resident of Camden County, Georgia.   Green has been engaged as the County Attorney for Camden County, Georgia since before January 1, 2009, and through and until December of 2013.   Green is named as a Defendant herein in his official and individual capacities.   Green may be served with process as provided by law.   Green is subject to the jurisdiction of this Court.

17.

Defendant John McDill ("McDill") is a resident of Camden County, Georgia. McDill was the Chairman of the Board of Directors of the Camden County Joint Development Authority. McDill is named as a Defendant herein in his official and individual capacities.   McDill may be served with process as provided by law.   McDill is subject to the jurisdiction of this Court.

18.

Defendant David Keating ("Keating") is a resident of Camden County, Georgia.   Keating was the Executive Director of the Camden County Joint Development Authority.   Keating is named as a Defendant herein in his official and individual capacities.   Keating may be served with process as provided by law.   Keating is subject to the jurisdiction of this Court.

19.

Defendant Scott Brazell ("Brazell") is a resident of Camden County, Georgia. Brazell has been the Public Works Director of Camden County since October 16, 2006.   Brazell is named as a Defendant herein in his official and individual capacities.   Brazell may be served with process as provided by law.   Brazell is subject to the jurisdiction of this Court.

20.

The events giving rise to the causes of action set forth below occurred in Camden County,

6

Georgia. CCG and its current and former identified Commissioners, County Administrator, County Attorney, CCG Joint Development Authority Chairman, CCG Joint Development Authority Executive Director, CCG Public Works Director, and certain officers, agents and employees are jointly and severally liable herein and will hereafter be sometimes referred to as "Camden County Defendants".

21.

For the foregoing reasons, the Court has jurisdiction over the parties, and venue is proper in this Court.

## II. STATEMENT OF FACTS

22.

Plaintiffs restate and re-allege the allegations set forth in paragraphs 1 through 21, above, as if restated and re-alleged in full herein.

23.

Beginning in about 2005, Bridge Pointe at Jekyll Sound, LLC, a subsidiary of Land Resource, LLC, planned to develop Phase I of the subdivision known as Bridge Pointe at Jekyll Sound ("Phase I"), and began accepting lot reservation agreements from prospective lot purchasers.

24.

Phase I involved the development of 550 residential lots and a number of amenity parcels in Waverly, Camden County, Georgia off of Dover Bluff Road.

25.

Bridge Pointe at Jekyll Sound, LLC ("Developer") sought a Certificate of Project Approval from the Director of Planning for CCG without (a) a statement as to the source and adequacy of

7

domestic water supply, and (b) a statement as to the provision of sanitary sewer disposal and treatment capacity and then applicable treatment source.

26.

The CCG Planning Department provided a development permit to the Developer to conduct land-disturbing activity, including tree clearance, clearing and grubbing, grading, land development and project construction, when the Developer had neither provided the required submissions nor complied with the then-effective Uniform Development Code as enacted by CCG.

27.

The Developer was, however, faced with the problem that CCG and its then-development code and related ordinances required not only CCG development approval, but also that the Developer:

(1)     bring the development to a certain stage of completion prior to the commencement or consummation of sales of residential lots; or

(2)     provide surety bonds in the nature of third party guarantees that the requisite facilities would be completed to serve those persons who were buying lots in Phase I at Bridge Pointe.

28.

The Camden County Defendants cooperated with the Developer to provide various planning and zoning concessions and entitlements, such as the opportunity to sell residential lots prior to submitting to CCG any confirmed source for drinking water, water service and waste water treatment at Phase I at Bridge Pointe, which would provide CCG a substantial increase in its ad valorem and other tax revenue and attract residents, builders, businesses and investors.

8

29.

On or about March 10, 2006, Developer provided eight (8) subdivision bonds to the CCG, underwritten by Lexon Insurance Company n/k/a as Bond Safeguard ("Lexon"), being Bond Numbers 1016859 - 1016866 in the cumulative amount of $16,412,467.50 ("Bonds"), insuring that Developer would complete and pay for the development of Phase I, including the roadway, curb and gutter, roadway grading and paving and storm sewer, removal of unsuitable dirt material, lake excavation and construction, waste water disposal system, electrical and telephone conduit, sanitary sewer force main, and off-site roadway improvements.

30.

The Bonds identified the CCG Joint Development Authority as the Obligee; identified the Obligee would be held harmless from any loss, cost or damage by reason of the failure of the Developer to complete the work on Phase I; and identified the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, would complete the improvements or pay the Obligee such amount up to $16,412,467.50 to allow the Obligee to complete the improvements.

31.

CCG accepted the Bonds as satisfactory bonding, and the Developer initiated or continued development of Phase I. These Bonds are dated March 10, 2006, and attached as Exhibit "A".

32.

The Camden County Board of Commissioners had the responsibility for approval as to the surety, the amount of the guarantee, and the conditions and coverage provided pursuant to any surety bonds. These duties of CCG and its Planning Director, addressed in the then-effective CCG development code, are for the benefit of purchasers of residential lots.

9

33.

In late May or June of 2006, the Developer began selling lots in Phase I of Bridge Point to purchasers without having achieved "completion of the improvements" and without providing any of the Camden County Defendants any assurance of or written agreement pertaining to the provision of water service and waste water treatment to or for Phase I of Bridge Pointe.

34.

Not until on or about January 16, 2007, did the Developer enter into an agreement with W&D Investments, LLC a/k/a W&D Utilities ("W&D Utilities") to attain and provide water, water service and waste water treatment to Phase I at Bridge Pointe ("First Water and Sewerage Agreement").

35.

The Bonds were provided by the Developer, as required, and the Developer sold hundreds of lots in Phase I in 2006 and 2007, prior to the completion of most of the development covered by the Bonds and prior to payment to W&D Utilities of amounts payable under the First Water & Sewerage Agreement entered into to obtain water, water service and waste water treatment for Phase I at Bridge Pointe.

36.

As a result of the success of the sale of lots in Phase I, the Developer decided to develop a Phase II of Bridge Pointe and provided AMS Surety Holdings Corporation ("AMS") Bond Number 07-AMS-30142406GA in favor of Camden County Board of Commissioners, in the amount of $4,700,625.00 ("AMS Bond"). The initial AMS Bond dated April 4, 2008, identified bonding coverage not to exceed $7,500,000.00. The Bond Continuation Certificate dated April 3, 2008, insured the completion of Phase II at Bridge Pointe, with terms identifying expiration on

10

April 25, 2009. This conditional term performance bond was accepted by the Camden County Board of Commissioners for CCG.

37.

CCG had the duty to evaluate the solvency and validity of this or any surety providing performance bonds as a guarantee.

38.

By 2008, the development of Bridge Pointe by the Developer had fallen behind schedule and by late 2008, work had stopped on Phase I of Bridge Pointe.

39.

At such time, CCG made no written demand on the Developer to finish Bridge Pointe.

40.

CCG and the Camden County Defendants failed to declare the guarantees of the Developer to be in default and require Lexon to install all improvements in Phase I of Bridge Pointe.

41.

Under the development code in place prior to the new Unified Development Code, effective January 1, 2009, as amended through May 27, 2009, ("UDC"), Section 1231(b)(5) provided: "[I]n those cases where a performance guarantee has been posted and required improvements have either not been installed within the terms of such performance guarantee or have not progressed in a timely manner such that completion within the time period of the guarantee can be achieved, the Board of Commissioners may thereupon declare the guarantee to be in default and require that all improvements be installed regardless of the extent of the construction of said improvements at the time the guarantee is declared in default." (Note: Subsequent to May 27, 2009, the UDC was amended adding certain sections not relevant to this litigation.

11

Those amendments altered the numbering but not the substance of Section 1231, which became Section 1242 in the UDC, January 1, 2009, as amended through April 6, 2010. For this First Amended Complaint, the Plaintiffs refer to portions of the UDC as it is published in January 1, 2009, as amended through May 27, 2009.)

42.

By late 2008, the Developer had sold 393 residential lots in Phase I at Bridge Pointe and 5 residential lots in Phase II of Bridge Pointe.

43.

However, by late 2008, the Developer had completed only a small part of the required development of Phase I at Bridge Pointe covered by the Bonds and no permitted development of Phase II covered by the AMS Bond.

44.

On October 30, 2008, the Developer filed voluntary petitions under Chapter 11, Title 11, of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Middle District of Florida, Orlando Division.   At that time, Bridge Pointe consisted of 697 single family lots, 550 lots in Phase I and 147 lots in Phase II and the amenity parcels.   As of October 8, 2008, approximately 286 lots remained unsold lots in Bridge Pointe - approximately 145 lots in Phase I and 141 lots in Phase II.

45.

On or about February 17, 2009, Jekyll Sound Development Company, LLC acquired approximately 286 lots in Bridge Pointe from the bankrupt estate of the Developer for $3,050,000, which included approximately 145 lots in Phase I, 141 lots in Phase II, a large marsh parcel as part of Phase I, and the land representing the common areas and amenity locations in Phase I and Phase

12

II of Bridge Pointe.

46.

Thereafter, in 2009, Jekyll Sound Development Company, LLC sought favorable treatment from the CCG Tax Assessor's Office and sought reduced value assessments as compared to value assessments on residential lots acquired by lot owners in Phase I and Phase II of Bridge Pointe from the Developer.

47.

By October of 2009, the CCG Board of Equalization determined that the same methodology was not used for valuing all parcels in Bridge Pointe, causing a lack of uniformity in valuation of lots owned by Jekyll Sound Development Company, LLC versus other residential lots.

48.

However, the CCG Board of Equalization ordered the CCG Tax Assessor's Office to use the same formula to value all parcels within Bridge Pointe as used for lots previously owned by the Developer and now owned by Jekyll Sound Development Company, LLC. Camden County Attorney Green attempted to provide legal counsel to a member of the CCG Board of Equalization regarding the propriety of unequal valuation of parcels within Bridge Pointe and the appropriate nature of then used unequal valuations of parcels in Bridge Pointe.

49.

The CCG Tax Commissioner's Office taxed lots previously owned by the Developer and transferred to Jekyll Sound Development Company, LLC, based on the CCG Tax Assessor's digest, at values substantially less than for lots previously sold by the Developer to lot purchasers in the open market. The lots not acquired by Jekyll Sound Development Company, LLC were

13

previously purchased and owned by individual residential lot owners. The CCG Tax Assessor's actions resulted, in part, from counsel from County Attorney Green and resulted in those lot owners paying substantially more in ad valorem taxes than Jekyll Sound Development Company, LLC.

50.

However, Jekyll Sound Development Company, LLC, the entity owned or controlled by some if not all of the same members or investors as BPJS Investments, LLC (which is the entity that received the lots from Jekyll Sound Development Company, LLC and then transferred lots to CCG as security for the Bonds), had remitted a Notice of Appeal styled, *Jekyll Sound Development Company, LLC, Plaintiff/Appellant v. Camden County Board of Assessors, Defendant/Appellee*, being Civil Action File No. 10-V-0054, on November 30, 2009, which indicates a Superior Court filing date of 01/13/10, wherein they alleged that the 2009 assessed values on the lots represented values exceeding the fair market value and assessment value of the lots in Phase I and Phase II of Bridge Pointe.

51.

Then, in late 2009 and in January and February of 2010, MIROBO, LLC, represented by the same individuals, namely Steve Williams and George Potter, sought to provide 243 of these lots (having a collective value of less than $3,000,000.00) as security for the purchase of the Bonds, when the Camden County Unified Development Code required in excess of $32,000,000.00 in security in the form of lots if Camden County and the Camden County Defendants were to comply with the then Camden County Unified Development Code in transferring the Bonds to BPJS Investments, LLC ("BPJSI").

14

52.

In sum, the noted actions of the Camden County Board of Commissioners, the then Camden County Attorney, O. Brent Green, the Camden County Administrator, Stephen L. Howard, and other involved Camden County Defendants were undertaken while Jekyll Sound Development Company, LLC and MIROBO, LLC, and likewise BPJSI, were claiming that the subject collateral, the 243 lots in Bridge Pointe, were worth even less than identified by the Camden County Board of Equalization and, consequently, the Camden County Board of Assessors.

53.

Ironically, immediately after the negotiations relating to the Bonds and the provision of the noted agreement between CCG and BPJSI, Jekyll Sound Development Company, LLC dismissed without prejudice on March 23, 2010, its Notice of Appeal pertaining to the subject lots being part of the security provided by BPJSI as collateral to CCG under the later identified agreement for the Bonds.

54.

In late 2009, an entity known as MIROBO, LLC, represented by Steve Williams and George Potter to be the management company for Jekyll Sound Development Company, LLC, began negotiations with County Administrator Howard and County Attorney Green to access rights to the funds payable by Lexon to the Camden County Joint Development Authority. The offers to these representatives of CCG included the provision of new sureties in the form of Bank Letters of Credit to be provided by a then unformed and unincorporated entity known as BPJSI.

55.

At the December 15, 2009, Regular Meeting of the Camden County Board of

15

Commissioners, Steve Williams, a representative of MIROBO, LLC, gave a presentation to the Board. The Meeting Minutes identify Commissioners Rainier, Keene, Sears and Berry as the Commissioners in attendance, and state that Steve Williams representing Bridge Pointe (even though Steve Williams was not representing Bridge Pointe, but was representing Jekyll Sound Development Company, LLC or perhaps MIROBO, LLC, since BPJSI had not been formed, but certainly not Bridge Pointe) gave the Camden County Board of Commissioners a brief description on the proposal they wished to provide regarding the Bonds for the Bridge Pointe development. Chairman Rainier asked for a consensus of the Camden County Board of Commissioners regarding this proposal and the Minutes identify that a consensus of all Commissioners, including Vice-Chair Zell, was provided (even though the minutes do not identify that Commissioner Zell was present at the meeting). The Minutes also identify a consensus of the Camden County Board of Commissioners to allow County Administrator Steve Howard and County Attorney Brent Green to bring this proposal back for formal action by the Board at the next Regular Meeting

56.

The "Camden County Board of Commissioners Agenda Memorandum dated 01/05/2010 identifies that it was the consensus of the Board to direct the County Administrator and County Attorney to move forward with drafting a resolution addressing the proposed Motion/Recommendations: Approve the Resolution to release the bonds written by Lexon Insurance Company and held by said County for the subdivision known as "Bridge Pointe at Jekyll Sound" in exchange for new Bank Letters of Credit ("New Sureties") to be provided by BPJS Investments, LLC. It was the consensus of the Board to direct the County Administrator and County Attorney to move forward with drafting a Resolution regarding this proposal, since staff recommended approval of this item. It should be noted that this Resolution identifies that it was

16

"Adopted in a lawful assembly by a majority vote of the Board and spread upon the official minutes".

57.

The Board, by and through its Chair, David L. Rainier, executed two Resolutions dated January 5, 2010. The first resolved that the Board agreed to release the Bonds held by CCG for the subdivision known as "Bridge Pointe at Jekyll Sound" in exchange for new Bank Letters of Credit ("New Sureties") to be provided by BPJSI, and identifies the amounts of the Letters of Credit to be provided by the New Sureties based on amounts associated with Stages A - E totaling $4.78 million and a diagram pertaining to Stages A - E and an unsigned General Release pertaining to the Bonds; and the second resolved that CCG agrees to release those certain Bonds now being held by CCG as surety for the infrastructure development of the subdivision known as "Bridge Pointe at Jekyll Sound" in exchange for the providing of new security by BPJSI for the development of the infrastructure for Bridge Pointe, and also resolved to permit release of the Bonds once the escrow agent has received all items of escrow detailed in the agreement between Lexon and BPJSI.

58.

These are conflicting Resolutions, both signed by the Chairman and dated the 5th day of January, 2010, apparently at the direction of County Administrator Howard and/or County Attorney Green. The first and all earlier resolutions required surety in the form of a financial instrument providing guaranty to CCG, and the second apparently authorized acceptance of security without compliance with the CCG UDC.

59.

The second resolution does not attach or include an escrow agreement or indicate that CCG

17

is a party to the negotiations between BPJSI and Lexon for the payment of some amount for the Bonds recognized as surety for the infrastructure development of Bridge Pointe.

60.

At the February 16, 2010, CCG Board Regular Meeting with Commissioners Rainier, Zell, Keene, Sears and Berry in attendance, Boog Potter, speaking on behalf of MIROBO, LLC, explained that the Board of County Commissioners previously passed a Resolution allowing the release of the current bonds in exchange for new sureties to be put in place for the Bridge Pointe at Jekyll Sound Development. He stated that there are now difficulties obtaining new Letters of Credit due to the downturn in the housing market and the current state of the economy.   He stated that at this point they went back and brainstormed possible solutions that could result in a positive outcome.   He explained that there are approximately 243 lots within the development and they are asking tonight for a deed of trust to the County, essentially deeding these lots to the County as collateral to ensure that they follow through with the placement of infrastructure within the development."

61.

Despite the reference by Mr. Potter that "there are approximately 243 lots within the development", Bridge Pointe contained 697 lots that had been sold, and Jekyll Sound Development Company, LLC at the time owned at least 286 lots, which included approximately 145 lots in Phase I and 141 lots in Phase II, along with the marsh parcel and land representing the common areas and amenity locations in Phase I and Phase II of Bridge Pointe.

62.

The Minutes of this Meeting simply state that Commissioner Sears made a motion, seconded by Vice-Chairman Zell, to approve the Bridge Pointe Sureties proposal, as outlined.

18

The Minutes identify that: The **motion carried unanimously**. No other discussion of matters involving Bridge Pointe by the Commissioners took place at the 2/16/10 Regular Meeting of the Commissioners.

63.

The CCG records provided in response to an Open Records Act Request dated 7/29/10 ("7/29/10 Records Requests"), over five (5) months after that meeting, did not include the following: (a) the 1/5/2010 Board Agenda Memorandum; (b) the related first Resolution, signed and attested, requiring New Sureties; (c) an agreement between Lexon and BPJSI; or (d) the earlier referenced General Release by the Camden County Board of County Commissioners as Releasor in favor of Lexon, but did include a letter dated February 9, 2010 to Steve Howard from C. Mark Troutman pertaining to Troutman & Troutman, P.C. serving as escrow agent for the Bridge Pointe transaction between Bond Safeguard (formerly Lexon) and MIROBO. This letter identifies that Mr. Troutman had received, not from County Administrator Howard or County Attorney Green, but from Boog Potter of BPJSI, the CCG Release executed by the Board on or before February 9, 2010, and clearly before the February 16, 2010 Regular Meeting of the Commissioners.

64.

Mr. Troutman asked CCG for the original Bonds (which he apparently did not have), and identified: "once BPJS Investments, LLC provides security satisfactory to the Camden County Board of Commissioners and Lexon has sent the full amount of the negotiated settlement, we will release all items in escrow to the appropriate party".

65.

However, prior to the February 16, 2010 Board Regular Meeting, it appears CCG personnel had prepared a Resolution of the Board to release the bonds held for the development of

19

Bridge Pointe in exchange for new security to be provided by BPJSI.

66.

Ironically, this Resolution had not been passed prior to February 16, 2010, and certainly not prior to February 9, 2010. This Resolution, dated January 5, 2010, identified that "the Board of County Commissioners authorizes the Chair to execute the Release and deliver the Release and the original bonds to the Escrow Agent, Troutman & Troutman, P.C., and the Escrow Agent is hereby authorized to return to Lexon Insurance Company the Release and original bonds to Lexon Insurance Company once the Escrow Agent has received all items of escrow detailed in the Agreement between Lexon Insurance Company and BPJS Investment, LLC"; and yet the Open Records Act requests to the County have not revealed or provided the terms of such escrow agreement among CCG, Lexon, and BPJSI (the "Escrow Arrangement").

67.

A Deed To Secure Debt and Security Agreement, apparently dated the 19th day of February, 2010 ("Agreement"), was executed by Mr. Potter on or about February 19, 2010, on behalf of BPJSI (which was incorporated in Georgia on February 11, 2010), allegedly secured indebtedness of $10,000,000.00 arising from the development of Bridge Pointe and identified the "development shall be completed on or before January 15, 2013, said date being the maturity date of the indebtedness." The Agreement states that BPJSI has "bargained and sold and does hereby bargain, sell, convey and confirm unto" CCG the 243 lots and other property identified on Exhibit "A" to the Agreement.

68.

The CCG responses to, first, the 7/29/10 Records Requests and, later, the 3/23/12 Open Records Act Requests (collectively "Open Records Act Requests") did not include:

20

(i) a signed Agreement;

(ii) a signed letter, dated February 2, 2010, from Boog Potter to Steve Howard referencing the provision of lots as collateral as opposed to $4.78 million in Letters of Credit earlier approved by the Board;

(iii) the Staff Recommendation apparently created 2/11/2010 with final action identified as 2/16/2010 recommending that the sureties they would provide, be a combined collateral of all lots in Stages B - E of the Bridge Pointe subdivision and would also provide a Letter of Credit for $1,000,000.00 prior to the release of the lots in Stage E (which is the last Stage), as opposed to and in lieu of, Letters of Credit in the amount of $4,780,000.00;

(iv) any signed agreement by the CCG or acknowledgement by the Commissioners of the February 2010 letter to Howard from Potter regarding the multi-stage approach to develop of Bridge Pointe; or

(v) any Promissory Note for any referenced amount secured by the Agreement.

69.

The response to the Open Records Act Requests did not include:   (i) any title examination pertaining to ownership of the 243 lots referenced by Mr. Potter at the February 16, 2010, Regular Meeting; or (ii) any evidence that CCG conducted a title exam of the 243 lots sold, conveyed or pledged by BPJSI to CCG, pursuant to the Agreement; or (iii) any evidence that CCG conducted a title exam to determine the number of lots in Bridge Pointe owned by BPJSI prior to the acceptance of 243 lots, pursuant to the Agreement; or (iv) any evidence of a title insurance policy obtained in connection with the security referenced in Exhibit "A" to the Agreement (and such Agreement only attaches the title insurance commitments earlier obtained by Jekyll Island Sound

21

Development Company, LLC).

70.

The responses to the Open Records Act Requests did not include any of the following:  (i) any appraisal of the 243 lots referenced by Mr. Potter at the February 16, 2010, Regular Meeting; or (ii) any appraisal of the 243 lots apparently sold, conveyed and pledged by BPJSI to CCG, pursuant to the Agreement; or (iii) any investigation or assessment of the actual number of lots in Bridge Pointe owned by BPJSI or a related entity at the time CCG was entering into the Agreement with Mr. Potter, acting on behalf of BPJSI.

71.

No documentation or information provided in response to the Open Record Act Requests identified the amount of money received by BPJSI from Lexon as a result of the release of the Bonds by CCG or the tendering of the Bonds for Phase I by CCG to the Escrow Agent in Tennessee for BPJSI.

72.

Neither the Agreement nor any documentation produced in response to the Open Records Act Requests identify any obligation owed by BPJSI to CCG to account for the amount received or the utilization of the funds received upon delivery of the Bonds by CCG that provided the guaranty to CCG for the completion of Phase I at Bridge Pointe.

73.

The Agreement does not identify any ongoing obligations of BPJSI to CCG in achieving the completion of Phase I and Phase II of Bridge Pointe and, consequently, the obligations of BPJSI to CCG, and default of any such obligations did not arise until January 15, 2013.

74.

The Bonds were for only Phase I of Bridge Pointe but the access to the Bond funds afforded BPJSI by the CCG appeared to require BPJSI to develop both Phase I and Phase II.

75.

The Camden County Board of County Commissioners adopted the UDC in 2008, effective January 1, 2009.

76.

Howard, Green and the other Camden County Defendants failed to comply with the UDC and (apparently) tendered the Bonds pertaining to Phase I without receiving adequate surety or adequate and compliant security to guarantee the completed development of Bridge Pointe.

77.

CCG entered into the Agreement with BPJSI prior to requiring BPJSI to take any preliminary steps to comply with the normal requirements of the UDC.

78.

In February of 2010, BPJSI did not possess any means or have a third party agreement in place to provide water, water service and waste water treatment to Bridge Pointe.

79.

Then, by agreement dated on or about October 21, 2010, BPJSI entered into an agreement with W&D Utilities ("W&D Utilities Agreement") to arrange for water, water service and waste water treatment at Bridge Pointe, possibly after receiving funds from the Escrow Agent.

80.

Such W&D Utilities Agreement called for payments by lot owners in Bridge Pointe to W&D Utilities (in addition to payments by BPJSI) for certain impact fees on or before the date

23

such a lot owner (i) obtained a building permit for construction from CCG or (ii) sold his lot to another party.

81.

As part of this W&D Utilities Agreement, BPJSI unilaterally agreed to file an amended Declaration of Covenants, Conditions and Restrictions for Bridge Point at Jekyll Sound ("Declaration") binding all lots within the project with certain restrictions against lot owners without obtaining CCG approval and without notice to, or the consent of, other lot owners in Bridge Pointe.

82.

BPJSI was not the Declarant identified in the Declaration of Covenants, Conditions and Restrictions for Bridge Pointe then of record in CCG and was not identified as the "developer" in any agreement with BPJSCA, the lot owners in Bridge Pointe or CCG and particularly not in the Agreement with CCG.

83.

The lot owners in Bridge Pointe, prior to BPJSI acquiring lots in Bridge Pointe and at the time BPJSI entered into the Agreement with CCG, had no obligation to provide or pay an impact fee to anyone, including the Developer.

84.

Neither BPJSI nor any of the Camden County Defendants (i) disclosed the terms of the W&D Utilities Agreement to the other lot owners in Bridge Pointe, (ii) did not make such agreement a prerequisite to the tendering of the Bonds by CCG to the escrow agent or the receipt by BPJSI of all or part of the proceeds from the Bonds, and (iii) did not make the W&D Utilities Agreement a part of the public record.

24

85.

Such failures on the part of the Camden County Defendants represent a complete disregard for the UDC.

86.

The Agreement, if in fact implemented by CCG, identified that the development of the infrastructure in Bridge Pointe shall be completed on or before January 15, 2013, said date being the maturity date of the indebtedness of $10,000,000.00.

87.

Between February 19, 2010 and January 15, 2013, no development work occurred on either Phase I or Phase II at Bridge Pointe.

88.

The gates to Bridge Pointe remained chained and locked by CCG and BPJSI disallowing any entrance into or out of Bridge Pointe by the lot owners other than BPJSI and representatives of CCG.

89.

Section 1231(b)(5) of the UDC entitled "Failure to Complete Improvement" states: "In those cases where a performance guarantee has been posted and required improvements have either not been installed with the terms of such performance guarantee or have not progressed in a timely manner such that completion within the time period of the guarantee can be achieved, the Board of Commissioners may thereupon declare the guarantee to be in default and require that all of the improvements be installed regardless of the extent of the construction of said improvements at the time the guarantee is declared in default."

90.

Prior to January 15, 2013, it should have been clear to the Camden County Defendants that required improvements had not been installed in harmony with the performance guarantee, and the Board of Commissioners should have declared the guarantee to be in default and required installation of the improvements by BPJSI.

91.

This was the second time that the Camden County Board of Commissioners had failed to act timely and responsibly in connection with Bridge Pointe and effectuate compliance with its then-applicable UDC.

92.

BPJSI defaulted under the W&D Utilities Agreement by early 2012 and CCG took no action under its Agreement to pursue its claims against BPJSI by virtue of its failure to continue its ability to provide water, water service and sewage treatment to Bridge Pointe.

93.

BPJSI failed to pay its CCG real estate ad valorem taxes for the tax years 2011 and 2012, and CCG failed to take any action in connection with the non-payment of such taxes, even though the Camden County Tax Commissioner took action against a number of other lot owners in Bridge Pointe for failure to pay real estate ad valorem taxes.

94.

The responses to the Open Records Act Requests to CCG do not reveal an appraisal, as required by the UDC, of the 243 lots deeded by BPJSI to CCG on or about February 19, 2010, and the value of such security was far less than the estimated $10,000,000 to complete the development of Phase I at Bridge Pointe much less the development of Phases I and II at Bridge Pointe.

26

95.

Section 1231(b)(7)(b)(3) of the UDC entitled "Property Escrow under Performance Guarantee" states: "The developer may offer as a guarantee land or other property, including corporate stocks or bonds, in an amount equal to 200% of the cost, as estimated by the Public Works Director under Section 1231(b)(2)a and approved by the Board of Commissioners, of completing all required improvements."    Section 1231(b)(2)(a) states: "The cost of the improvements to be completed shall be established by the Public Works Director based on a properly executed and binding contract between the developer and the contractor selected to perform the work, and shall be supported by detailed cost estimates prepared by the contractor or a qualified design professional.  Said contract and cost estimates shall be provided to the Public Works Director and deemed to be sufficient to cover the full cost of design, surveying, construction, inspection, preparation of as-built surveys, construction management and all other cost of the improvements."

96.

BPJSI apparently provided CCG 243 of its earlier acquired 287 lots in Bridge Pointe and did not provide as security the amenity parcels throughout Phase I and Phase II of Bridge Pointe.

97.

The market value of the lots offered by BPJSI, and allegedly accepted by CCG as a guarantee of performance, were in an amount less than 200% of the cost of completing all required improvements to finish Phase I and Phase II of Bridge Pointe, and, in fact, in an amount less than $4,000,000.00.

98.

The UDC at Section 1231(b)(7)(b)(3) further states:

27

*A qualified real estate appraiser shall establish the value of any real property so used and, in doing so, shall take into account the possibility of a decline or rise in the value of the property during the guarantee period.  The Board of Commissioners reserves the right to reject the use as collateral of any property when the value of the property is unstable, when the property may be difficult to sell, or when other factors exist which will inhibit the Board of Commissioners from exchanging the property at its claimed value.  When property is so offered as an improvement guarantee, the developer shall:*

    *(i)      Execute an agreement with the escrow agent when it is not the County, instructing the agent to release the property to the County in the case of default.  The agreement shall be placed on file with the Clerk of the Superior Court.*

    *(ii)     File with the Board of Commissioners an affidavit affirming that the property to be used as a guarantee is free and clear of any encumbrances or liens at the time it is put into escrow.*

    *(iii)   Provide that any liens or encumbrances that may be placed on the improvements in the future will not be assessed against the escrow account or become the responsibility of the County under any circumstances.*

    *(iv)   Execute and file with the Board of Commissioners an agreement stating that the property to be placed in escrow as an improvement guarantee will not be used for any other purpose, or pledged as a security in any other matter, until it is released by the authorized agent of the Board of Commissioners.*

99.

The Camden County Defendants did not obtain an appraisal of value from a qualified real estate appraiser of the 243 lots, did not take into account the possibility of a decline or rise in the

28

value of the property during the guarantee period, and did not obtain the amenity parcels which are of important value to the lot owners in any subdivision.

100.

The Camden County Defendants failed during the period up to January 15, 2013, to reject the use of the collateral acting as the guarantee when it became apparent that it would be difficult to sell or other factors existed which would inhibit the Board from exchanging the property at its claimed value.

101.

The Camden County Defendants failed to cause BPJSI to execute an agreement that specifically releases the property acting as the guarantee to the county in the case of default.

102.

The Board failed to obtain an affidavit from BPJSI affirming that the property to be used as a guarantee was free and clear of any encumbrances or liens at the time it was put into escrow or tendered to CCG.

103.

The Camden County Defendants placed no agreement identifying the terms for use of the collateral guarantee with BPJSI independent of the Agreement, on file with the Clerk of the Superior Court of Camden County, Georgia.  This default has continued through and until this day.

104.

The Camden County Defendants failed through January 15, 2013, to require BPJSI to supplement its guarantee by providing additional lots in Bridge Pointe owned by BPJSI as collateral or other assets of BPJSI, including any cash received from the tendering of the Bonds to

29

Lexon.

105.

Following default by BPJSI under the Agreement on January 16, 2013, CCG and the Camden County Defendants have (i) failed to pursue any action on the $10,000,000.00 indebtedness identified in the Agreement and (ii) failed to foreclose on the lots owned by BPJSI pledged as "security" in lieu of the Bonds and collateral to CCG under the Agreement.

106.

The records of CCG responsive to the Open Records Act Requests do not reveal any attempt by CCG to require, in exchange for the Bond and Release, any periodic progress reports, revised cost estimates, an updated or revised final plat for either Phase, construction schedule identifying timely completion of guaranteed improvements, an accounting of funds utilized or funds expended, a schedule for the completion of the Phases I and II, or a requirement for the identification of proceeds on the Bonds allegedly received by BPJSI.

107.

In 2009, the CCG tax commissioner assessment value for each of the 243 lots making up the subject matter of the Agreement between CCG and BPJSI equaled approximately $11,213.00 on average, for a total assessment value of approximately $2,748,816.00

108.

Such valuation is not only less than the cost of completing Phase I, but certainly not equal to 200% of the cost for completing the development of Phase I of Bridge Pointe, much less the development of both Phases I and II of Bridge Pointe.

109.

At no time during the term of the Agreement did CCG seek to cause BPJSI to supplement

30

its guarantee with additional collateral or otherwise pursue its claims against BPJSI for default under the Agreement and any other arrangement pertaining to the completion of Bridge Pointe by BPJSI.

110.

CCG and one or more of the Camden County Defendants violated the requirements of the UDC and have failed to demand remedial measures from BPJSI or its principals as permitted under the UDC.

111.

CCG has assessed and collected real estate ad valorem taxes from the lot owners in Bridge Pointe despite the continuing violations and failures of the Camden County Defendants.

112.

CCG has controlled access to Bridge Pointe and has denied access to the lots owned by the lot owners in Bridge Pointe, other than BPJSI, on a continuing basis since early 2010.

113.

To the best of the Plaintiffs' knowledge and belief, neither CCG nor any of the Camden County Defendants have sought injunctive relief or otherwise demanded completion of the infrastructure of Bridge Pointe, exercised its rights under its own UDC, sued for the $10,000,000.00 referenced in the Agreement, or sought to foreclose on the security in the form of lots owned by BPJSI under the Agreement.

114.

To the best of the Plaintiffs' knowledge and belief, only recently has CCG filed suit against BPJSI and some of its principals and has acknowledged therein that the collateral identified in the Agreement executed February 19, 2010, "provides insufficient security to the plaintiff" (Camden

31

County), and CCG has taken no action to collect any amounts from the AMS Bond.

115.

Collateral accepted by the County pursuant to the Agreement has sharply diminished in value and presently provides little security for the completion of Bridge Pointe.

116.

The Plaintiffs are entitled to be made whole by requiring CCG to complete the infrastructure within Bridge Pointe, according to the final plat for Phase I and final plat for Phase II, or be awarded monetary damages in an amount equal to (1) the face amount of the Bonds and the AMS Bond, less the value of infrastructure completed in Phase I and Phase II at Bridge Pointe; or (2) the cost of completing the infrastructure previously covered by the Bonds and the AMS Bond, in an amount no less than $20,000,000.

117.

If the Plaintiffs had been informed by the Camden County Defendants that the infrastructure was neither installed nor protected with adequate performance assurances and guarantees, the Plaintiffs could have declined to acquire lots or could have insisted that adequate performance guarantees be posted in accordance with the UDC, and the Plaintiffs would not have incurred such a large diminution in value of their respective lots in Bridge Pointe.

118.

If the Camden County Defendants required the posting of a guarantee in the form of surety or security in accordance with their UDC, the Plaintiffs would not have been the victims of such large diminution in value of their lots in Bridge Pointe.

119.

Many of the Plaintiffs are not residents of the state of Georgia.

120.

Most of the Plaintiffs did not discover the actions of CCG, the Camden County Board of Commissioners, or the participating Camden County Defendants until April of 2012, after the second Open Records Act Requests and then, in many cases, not until after the meetings of January 8, 2013, and January 22, 2013, of the Camden County Board of Commissioners following default under the Agreement by BPJSI.

121.

One or more of the Camden County Defendants have acted to conceal from one or more of the Plaintiffs or their representatives, actions taken, or required actions failed to be taken, in connection with the administration of the development of, and bonding accepted for, completion of Bridge Pointe.

122.

Such concealment on the part of one or more of the Camden County Defendants occurred in the early stages of the development of Bridge Pointe, and yet continued to occur in its hiding and disguising its dealings with BPJSI, and has continued through and until the date of this Complaint.

123.

As of this date, the records of Camden County provided to representatives of the Plaintiffs in response to Open Records Act Requests have failed to reveal central actions obligated to be taken by CCG to protect the Plaintiffs, as required under the UDC.

124.

The Plaintiffs have continued to discover actions and inactions of one or more of the Camden County Defendants, in violation of its UDC, ordinances and Georgia law, after engaging legal counsel in March of 2013 to investigate its remedies.

33

### III.   COUNTS OF COMPLAINT -- CAUSES OF ACTION

#### COUNT I
#### (Equitable Relief – *Mandamus* / Injunction)

125.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 124, above, as if restated and re-alleged in full herein.

126.

The Developer provided the Bonds to CCG as an acceptable performance guarantee to insure construction of the infrastructure for Phase I in Bridge Pointe, as a necessary prerequisite to the provision to Developer of preliminary plat approval prior to the completion of such infrastructure.

127.

Pursuant to the UDC, the Camden County Defendants had an obligation to obtain and utilize the benefits from the guarantee acquired pursuant to Section 1231 and complete the improvements covered by the Bonds.

128.

As set forth above, the Camden County Defendants have failed to fulfill obligations owed to the Plaintiffs and CCG has failed to comply with its own UDC, thereby entitling Plaintiffs to *mandamus* under O.C.G.A. § 36-13-10.

129.

As set forth above, the Camden County Defendants forfeited the performance guarantee for Phase I at Bridge Pointe without complying with their obligations under their Development Code in place to protect the Plaintiffs.

34

130.

As set forth above, the Camden County Defendants, particularly Scott Brazell, the Public Works director, and the Camden County Board of Commissioners, as the payee, have failed to fulfill their obligations under the UDC in accepting the AMS Bond for Phase II at Bridge Pointe.

131.

Instead of demanding payment on the Bonds and the AMS Bond, or pursuing its civil remedies to attempt access to the guaranteed funds or causing surety completion of Bridge Pointe, the Camden County Defendants appear to have transferred the Bonds to a third party, BPJSI, without complying with its UDC or otherwise obtaining reasonable or adequate replacement guarantee.

132.

The Camden County Defendants either recklessly or fraudulently released the Bonds to or for the benefit of BPJSI in advance of any updated preliminary plat, any secured water or sewage treatment proven availability, the completion of any work by BPJSI, and without a draw schedule or any legitimate agreement for the completion of the work guaranteed by the Bonds for Phase I at Bridge Pointe.

133.

CCG possessed the Bonds while a default existed and was required to complete, or cause the surety to complete, the infrastructure for Phase I at Bridge Pointe.

134.

CCG possessed the AMS Bond while a default existed and was required to complete, or cause the surety to complete, the infrastructure for Phase II at Bridge Pointe.

35

135.

The Bonds and the AMS Bond provided that, in the event the Developer failed to perform, the surety would pay CCG to complete the development of Phases I and II at Bridge Pointe.

136.

CCG is responsible for completing the infrastructure or paying the costs associated with the completion of same.

137.

Plaintiffs did not know of or consent to the actions of CCG in assigning away or releasing its right to the Bonds.

138.

The Plaintiffs have no adequate remedy at law.

139.

The Camden County Defendants should be compelled to perform their ministerial duties and obligations and comply with the statutory framework set out in its UDC, specifically including, but not limited to, completing the improvements of Phases I and II at Bridge Pointe.

140.

In the event CCG is not compelled to perform its duties, a defect of legal justice would ensue.

141.

The Court should enter a temporary and permanent injunction mandating and compelling the CCG to fulfill its duties and obligations as set forth herein to complete the improvements that were anticipated by the Bonds and AMS Bond.

36

142.

A *writ of mandamus* should issue to compel the CCG to duly perform its duties and obligations under the UDC as well as under the surety bonds provided to CCG.

143.

*Mandamus Nisi* should issue compelling CCG to appear and show cause why *mandamus absolute* should not be entered requiring them to comply with its lawful duties as set forth herein.

## COUNT II
### (Ultra Vires)

144.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 143, above, as if restated and re-allege in full herein.

145.

On or about February 17, 2009, Jekyll Sound Development Company, LLC acquired 285 residential lots and certain other parcels in the Bridge Pointe Subdivision out of the bankruptcy estate of the Developer for $3,050,000.00.

146.

Thereafter, Jekyll Sound Development Company, LLC sought to have the assessed value of the 285 lots reduced as compared to the lots owned by other persons or entities in the Bridge Pointe Subdivision. The Board of Equalization disagreed and ordered the Board of Assessors to deny the request of Jekyll Sound Development Company, LLC for a reduction in the tax value of the 285 lots.

147.

On or about February 18, 2010, Jekyll Sound Development Company, LLC transferred the 285 lots in the Bridge Pointe Subdivision to BPJSI, along with the various amenity parcels

37

associated with Phase I and Phase II of Bridge Pointe. This special warranty deed was not recorded until April 13, 2010.

148.

As of January 1, 2009, Camden County, Georgia enacted the UDC.

149.

The UDC required that the developer provide an acceptable performance guarantee, such as a letter of credit. The UDC also provides alternative improvement guarantees such as bonds and property escrows. Here, the Developer provided the Bonds as performance guarantees.

150.

The alternative means of performance guarantees are set forth in Section 1231(b)(7)(b).

151.

In March of 2006, the Developer provided the Bonds with an identified guarantee value of $16,412,467.50 issued by Lexon in fulfillment of the requirements of the UDC.

152.

On January 5, 2010, CCG passed a resolution providing that it would release the Bonds in exchange for "new security" to be provided by BPJSI (the "Resolution"). The Resolution does not identify the "new security".

153.

In a document entitled "General Release" and dated January 5, 2010, Camden County, Georgia, purportedly released Lexon from any liability including any liability on the Bonds.

154.

On or about February 19, 2010, BPJSI executed the Agreement in favor of Camden County, Georgia purportedly securing a $10,000,000.00 obligation for the development of the

infrastructure at the Bridge Pointe Subdivision (filed in Deed Book 1519, at page 499, Camden County, Georgia land records).

155.

The Resolution, the General Release, the Escrow Arrangement, and the Agreement shall be referred to hereinafter as the "Camden County/Lexon Agreement").

156.

The Agreement lacks the signature of an unofficial witness.

157.

The Agreement purportedly encumbers 243 lots of the 285 lots obtained by BPJSI obtained from Jekyll Sound Development Company, LLC, and does not include the amenity parcels for the subdivision.

158.

As of January and February of 2010, these 243 lots were worth less than $3,000,000.00.

159.

The Camden County/Lexon Agreement fails to satisfy the mandatory requirements set forth in Section 1231 of the UDC (Section 1242 in the later versions of the UDC).

160.

Section 1231(b)(7) of the UDC requires as security either (1) letters of credit equal to 125% of the cost estimate for the improvements; (2) performance or surety bonds equal to 150% of the cost estimate for the improvements; (3) escrowed cash in the amount of 125% of the cost estimate for the improvements; (4) land or other property escrowed in the amount of 200% of the cost estimate for the improvements; or (5) other security equal or superior to the other specified types of guarantees.

39

161.

Under no circumstances does or could the Camden County/Lexon Agreement comply with the mandatory requirements of the UDC set forth in the preceding paragraph.

162.

Camden County, Georgia, lacked the authority to enter into an agreement which did not comply with the mandatory requirements of the UDC set forth in Section 1231(b)(7).

163.

Because Camden County lacked the power and authority to enter into the Camden County/Lexon Agreement, the Camden County/Lexon Agreement is ultra vires and void *ab initio*.

## COUNT III
### (Violation of Civil Rights 28 U.S.C. §1983)

164.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 163, above, as if restated and re-alleged in full herein.

165.

This is an action under the Civil Rights Act of 1871 and 1991, and in particular 42 U.S.C. §1983, to secure redress for the violation, by Defendants, of Plaintiffs' Constitutional and Civil Rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

166.

At all times relevant hereto, Defendants were acting under the color of State law.

167.

Pursuant to the UDC Section 1231(b), the Camden County Defendants had a duty and obligation to require the developers to file an acceptable and valid performance guarantee to insure installation and construction of those improvements required under the UDC.

40

168.

CCG received certain surety bonds that were legitimate, but failed to properly review and evaluate the other surety bond provided to complete Phase II of Bridge Pointe, namely the AMS Bond.

169.

However, in caring for the Bonds naming the Camden County Joint Development Authority as obligee, CCG failed to use them and, basically, gave them away for little or no consideration and without requiring completion of the work covered by the Bonds.

170.

Being the obligee on the Bonds, CCG failed to use the Bond money to complete the improvements covered by the Bonds on the property pertaining to Phase I at Bridge Pointe.

171.

The Plaintiffs justifiably relied on CCG and the Camden County Defendants to comply with the UDC and to utilize funds afforded under the Bonds to complete Phase I at Bridge Pointe or cause Lexon to complete Phase I at Bridge Pointe.

172.

At the time CCG permitted the plat for Phase I at Bridge Pointe to be filed bearing the stamp that the Developer had complied with the requirements of the then-effective development code, the Camden County Defendants did so with full knowledge and understanding that the Plaintiffs and similarly-situated lot purchasers would be relying on such plat and on the Camden County Defendants fulfilling their duties pursuant to the then-effective development code and any subsequent development code, including the UDC.

41

173.

The Plaintiffs justifiably relied upon CCG to comply with and fulfill its obligations under their own then-effective ordinances.

174.

CCG, by failing to complete the improvements and failing to require and oversee others to complete the improvements, and hence, failing to fulfill its duties and obligations under the UDC, the Plaintiffs have been substantially damaged and, in many cases, rendered financially bankrupt.

175.

Through the CCG's acts and omissions, the Plaintiffs have been deprived of their property rights without due process of law in violation of the United States Constitution, specifically including but not limited to the Fifth Amendment thereto, as well as the Constitution of the State of Georgia, Article I, Section I, Paragraphs I and II.

176.

The Plaintiffs are entitled to recover damages based upon one or more of the Camden County Defendants' violation of Plaintiffs' constitutional and civil rights and deprivation of their property rights.

## COUNT IV
### (Common Law Fraud)

177.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 176, above, as if restated and re-alleged in full herein.

178.

At the time the Camden County Defendants released the Bonds and the General Release in exchange for the Agreement, without receipt of a compliant or adequate performance guarantee

42

and without UDC compliance in connection with Phase I or Phase II at Bridge Pointe, one or more of the Camden County Defendants knew their representations to some of the Plaintiffs were false.

179.

One or more of the Camden County Defendants permitted transfer of the Bonds and a General Release in favor of Lexon in exchange for the Agreement and the referenced security at a time when they knew that the value of the security was neither in compliance with the UDC nor of sufficient value to secure performance by BPJSI, and when they also knew individual lot owners, such as the Plaintiffs, would be relying on their false and fraudulent representations.

180.

CCG permitted the fraudulent transfer of the bonds in exchange for the Agreement without UDC compliance for Phase I and Phase II of Bridge Pointe at a time when they intended for individuals and entities, such as the Plaintiffs, to rely on said representations.

181.

The Plaintiffs herein reasonably and detrimentally relied upon honesty, disclosure and good faith on the part of one or more of the Camden County Defendants, and CCG compliance with its applicable ordinances in a manner that was not deceptive, in owning and continuing to own, and paying amounts related to lots at Bridge Pointe.

182.

The Plaintiffs herein reasonably and detrimentally relied upon CCG's compliance with its UDC in forbearing.

183.

One or more of the Camden County Defendants acted to conceal information and actions of certain Camden County Defendants, thereby thwarting action on the part of Plaintiffs and

43

delaying discovery of false or fraudulent actions of one or more of the Camden County Defendants.

184.

Certain Camden County Defendants embarked on a scheme to deceive and prohibit detection of actions by CCG in connection with both the Bonds and in its dealings with BPJSI.

185.

As a direct and proximate result of Plaintiffs' reasonable, yet detrimental, reliance upon false and fraudulent misrepresentations, deceptions and concealments by certain Camden County Defendants, Plaintiffs have been damaged and are entitled to redress.

186.

Plaintiffs are entitled to recover actual, special and compensatory damages and are entitled to recover all such other damages and remedies authorized by Georgia law.

187.

The acts and omissions of one or more of the Camden County Defendants show willful misconduct, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

## COUNT V
### (Negligence)

188.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 187, above, as if restated and re-alleged in full herein.

189.

The Camden County Defendants, through their acts and omissions, were negligent, as set forth in this Complaint.

190.

As a direct and proximate result of the negligence of the Camden County Defendants, Plaintiffs have been damaged and are entitled to redress.

191.

Plaintiffs are entitled to recover actual damages, special damages, general damages and all other damages and remedies authorized by Georgia law.

## COUNT VI
### (Gross Negligence / Reckless Disregard)

192.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 191, above, as if restated and re-alleged in full herein.

193.

One or more of the Camden County Defendants permitted transfer of the Bonds in exchange for the Agreement and referenced security in the form of 243 lots in Bridge Pointe at a time when they absolutely knew that the value of the referenced security was neither of sufficient value to secure performance by BPJSI, nor in compliance with the UDC property escrow section authorizing, as a guarantee in the form of real property, an amount equal to 200% of the costs, as estimated by the Public Works Director and approved by the Camden County Board of Commissioners, for completing all required improvements at Bridge Pointe.

194.

One or more of the Camden County Defendants permitted transfer of the Bonds in exchange for the Agreement and referenced security in the form of 243 lots in Bridge Pointe at a time when they absolutely knew that the individual lot owners in Bridge Pointe would be relying on the Camden County Defendants to comply with the UDC for the protection of lot owners in

45

Bridge Pointe and depended upon CCG to complete Bridge Pointe or cause Lexon to complete Bridge Pointe.

195.

The actions of CCG in carelessly and recklessly providing the General Release in favor of Lexon and tendering the Bonds (for the benefit of BPJSI) earmarked for the completion of the infrastructure in Phase I at Bridge Pointe to a newly-organized entity, without compliant Georgia registered office or registered agent and operated by known out-of-state residents, without sufficient guarantee or security and without any oversight, scheduled draws or reporting requirements, amounted to gross negligence and willful, wanton and reckless disregard of the consequences, entitling the Plaintiffs to damages, as allowed by Georgia law.

196.

By virtue of the knowledge that the affiliate of BPJSI had paid $3,050,000.00 for not just 243 lots, but 288 lots, marshland area with a large dock, and all amenity parcels less than a year before the date of the Agreement and the potential benefits under the Bonds would be up to $16.4 million, indicating that CCG took collateral for less than the amount expected to be received by BPJSI from Lexon on the Bonds, the actions of CCG were so recklessly undertaken as to specifically believe harm could come to one or more of the Plaintiffs, providing convincing evidence that the actions of one or more of the Camden County Defendants amount to willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to the consequences and effects on the Plaintiffs, entitling the Plaintiffs to damages as allowed by Georgia law.

197.

The failure by CCG to foreclose on the property and file suit against BPSI for damages

46

either (i) between February 19, 2010, and January 15, 2013, (when it became apparent that BPJSI was not taking timely or appropriate actions to complete the development of Bridge Pointe) or (ii) immediately after January 15, 2013, (when it became apparent that BPJSI was in default under the Agreement to complete the development of Bridge Pointe), amounts to gross negligence and willful, wanton and reckless disregard for the consequences, entitling Plaintiffs to damages, as allowed by Georgia law.

198.

The actions of CCG in tendering the Bond for the benefit of BPJSI, as opposed to directly accessing the rights of CCG under the Bonds which identify "upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay the Obligee such amount up to the principal amount of this Bond which will allow the Obligee to complete the improvements," exercise such rights under the Bonds to either obtain the funds from Lexon or cause Lexon to complete the improvements, and effectively oversee compliance to effectuate completion of the improvements of Bridge Pointe, amount to gross negligence and willful, wanton and reckless disregard of the consequences, entitling Plaintiffs to damages, as allowed by Georgia law.

## COUNT VII
## (Specific Performance)

199.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 198, above, as if restated and re-alleged in full herein.

200.

CCG entered into the Agreement whereby CCG relied upon BPJSI to complete the development of Bridge Pointe on or before January 15, 2013, or BPJSI would be indebted to CCG

47

and owe CCG $10,000,000.00 for the benefit of the Plaintiffs.

201.

CCG had an obligation to either obtain a proportionate amount of the $16,412,467.50 represented by the Bonds or cause Lexon to complete the improvements so bonded for Phase I at Bridge Pointe.  CCG did neither.

202.

The infrastructure in Phase I at Bridge Pointe remains far from complete, as contemplated in the Final Subdivision Plat of Bridge Pointe—Phase I, signed by David L. Rainer, then-chair of the Camden County Board of Commissioners, on April 7, 2006, as a result of breach of the obligations of CCG to the Plaintiffs.

203.

Despite the opinion letter provided by O. Brent Green, attorney for Camden County, dated February 18, 2010 to David L. Rainer, then-chairman of the Camden County Board of Commissioners, and Steve Howard, Camden County administrator, and BPJSI, dated February 18, 2010, identifying that CCG "is the sole owner of those certain bonds issued by Lexon Insurance Company as surety for the infrastructure improvements for the subdivision known as Bridge Pointe at Jekyll Sound; and the Board of Commissioners is vested with lawful authority to transfer or assign the rights to said Bonds to any third party or to release said Bonds as determined by a majority vote of the Board of Commissioners while assembled in a lawfully-called meeting of the Board of Commissioners," such transfer or assignment by CCG does not relieve it of its obligations to complete the referenced infrastructure improvements for Bridge Pointe.

204.

Plaintiffs have been irreparably harmed by the actions of CCG and should be required to

48

specifically perform its obligations under the Bonds and complete Phase I of Bridge Pointe.

205.

CCG willfully breached its contractual obligations in connection with the Bonds and to the lot owners in Phase I at Bridge Pointe.

206.

The Plaintiffs have no adequate remedy at law and the Court should enter an order requiring CCG to specifically perform said contract by performing its duties and obligations under the UDC.

207.

In the event the contract embodied in the Bonds is not enforced, the Plaintiffs will be irreparably harmed.

208.

In the alternative, Plaintiffs are entitled to recover compensatory damages, reasonable and necessary expenses, and all other available damages and remedies authorized under Georgia law.

## COUNT VIII
### (Nuisance, Inverse Condemnation by CCG)

209.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 208, above, as if restated and re-alleged in full herein.

210.

CCG required surety bonds to name the County as obligee in the event the Developer failed to complete the infrastructure.  CCG required these bonds to protect purchasers of lots like the Plaintiffs.

49

211.

CCG was the named obligee on the bonds that guaranteed payment of the work to be performed.

212.

CCG tendered its surety bonds without any legitimate security.

213.

CCG is liable for the completion of the work referenced in the Bonds in the same way as if CCG failed to obtain bonds as required under the UDC.

214.

CCG takes the place of the Developer and is liable the same as Developer, who had provided the bond, for completion of the work.

215.

CCG released the surety bonds that guaranteed payment for development of Phase I of Bridge Pointe.

216.

The Bonds were in place to guarantee that infrastructure would be built so that lots could be developed, built on and become residences.

217.

CCG, by releasing the bonds, caused Plaintiffs to be unable to make any use of their property.

218.

The actions taken by CCG have caused a prohibition of all use of the Plaintiffs' property, therefore resulting in inverse condemnation, entitling Plaintiffs to damages.

50

219.

CCG failed to act under the surety bonds and, instead, chose to delegate its rights under the Bonds to a third party, with no recourse.

220.

CCG, by giving away the surety rights, caused this property to become useless, unmarketable and virtually worthless.

221.

CCG has now created, and by failing to remedy its actions, maintains a nuisance upon the Plaintiffs' property causing unlawful interference with a right of enjoyment to private property by each Plaintiff.

222.

CCG had control over the Bonds as obligee and should have exercised that control to require infrastructure development.

223.

Instead, CCG chose to give away its control of the Bonds, causing the property to have no guarantee to ensure its improvements, which has caused and maintained a continuous and ongoing nuisance upon each lot at Bridge Pointe.

224.

CCG, by failing to act on its bonds, and giving the Bonds away, has interfered with Plaintiffs' rights to enjoy their property and have caused excessive damages to the value of Plaintiffs' property.

225.

By giving away the surety bonds guaranteeing construction of infrastructure essential to

Plaintiffs' property, CCG's actions have amounted to a taking of the Plaintiffs' property, without just compensation, or inverse condemnation, in violation of Plaintiffs' rights, and entitling Plaintiffs to damages.

226.

Further, CCG has pad-locked gates at Bridge Pointe, thereby denying Plaintiffs access to Plaintiffs' property.

227.

The construction and maintenance of the gates at Bridge Pointe is a trespass onto Plaintiffs' property, a continuing nuisance, and an inverse condemnation of Plaintiffs' property, causing damages to Plaintiffs and entitling Plaintiffs to recover damages.

## COUNT IX
## (Punitive Damages)

228.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 227, above, as if restated and re-alleged in full herein.

229.

The acts and omissions of one or more of the Camden County Defendants show willful misconduct, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, justifying an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

230.

The actions of one or more of the Camden County Defendants demonstrate such willful misconduct and entire want of care, raising the presumption of conscious indifference to the consequences to lot owners in Bridge Pointe, and are so aggravating to justify penalties to deter

Camden County from committing the same or similar actions in the future.

## COUNT X
### (Attorneys' Fees and Expenses of Litigation)

231.

Plaintiffs restate and re-allege the allegations set forth in Paragraphs 1 through 230, above, as if restated and re-alleged in full herein.

232.

The Camden County Defendants have acted in bad faith, been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense, justifying an award of attorneys' fees and expenses of litigation, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiffs pray for the following relief:

a.     That process issue;

b.     That Defendants be served as provided by law;

c.     That the Court enter *mandamus*/injunctive relief compelling the CCG to fulfill its duties and obligations as set forth herein;

d.     That the Court enter an Order finding that the Camden County/Lexon Agreement is ultra vires and void *ab initio*;

e.     That the Court enter an Order finding that the Bonds are in full force and effect;

f.     That the Court enter an Order requiring Lexon and/or its agents to deliver the Bonds to the Court *instanter*;

g.     That Plaintiffs recover all appropriate damages allowable under Georgia law if it is shown that one or more of the Camden County Defendants, acting in concert and conspiracy with each other and principals of BPJSI, unlawfully, illegally and/or tortiously performed acts and/or omissions, as identified herein;

53

h.      That Plaintiffs recover all damages allowable under Georgia law as a result of the Defendants' violation of Plaintiffs' Constitutional and civil rights and deprivation of their property rights;

i.      That Plaintiffs recover all damages allowable under Georgia law including, but not limited to, recovery of special and general damages for fraud, negligence and gross negligence and reckless disregard of duties owed to Plaintiffs;

j.      That Plaintiffs recover damages resulting from the trespass of one or more of the Camden County Defendants, their creation of a nuisance, and their actions resulting in inverse condemnation of Plaintiffs' property;

k.      That Plaintiffs recover punitive damages allowable under Georgia law pursuant to O.C.G.A. § 51-12-5.1 in an amount sufficient to punish and deter CCG Defendants from any such similar conduct in the future;

l.      That the Court compel the CCG Defendants to specifically perform its duties under and pursuant to the contracts embodied in the Bonds and the AMS Bond, as set forth herein;

m.      That Plaintiffs recover attorney's fees and expenses of litigation pursuant to O.C.G.A. §13-6-11;

o.      That Plaintiffs recover all reasonable and necessary expenses as provided by law;

p.      That Plaintiffs have a trial by jury of all issues; and

q.      That this Honorable Court awards such other and further relief as the Court shall deem just and proper.

This 14th day of March, 2014.

Respectfully submitted,

AITKENS & AITKENS, P.C.
Attorneys for Plaintiffs

By:   s/ Robert G. Aitkens
        Georgia State Bar No. 006050
        raitkens@aitkenslawfirm.com

By:   s/ Teresa T. Aitkens
        Georgia State Bar No. 706260
        taitkens@aitkenslawfirm.com

1827 Powers Ferry Road
Building One, Suite 100
Atlanta, Georgia 30339
770 952-4000 / 770 952-4015 (fax)

AUSTIN & SPARKS, P.C.
Attorneys for the Plaintiffs

By:   s/ John B. Austin
        Georgia State Bar No.
        jaustin@austinsparks.com

By:   John T. Sparks, Sr.
        Georgia State Bar No. 669575
        jsparks@austinsparks.com

2974 Lookout Place, N.E., Suite 200
Atlanta, Georgia 30305
404-869-0100 / 404-869-0200 (fax)

| LIST OF EXHIBITS | |
| --- | --- |
| A | List of Named Plaintiffs |
| B | Bonds, dated March 10, 2006 |

# EXHIBIT A

## SCHEDULE "A"

Jitendra Hirani, Stephen Agnone & Enzo Agnone, Carlos E. Calvo & Monica B. Nunez De
Calvo, Yogesh & Ananta Patel, Ralph H. & Tomi J. Petrella, Jamie Barnard & Mark Zurawel,
Francis G. & Valerie D. O'Such, Totally Free, Inc. - Millicent Harwell-Cross, Brian A. Donovan
& Steven Sanders, William D. & Cheryle W. Turner, Rick A. Nutcher, Robert J. & Carol Ann
Bisnett, Yogesh & Ananta Patel, Richard W. & Beryl K. Garrison, Michael B. Randall & Alex S.
Paulson, Robert W. & Roxanne M. Wilhelm, MELS LLC - Michael Danyus, Victor Hernandez
& Maria Vega, Greg E.& Debra E. Murphy, Totally Free, Inc - Millicent Harwell-Cross, Brian
& Laura Donovan, Douglas Porcelli, Daniel D. & Elizabeth B. Veal, Yogesh & Ananta Patel,
John P. & Barbara K. Glish, Marilyn Militscher, Douglas Porcelli, Cassandra R. Bowen &
Joshua S. Bowen, John & Laura Murphey, The Steinebrunner Family Trust - Bernd & Jeanne
Steinebrunner, Lidia Penalver, Dennis H. & Peggy E. Thomas, Michael A. Scott, Equity Trust
Company Custodian FBO - Peter J. Veit - IRA, Vincent & Deborah Salierno, BPJSCA, Inc.,
David Lewis - Sage Brook, LLC, James C. & Kathleen A. Heller, Yogesh & Ananta Patel,
Totally Free, Inc. - Millicent Harwell-Cross, Dale Ellis, James Conrad Bishop, Raymond
Prescottano, Yogesh & Ananta Patel, BCCS Investments, LLP - Len A. Carter, Douglas Porcelli,
Clifford W. & Pamela A. O'Neill, David & Eva Bishop, Edward & Ann Marie Wojciechowski,
John P. & Barbara K. Glish, Douglas Porcelli, James M. Corcoran, Dennis & Janet Vaccaro,
Warren & Eve Mueger, Daniel K. Harshman, Huey Tran Trust - Henry Huey, Palm Tree
Partners, Curt L. Riggen, Robert & Diane Bock, Fiserv & Co. FBO Robert A. Jensen, IRA,
Michael Wagner, Daniel K. Harshman, Totally Free, Inc. - Millicent Harwell, David L. &
Cynthia Joanne Emerson, John Kazmerski, Daniel K. Harshman, John H. & Phyllis A.
Cherry,III, Rosanna D. Clark, NUVIEW IRA Danyus/Cavaliere, Louis Karvonidis, Andy
Rosolinski & Kate Zaluski, Robert L. & Nancy T. English, Jr., Timothy J. & Susan M. Walkley,
Douglas Porcelli d/b/a ADVANTA IRA Properties, Douglas & Cynthia Porcelli, Marla Scherker
& Marcia Rudderman, Doug & Karen Metcalfe, Dean Befumo, Louis Karvonidis, Jeffrey
Wienand, Sr., Douglas Porcelli, Edward J.& Pamela M. Kulik, Barbara Zolli & Lawrence
O'Hern, Jr., Jeff Thomas & E. Kipp Echols, Allen W. & Dorinda J. Barley, Francis G. & Valerie
D. O'Such, Robert & Donna Carpentier & Nicholas Franco, Robert & Donna Carpentier &
Nicholas Franco, NUVIEW IRA - Michael Danyus, JATN FLP - John A. King,, Erminio & Rita
Torello, MELS LLC - Michael Danyus, Bomber Investment - Jack Lupas, MELS LLC -
Michael Danyus, Peter Cavaliere, Frederick W. & Adrienne Heidtman, Dallen & Kimber Atack,
Andrew J. Seeley & Sean P. Seeley, Alfonso DeRosa III, George S. & Georgianne Merlo,
Douglas Porcelli, Totally Free, Inc. - Millicent Harwell-Cross, MELS LLC - Michael Danyus,
MELS LLC - Michael Danyus, Thomas Trainor, Louis Karvonidis, Kristen N. Befumo, John T.
Bollinger, Jr., John H. & Phyllis A. Cherry,III, Dennis H.& Peggy E. Thomas, Patricia Nunez,
Joseph N. & Margie A. Murdock, William & Carol Moorhead, The Ruff Trust - Heidi Ruff,
Douglas & Joanne Windsor, Jamie Barnard & Mark Zurawel, Walter W. Hoff & Jeanette S.
Ray, Douglas Porcelli, Robert & Cindy Hileman, Joseph E. & Jean Flynn, John P. & Barbara K.
Glish, Catherine Cruz, Richard E. & Sally Mumford, Louis Karvonidis, Allen M.& Joan M.
Seeley, Louis Karvonidis, Joseph & Susan Shanahan, James & Jacqueline Pace, Eric & Lai-Fong
Lee Trust - Eric Lee, MELS LLC - Michael Danyus, Arif Suwandi & Jennifer Jung, Yogesh &
Ananta Patel, Nicole Lam, Michael B. Sullivan, Pamela Manos Petkas & Andrew Michael
Petkas & NeilArthur Kain, III & Kathy Penn & Hugh Penn, Kevin & Emily Vogt, Philip C. &
Aylin M. Krebs, Sena Properties, LLC - Sarita Hirani/Trustee, Ching-Kang & Yu-Jiun Chen,
David L.& Harriet T. Russell, Michael & Carol O'Connell, Neil Patel, Kenneth & Iva Kringle,

Yogesh & Ananta Patel, David Preston Bush, Richardson/Wright Properties LLC - B. David Richardson, Bradley S. Shepherd, B. David Richardson, Joseph B. Manderson, Aitkens Realty Co. II, LLC - John L. Aitkens, Jr., Richard M. Taylor, Mark W. Carson, D. B. Richardson, Jr., Freedom Property Group II, LLC - Moody Williams, Villm and Associates - Deborah Villm, Paul B. & Tammy R. Roy, Joseph P. & Marilyn A. Chanley, Dana K. & Jeanette E. Huie, Moody Williams, Aitkens Realty Co., LLC - Nancy A. Hodge, John P. & Barbara K. Glish, David L. & Jean M. Carlberg, Yogesh & Ananta Patel, Douglas Porcelli

EXHIBIT B

## SUBDIVISION BOND

Bond No.: 1016859

Principal Amount: $1,080,200.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A — Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of One Million Eighty Thousand Two Hundred and No/100 (Dollars) ($1,080,200.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in
Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of the roadway curb and gutter for Bridge Pointe at Jekyll Sound Phase 1 in accordance with the attached estimate provided by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

•Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____

Lexon Insurance Company
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

## SUBDIVISION BOND

Bond No.. 1016860

Principal Amount. $4,321,544.50

KNOW ALL MEN BY THE PRESENTS; that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of Four Million Three Hundred Twenty One Thousand Five Hundred Forty Four and 50/100 (Dollars) ($4,321,544.50), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of the roadway grading and paving, and storm sewer construction for Bridge Pointe at Jekyll Sound Phase 1 in accordance with the attached estimate provided by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By:

Lexon Insurance Company
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

## SUBDIVISION BOND

Bond No.: 1016861                                    Principal Amount: $536,500.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of Five Hundred Thirty Six Thousand Five Hundred and No/100 (Dollars) ($536,500.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Removal of unsuitable dirt material from Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006.

Bridge Pointe at Jekyll Sound, LLC                  Lexon Insurance Company
Principal                                           Surety

By:                                                 By:
                                                    Stephen T/Kazmer, Attorney-in-Fact

## SUBDIVISION BOND

Bond No.. 1015862                                   Principal Amount: $4,368,500.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31545 as Obligee, in the penal sum of Four Million Three Hundred Sixty Eight Thousand Five Hundred and No/100 (Dollars) ($4,368,500.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in
Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of Lake Excavation and Construction for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC                  Lexon Insurance Company
            Principal                                         Surety


By:_____              By:_____
                                                Stephen T. Kazmer, Attorney-in-Fact

SUBDIVISION BOND

Bond No.: 1016863                                    Principal Amount: $3,678,260.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 3000 River Ridge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A — Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31545, as Obligee, in the penal sum of Three Million Six Hundred Seventy Eight Thousand Two Hundred Sixty and No/100 (Dollars) ($3,678,260.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

Completion of the wastewater disposal system for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____

Lexon Insurance Company
Surety

By: _____
Stephen T. Nazmier, Attorney-in-Fact

NO.131    P.7

MAR. 16. 2005   2:25PM

## SUBDIVISION BOND

Bond No.: 1016854                                    Principal Amount: $1,882,463.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of One Million Eight Hundred Eighty Two Thousand Four Hundred Sixty Three and No/100 (Dollars) ($1,882,463.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of the electrical and telephone conduit installation for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 16th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC                   Lexon Insurance Company
Principal                                            Surety

By:_____                         By:_____
                                                     Stephen T. Kazmur, Attorney-in-Fact

## SUBDIVISION BOND

Bond No.: 1016365

Principal Amount: $187,500.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Ridge Parkway, Suite 680, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of One Hundred Eighty Seven Thousand, Five Hundred and No/100 (Dollars) ($187,500.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

Completion of the sanitary sewer force main for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____

Lexon Insurance Company
Surety

By: _____
Stephen T. Kummer, Attorney-in-Fact

SUBDIVISION BOND

Bond No.: 1016866                                    Principal Amount: $357,500.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of Three Hundred Fifty Seven Thousand Five Hundred and No/100 (Dollars) ($357,500.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of the offsite roadway improvements for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC                   Lexon Insurance Company
Principal                                            Surety

By:                                                  By: _____
                                                     Stephen T./Kazmer, Attorney-in-Fact

## CERTIFICATE OF SERVICE

This is to certify that I have this served Plaintiff's First Amended Complaint *via* the Court's CM/ECF system.

This 14th day of March, 2014.

**AUSTIN & SPARKS, P.C.**

BY:   /s/ John T. Sparks, Sr.
          Georgia State Bar No. 669575

2974 Lookout Place, N.E., Suite 200    Attorneys for Plaintiffs
Atlanta, Georgia 30305
404-869-0100 / 404-869-0200 (fax)
jsparks@austinsparks.com