IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| STEPHEN AGNONE & ENZO AGNONE; DOUGLAS & CYNTHIA PORCELLI; BRIDGE POINTE AT JEKYLL SOUND COMMUNITY ASSOCIATION, INC. ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> CAMDEN COUNTY, GEORGIA; WILLIS R. KEENE, JR., JIMMY STARLINE; CHUCK CLARK; TONY SHEPPARD GARY BLOUNT; DAVID L. RAINER; KATHERINE NISI ZELL; CHARLENE SEARS; STEPHEN L. BERRY; STEPHEN L. HOWARD; O. BRENT GREEN; JOHN MCDILL; DAVID KEATING; and SCOTT BRAZELL, LEXON INSURANCE COMPANY, THOMAS A. DIERUF, DAVID E. CAMPBELL, JEKYLL SOUND DEVELOPMENT COMPANY, LLC, AND CAMDEN COUNTY DEVELOPMENT, LLC <br><br> Defendants. | Civil Action No: 2:14-cv-00024-LGW-JEG |

## PLAINTIFFS' SECOND AMENDMENT TO COMPLAINT

Plaintiffs Douglas Porcelli, Joseph Moronese, Jr., and Richard Mumford ("Class

Representatives" or "Plaintiffs"), by and through their undersigned counsel of record, hereby file

this Second Amendment to Complaint adding Joseph Moronese, Jr. as a plaintiff/class

representative and Lexon Insurance Company, Thomas A. Dieruf, David E. Campbell, Jekyll

Sound Development Company, LLC, and Camden County Development, LLC, as defendants (the

"Lexon Defendants") and asserting the following claims, including class allegations, against them[1]:

## CLASS ACTION ALLEGATIONS

1.

This is a class action for specific performance and injunctive relief related to a subdivision in Camden County, Georgia ("Camden County" or the "County") known as Bridge Pointe at Jekyll Sound ("Bridge Pointe" or the "Subdivision"). This Action seeks to require the Lexon Defendants to construct infrastructure in the Subdivision for the benefit of the lot owners in the Subdivision.

2.

Class Representatives bring this action on behalf of all persons and entities who are current owners of lots in the Subdivision, and request the Court to certify the following nationwide class pursuant to Rule 23(b)(1) and (2) of the Federal Rules of Civil Procedure:

> All persons or entities who hold legal or equitable title as of the date of preliminary approval of the Class Action Settlement to any Unit or Parcel in the Bridge Pointe at Jekyll Sound Subdivision and any transferees of any Unit or Parcel following preliminary approval of the Class Action Settlement, except for BPJS Investments, LLC; Robert Steven Williams, Sr.; Robert Steven Williams, Jr.; and any related entities or persons, as these entities are obligated to release any and all claims against Lexon Insurance Company and any related entities or persons (together the "Lot Owners"),

and shall include Bridge Pointe at Jekyll Sound Community Association ("BPJSCA" or the "Association").

---

[1] This Second Amendment to Complaint identifies Douglas Porcelli and Richard Mumford as Class Representatives, adds as a new party plaintiff and class representative, Joseph Moronese, Jr., and adds new claims and class allegations against new defendants, but does not purport to affect, modify, add to or subtract from the existing claims Plaintiffs assert against Camden County, Willis R. Keene, Jr., Jimmy Starline, Chuck Clark, Tony Sheppard, Gary Blount, David L. Rainer, Kathine Nisi Zell, Charlene Sears, Stephen L. Berry, Stephen L. Howard, O. Brent Green, John McDill, David Keating, or Scott Brazell.

3.

The Class is so numerous that joinder of all Class Members is impracticable. The Class would include hundreds of members, as there are 697 lots in the Subdivision and some of them are owned by more than one person or an entity.

4.

There are numerous questions of law and fact common to the Class. Those questions include, but are not limited to, whether:

a.    Class Representatives and Class Members are third-party beneficiaries of agreements between Lexon and Camden County;

b.    Class Representatives and Class Members are entitled to specific performance by Lexon under the bonds underwritten by Lexon and securing the construction of infrastructure improvements in the Subdivision (the "Bonds"); and

c.    Class Representatives and Class Members are entitled to injunctive relief requiring Lexon to construct infrastructure improvements in the Subdivision.

5.

The claims of the Class Representatives are typical of the claims of the Class. Class Representatives are current owners of lots and parcels in the Subdivision who seek to compel judicially Lexon to specifically perform Lexon's obligations.

6.

Class Representatives will fairly and adequately represent the interests of the class.

7.

Class Representatives seek certification of a class under Fed. R. Civ. P. 23(b)(1) and/or (b)(2).

8.

The questions of law and/or fact that are common to the Class predominate over any questions that may affect only individual members of the Class.

9.

A class action is a superior method of adjudicating the Class members' claims because:

a.      Individual litigation of claims by Class Members would be impracticable and would prove unduly burdensome to the resources of the parties and to the Court.

b.      Prosecuting separate actions by or against individual Class Members would create a risk of:

      i.      Inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the class; and

      ii.     Adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

c.      The Lexon Defendants have refused to act on grounds that apply generally to the Class, and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

d.      Because many of the Class Members reside in this district, the real property central to this suit is located in this district, and many of the events giving rise to this action took place in this district, it is desirable to concentrate the litigation of these claims in this forum.

e.      This case is manageable as a class action in this Court.

# PARTIES

## 10.

Class Representatives Douglas Porcelli, Richard Mumford, and Joseph Moronese, Jr., are residents of the States of Delaware, Florida, and New York, respectively, and each owner of one or more Lots in the Subdivision.

## 11.

BPJSCA is a Georgia nonprofit corporation formed pursuant to the Declaration of Covenants, Conditions and Restrictions for Bridge Pointe at Jekyll Sound ("Declaration") to (i) receive, own, operate and maintain various common areas and community improvements, (ii) administer and enforce the Declaration and all other Governing Documents as defined in the Declaration, and (iii) commence judicial and administrative proceedings pursuant to Article XIV of the Declaration, as amended. BPJSCA is currently the owner of 27 lots in Bridge Pointe, as well as amenity parcels.

## 12.

In this Action, BPJSCA represents the interests of all lot owners in Bridge Pointe (including its own interests as the owner of 27 lots in Bridge Pointe) by virtue of having received written approval of lot owners representing at least 75% of the Class "A" votes in the Association.

## 13.

Defendant Lexon Insurance Company ("Lexon") is a corporation organized pursuant to the laws of the State of Texas, and whose principal place of business is 12890 Lebanon Road, Mount Juliet, Tennessee, 37122. Lexon failed to specifically perform its obligations under the Bonds to perform construction of infrastructure improvements in the Subdivision after the initial developer failed to construct such infrastructure improvements, Lexon is qualified to do business in the State of Georgia and has a Georgia registered agent for service of process, Corporation Service

Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092. Lexon may be served by service of the Summons and a photocopy of this Second Amendment to Complaint upon its Registered Agent at said address.

14.

Defendant Thomas A. Dieruf ("Dieruf") is an individual who resides at 2605 Evergreen Wynde, Louisville, Kentucky 40223-1370 in Jefferson County, Kentucky, and may be served at the above described address pursuant to O.C.G.A. §9-10-90 *et seq*. At all times relevant to the allegations of this Second Amendment to Complaint, Dieruf was the chairman of Lexon.

15.

Defendant David. E. Campbell ("Campbell") is an individual who resides at 210 Scenic Ridge Court, Old Hickory, Tennessee 37138-1373 in Wilson County, Tennessee, and may be served at the above described address pursuant to O.C.G.A. §9-10-90 *et seq*. At all times relevant to the allegations of this Second Amendment to Complaint, Campbell was the president of Lexon.

16.

Defendant Jekyll Sound Development Company, LLC ("Jekyll Sound Development") is a Georgia limited liability company whose Registered Agent is shown to be Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia, 30092. Jekyll Sound Development may be served by service of the Summons and a photocopy of the Second Amendment to Complaint upon its Registered Agent at said address.

17.

Defendant Camden County Development, LLC ("Camden County Development") is a limited liability company which is organized pursuant to the laws of the State of Florida, whose principal place of business is 215 Fifth Street, Suite 100, West Palm Beach, Florida, 33401, and which has a Registered Agent for service of process, Corporation Service Company, 1201 Hays

Street, Tallahassee, Florida 32301. Camden County Development may be served by service of the Summons and a photocopy of the Second Amendment to Complaint upon its Registered Agent at said address pursuant to O.C.G.A. §9-10-90 *et seq*. Lexon, Dieruf, Campbell, Jekyll Sound Development, and Camden County Development are sometimes herein referred to collectively as the "Lexon Defendants."

## JURISDICTION AND VENUE

### 18.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a) because the claims asserted herein are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Moreover, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) in that this is a putative Class Action, the amount in controversy exceeds $5,000,000, and at least one member of the proposed Class is a citizen of a state different than a state of which at least one of the Lexon Defendants is a citizen.

### 19.

The Lexon Defendants breached agreements within the State of Georgia and are subject to the personal jurisdiction of this Court.

### 20.

Venue of this action is proper as to the Lexon Defendants because a substantial part of the events giving rise to this claim occurred in Camden County, Georgia, the Bonds were issued for construction of infrastructure in Camden County, Georgia and the Lexon Defendants breached agreements that were to be performed in Camden County, Georgia.

# **FACTS**

## 21.

On or about August 10, 2005, Land Resource, LLC formed Bridge Pointe at Jekyll Sound, LLC ("Developer") to develop Bridge Pointe in Camden County, Georgia.

## 22.

Under the relevant Camden County ordinances in effect when the development was initiated, a subdivision developer was not permitted to sell lots in the subdivision without first (i) completing the infrastructure, (ii) obtaining approval from the County of the Final Plat, and (iii) filing the Final Plat in the land records of the County. In the alternative, prior to completing the infrastructure and complying with these procedures, a developer could offer a guarantee in the form of surety or security covering the cost of the infrastructure, and the County could, but was not required to, approve the Final Plat for filing. Upon posting the required surety or security and the filing of the Final Plat, the developer could then sell lots in the unfinished subdivision.

## 23.

The Developer chose not to complete the infrastructure in Bridge Pointe before selling lots but instead provided surety in the form of payment and performance bonds issued by Defendant Lexon, securing the completion of the infrastructure in Phase I in favor of Camden County.

## 24.

Pursuant to Camden County's Unified Development Code ("UDC"), the Developer tendered eight surety bonds with penal sums totaling $16,412,467.80 underwritten by Defendant Lexon as surety (the "Bonds") covering the cost of completion of certain improvements in Bridge Pointe, stating:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal [Developer] shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any

loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay the Obligee such amount up to the principal amount of this bond which will allow the Obligee to complete the improvements."

Copies of the Bonds are attached hereto as Exhibit "A".

### 25.

The Bonds provide that the Principal (Developer), including its successors and assigns, has "agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA" certain specified improvements, and each Bond reflects the improvements to be completed in Phase I of Bridge Pointe, an estimate of the work to be performed, and the costs associated with same.

### 26.

The original Principal was Bridge Pointe at Jekyll Sound, LLC and the Surety on each Bond was Lexon.

### 27.

Camden County accepted the Bonds in 2006 and approved the Final Plat for filing in April of 2006. Upon the filing of the Final Plat, the Developer began selling lots in Phase I of Bridge Pointe.

### 28.

There are 550 lots in Phase I of Bridge Pointe and a number of amenity parcels, all located in Camden County. By plat amendment, the Developer expanded the Bridge Pointe Subdivision to include 147 lots in a Phase II for a total of 697 lots in the entire Subdivision.

### 29.

The Developer sold approximately 402 of the 550 lots in Phase I and approximately 6 of the 147 lots in Phase II.

30.

The County's act of permitting the sale of lots in both Phase I and Phase II prior to completion of all infrastructure, including the roadway grading and paving, storm water sewer construction, roadway curbs and gutters, lake excavation and construction, waste water disposal systems, electrical and telephone conduit installation, sanitary sewer systems and force main, and certain offside roadway improvements, created an obligation of the developer/declarant, and surety to complete such infrastructure within Bridge Pointe.

31.

On September 8, 2008, the County Administrator provided David Campbell, as President of Lexon, written notice that the Developer "may not be in a financial situation to complete its projects in Bridge Pointe..." and that "Camden County would look to the Surety to complete these improvements."

32.

As of October 8, 2008, the Developer had sold all but 148 lots in Phase I and all but approximately 141 lots in Phase II, collecting approximately $66,000,000.00 from the sale of lots. However, the Developer had completed only a small portion of the required improvements in Phase I and no work in Phase II.

33.

On October 30, 2008, the Developer filed voluntary petitions under Chapter 11 of the Bankruptcy Code ("Bankrupt Estate").

34.

In January of 2009, Lexon Chairman, Thomas Dieruf, organized Camden County Development in the State of Florida.

35.

In February of 2009, Chairman Dieruf caused the formation of Jekyll Sound Development in Georgia.  Camden County Development was a member of Jekyll Sound Development.

36.

In early 2009, Jekyll Sound Development provided approximately $3,050,000 of Lexon funds, directly or indirectly, to George L. "Boog" Potter, Alexander Michael Martinez, Robert Williams, Sr., and perhaps Robert Williams, Jr., in the name of a Tennessee entity, Emerson Properties, LLC, now known as Emerson Property, LLC by virtue of a name change in Tennessee effective 5/1/17) ("Emerson"), to allow Emerson to gain the right to acquire from the Developer's Bankrupt Estate 289 unsold lots ("Unsold Lots"), a large marsh parcel as part of Phase I, and land representing common areas and amenity locations in Phase I and Phase II of Bridge Pointe (in the aggregate "Acquired Lots and Parcels") that were subsequently assigned to Jekyll Sound Development. Emerson was formed on January 13, 2009 by Potter and Martinez allegedly for the purpose of purchasing the Unsold Lots from the bankrupt Developer at Bridge Pointe and other Land Resource developments.

37.

Potter and Martinez used Emerson to gain a right to bid on the Acquired Lots and Parcels in the Bankrupt Estate at Bridge Pointe.

38.

Emerson, through Potter and Martinez in coordination with Campbell and Dieruf, exercised the bid rights and assigned its winning bid to Jekyll Sound Development, owned in part by Camden County Development, which was owned or controlled by Dieruf and Campbell.

39.

Surety Acquisition Corp., an affiliate of Lexon Insurance Company, was the source of all or part of the funds transferred to Camden County Development to facilitate the acquisition of the Acquired Lots and Parcels. Surety Acquisition Corp. was controlled by Dieruf and Campbell and indirectly by Lexon.

40.

The resulting transaction enabled Lexon, through Camden County Development and Jekyll Sound Development, to obtain the fee interests in the Acquired Lots and Parcels and take by assignment the Declarant rights during the Declarant Control Period.

41.

The transfer of the Acquired Lots and Parcels by the bankrupt Developer to Jekyll Sound Development is embodied in the Special Warranty Deed dated February 17, 2009, attached hereto as Exhibit "B".

42.

In addition to providing Emerson with access to funding to acquire the Acquired Lots and Parcels, Jekyll Sound Development provided funding to Emerson to acquire the Hickory Bluff Marina located near Bridge Pointe, owned at the time by the Coastal Bank of Georgia. Potter, acting on behalf of Emerson, initially promised to put up approximately $700,000 and Jekyll Sound Development to put up the remaining $700,000 to purchase the Marina, but once the Marina was transferred to Jekyll Sound Development, Potter failed to provide his portion of the purchase price, resulting in Jekyll Sound Development's becoming the sole owner of both the Acquired Lots and Parcels.

43.

Jekyll Sound Development owned the Acquired Lots and Parcels until approximately February 18, 2010, when it deeded them to BPJSI.

44.

Simultaneously with the conveyance of the Acquired Lots and Parcels, the status of "Declarant" of Bridge Pointe was assigned by the Developer to Jekyll Sound Development by the "Assignment of Declarant Rights Under Declaration of Covenants, Conditions and Restrictions" dated February 17, 2009, attached hereto as Exhibit "C" ("Developer's Assignment").

45.

In 2009 and 2010, Potter, Martinez, and the Williamses met with Camden County regarding their development plans.

46.

Potter and Williams, Sr. had several meetings with the Commissioners during 2009 and 2010, where Potter and Williams, Sr. artfully informed Camden County that they should be allowed to deal with Lexon regarding funds for development of Bridge Pointe while not admitting to the County until 2015 or 2016 that Lexon had arranged ownership of the Acquired Lots and Parcels for BPJSI.

47.

Potter, Martinez, Williams, Sr., and possibly Williams, Jr., through Mirobo or BPJSI, first offered to provide a letter of credit as security for the construction of infrastructure improvements in the Subdivision as a development guarantee which was acceptable to the County, but, unable to obtain a letter of credit, offered 243 of the 289 Acquired Lots and Parcels as the security for the completion of the infrastructure improvements rather than the previously promised bank letter of credit.

48.

BPJS Investments, LLC ("BPJSI") and MIROBO, LLC ("MIROBO") are limited liability companies that one or more of Potter, Martinez, Williams Sr., and Williams Jr. have or had direct or indirect ownership interest in and control of in 2010 and 2011, and in some way through today.

49.

Potter formed BPJSI on or about February 11, 2010, to facilitate and conduct the escrow transactions involving Camden County, BPJSI, and Lexon and relating to the conveyance of Acquired Lots and Parcels from Jekyll Sound Development and the Marina to BPJSI.

50.

Potter, Martinez, and possibly Williams, Sr. and Williams, Jr., indirectly through Wilrite, LLC, all had ownership interests in BPJSI and MIROBO in 2010 and through September 20, 2011, and Wilrite, LLC and Williams, Jr. have controlled BPJSI since that date.

51.

On or about February 18, 2010, by action of its Chief Manager, Potter, and its owners, Mirobo, LLC and Wilrite, LLC, BPJSI (with approval from Potter, Martinez, Williams Sr., and Williams Jr. as their indirect principals) provided 243 of the Unsold Lots as security in the form of real property, promising to complete the Subdivision by January 15, 2013. The pledge of such lots was grossly inadequate security under Section 1242 of the applicable Camden County UDC.

52.

In February 2010, Potter, Martinez, Williams, Sr. and Williams, Jr. caused BPJS Investment, LLC ("BPJSI") and MIROBO, LLC to be organized to acquire from Jekyll Sound Development the Acquired Lots and Parcels.

53.

UDC Sec. 1242(b)(7)b.3 entitled "Performance Guarantee - Posting Performance Guarantee - Types of Acceptable Performance Guarantees - Property Escrow", identified as an acceptable guarantee "land or other property,... in an amount equal to 200% of the cost, as estimated by the Public Works Director under Sec. 1242(b)(2)a. and approved by the Board of Commissioners, of completing all required improvements." This UDC Section also required that a qualified real estate appraiser establish the value of any real property so used who, in doing so, should take into account the possibility of a decline or rise in the value of the property during the guarantee period. Therefore, the UDC Section required real property having an appraised value of over $32,000,000 to be used as substitute guarantee.

54.

The UDC required the County to obtain an appraisal of the Pledged Lots prior to accepting them as security for the completion of the infrastructure at Bridge Pointe. BPSJI and its indirect principals, Potter, Martinez, Williams Sr., and Williams Jr, convinced the County not to require an appraisal of the Pledged Lots.

55.

The UDC required the County to obtain a title examination of the Pledged Lots before accepting them as security for the completion of the infrastructure at Bridge Pointe.

56.

At the time that Potter offered the County the Pledged Lots as security for the completion of the infrastructure at Bridge Pointe, BPJSI did not own or control the Pledged Lots and was not the Declarant.

<div align="center">57.</div>

Although Emerson acquired the rights at auction to purchase the Acquired Lots and Parcels from the Bankrupt Estate, Emerson provided the purchase rights to Jekyll Sound Development, which received the funds from Camden County Development which received the funds from Lexon (Surety Acquisition Corp.) to consummate the purchase of the Acquired Lots and Parcels.

<div align="center">58.</div>

Potter, Martinez, Williams Sr., and Williams Jr. promised the County new sureties in the form of letters of credit in the amount of $4,781,019 on or before January 5, 2010 (prior to having received confirmation from any surety underwriter of a performance guaranty as identified in the January 5, 2010 Resolution of the Camden County Board of Commissioners), and then later that month or the next month promised only security in the form of 243 lots and a contingent final stage letter of credit for $1 million.

<div align="center">59.</div>

Pursuant to the Escrow Arrangement as defined later in paragraph __, BPJSI (i) obtained 289 lots from Jekyll Sound Development, a marsh parcel and two groups of amenity parcels, (ii) provided the Letter Agreement (executed by Potter on behalf of MIROBO) containing a multistage development diagram, and (iii) executed a Deed to Secure Debt and Security Agreement (executed by Potter as its chief manager) dated February 19, 2010, and filed April 13, 2010, between BPJSI and Camden County attached hereto as Exhibit "D" ("Security Agreement"), securing an identified debt owed to Camden County in the principal amount of $10,000,000 (apparently relating to the development of infrastructure in Bridge Pointe) and calling for the development to be completed on or before January 15, 2013.

60.

Simultaneously, Camden County (i) tendered the Bonds, (ii) provided a General Release dated January 5, 2010 ("General Release") in favor of Lexon pertaining to the Bonds, and (iii) accepted the Letter Agreement and Security Agreement.

61.

The Tennessee law firm of Troutman & Troutman, P.C., ("Troutman"), legal counsel to Emerson, MIROBO, BPJSI and the indirect principals of such entities, acted as escrow agent in the consummation of the Letter Agreement transactions between Camden County, BPJSI, Lexon, and BPJSI dealing with the Bonds, General Release, Pledged Lots, signed Letter Agreement, and the Lexon payment to BPJSI ("Escrow Arrangement").

62.

Camden County then fulfilled its Bond related escrow obligations of providing the General Release and Bonds and subsequently accepted the Pledged Lots as security.

63.

Thereafter, BPJSI received the 289 Acquired Lots and Parcels by special warranty deed dated February 18, 2010 (also recorded April 13, 2010), signed by Thomas Dieruf for Camden County Development as the manager of Jekyll Sound Development. (See attached Exhibit "E" entitled "Special Warranty Deed"). The Camden County Board of Commissioners approved, and the Chairman of the Board of Commissioners executed, the General Release on January 5, 2010, prior to the adoption of the resolution pertaining to acceptance by Camden County of only 243 Pledged Lots as security for the anticipated performance under the Security Agreement without any letter of credit.

64.

The General Release was executed by the Chairman for Camden County as security for a release of (i) Bonds with penal sums totaling $16,412,467.80 and (ii) the performance guarantee in the Bonds for completion of Bridge Pointe by Lexon.

65.

Lexon's performance obligations under the Bonds exceeded the value of the Pledged Lots provided to Camden County by BPSJI.

66.

Neither Lexon nor Jekyll Sound Development (as the Declarant) has fulfilled its financial or performance obligations under the Bonds or otherwise.

67.

The work that was completed on the Subdivision by the original Developer is now of little value because the Subdivision has become overgrown after the lot owners in Bridge Pointe were locked out in 2013 by either representatives of BPJSI or Camden County.

68.

As Surety under the Bonds, Lexon, after the default by Land Resource, LLC, was obligated to either pay the Obligee (Camden County) the total amount under the Bonds or do the necessary work itself to complete the Subdivision.

69.

As owners of the Acquired Lots and Parcels and Hickory Bluff Marina, Lexon developed a plan to facilitate Potter's obtaining a settlement with Camden County that would result in a release of Lexon's obligations under the Bonds.

70.

Lexon approached Potter asking that he do the same thing he had done at another subdivision—to negotiate with the County using the lots and money provided by Lexon to convince the County to release the Bonds in exchange for BPJSI's promise to complete the subdivision.

71.

Lexon simply wanted out of everything and provided $4 million "just to be out of the deal" and its obligation to specifically perform under the Bonds.

72.

Lexon had the obligation under the Bonds to either (i) pay the guaranteed amount to the County to allow completion of Bridge Pointe or (ii) to complete Bridge Pointe in accordance with the then existing approved Subdivision plat. Instead, Lexon entered into a confidential agreement with Potter, Martinez, Williams Sr., and Williams Jr., and related entities, to afford them the tools in the form of (i) the Acquired Lots and Parcels and (ii) access to cash to obtain a General Release from the County and gain possession of the Bonds.

## COUNT I
### (Breach of Declaration Against All Defendants)

73.

Class Representatives incorporate paragraphs 1 through __ of this Second Amendment to Complaint, including all numbered and lettered paragraphs, as if fully set forth at length herein.

74.

Jekyll Sound Development was assigned all Declarant rights and liabilities from the Developer's Bankrupt Estate pursuant to the Developer's Assignment in 2009.

75.

Jekyll Sound Development may have wanted to assign its Declarant rights acquired in the Developer's Assignment to BPJSI but did not effectively do so.

76.

BPJSI failed to develop the Subdivision by completing the earlier bonded infrastructure on or before January 15, 2013, as promised.

77.

Since the purported assignment of Declarant rights was ineffective and no enforceable assignment was ever effectuated by Jekyll Sound Development to BPJSI, Jekyll Sound Development remains the Declarant to this day.

78.

Jekyll Sound Development, as Declarant, has failed to perform its duties under the Declaration, including the sole right and duty to develop the infrastructure of Bridge Pointe.

79.

Jekyll Sound Development is owned and/or controlled by Camden County Development and indirectly controlled by Dieruf, Campbell, and Lexon, in other words, the Lexon Defendants.

80.

Therefore, the Lexon Defendants, including but not limited to Lexon and Jekyll Sound Development, have a duty to complete the infrastructure for Bridge Pointe planned for, and initially bonded by Lexon, pursuant to the Declaration.

81.

By virtue of Lexon's indirect control of the entity that currently holds the position of Declarant under the Declaration and that has an obligation to complete all Bridge Pointe infrastructure, Lexon remains liable and obligated to complete the infrastructure at Bridge Pointe notwithstanding any alleged general release obtained by Lexon from the County.

82.

Lexon and its affiliate, Jekyll Sound Development, have breached obligations owed the Class Members and are liable to them for specific performance of Lexon's obligations under the Bonds.

83.

Lexon and its affiliate, Jekyll Sound Development, have breached obligations owed the Class Members and should be required to complete the infrastructure (described in the Bonds) at Bridge Pointe for the Class Members.

84.

The Class Representatives and Class Members are entitled to specific performance by Lexon, Camden County Development, and Jekyll Sound Development pursuant to the Bonds because, *inter alia,* the Bonds are definite and precise as to the obligations required of Lexon (completing the infrastructure or causing it to be completed), and damages at law would be an inadequate remedy to compensate the Class Representatives and Class Members.

## COUNT II
### (Breach of Contract- All Defendants)

85.

Class Representatives incorporate paragraphs 1 through __ of this Second Amendment to Complaint, including all numbered and lettered paragraphs, as if fully set forth at length herein.

86.

Class Representatives and Class Members are third party beneficiaries of the Bonds issued by the original Declarant as Principal, and Lexon, as Surety, in favor of the County, since the Declarant and Lexon agreed to construct the infrastructure in Bridge Pointe as specifically and particularly identified in each Bond with attached estimates identifying the costs associated with same.

87.

As third party beneficiaries of the Bonds, Class Representatives and Class Members have a claim for breach of contract against both the successor Declarant, Jekyll Sound Development, and Lexon for failure to construct the infrastructure.

88.

The Class Representatives and Class Members are entitled to specific performance by Lexon pursuant to the Bonds because, *inter alia,* the Bonds are definite and precise as to the obligations required by Lexon (completing the infrastructure or causing it to be completed), and damages at law would be an inadequate remedy to compensate the Class Representatives and the Class Members for Lexon's breach.

Class Representatives and Class Members were prevented from bringing this claim of breach of contract by the activities of the Lexon Defendants that tolled the statute of limitations as specifically described above and incorporated herein by reference.

## <u>WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT<br>THIS COURT GRANT THE FOLLOWING RELIEF:</u>

a.     That Summons and a copy of this Second Amended Compliant be served on all named Lexon Defendants as provided by law;

b.     That the Court certify the proposed Class, pursuant to Rule 23(b)(1) and (2) of the Federal Rules of Civil Procedure

c.     That the Court order the Lexon Defendants to specifically perform under the Bonds by causing the bonded infrastructure in the Subdivision to be built;

d.     That the Court issue an injunction mandating that the Lexon Defendants fulfill their obligations under the Bonds;

e.     That the Court issue an injunction mandating that the Lexon Defendants fulfill the obligations of the Declarant to construct the infrastructure in the Subdivision;

f.     That the Class Representatives and Class Members have and recover such other and further relief as the Court may deem just and proper.

*[Signatures of counsel located on next page.]*

Respectfully submitted this 11th day of July, 2018.

<div align="right">

**AITKENS & AITKENS, P.C.**

/s/ *Robert G. Aitkens*

Robert G. Aitkens
Teresa T. Aitkens
1827 Powers Ferry Road
Building One, Suite 100
Atlanta, GA 30339
raitkens@aitkenslawfirm.com
taitkens@aitkenslawfirm.com

*Attorneys for Plaintiffs*

**AUSTIN & SPARKS, P.C.**

/s/ *John T. Sparks, Sr.*

John B. Austin
John T. Sparks, Sr.
2974 Lookout Place, N.E., Suite 200
Atlanta, GA 30305
jaustin@austinsparks.com
jsparks@austinsparks.com

*Attorneys for Plaintiffs*

</div>

# EXHIBIT "A"

## SUBDIVISION BOND

Bond No.: <u>1016859</u>

Principal Amount: $1,080,200.00

KNOW ALL MEN BY THESE PRESENTS, that we <u>Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328</u> as Principal, and <u>Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148</u> a <u>Texas</u> Corporation, as Surety, are held and firmly bound unto <u>Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548</u> as Obligee, in the penal sum of <u>One Million Eighty Thousand Two Hundred and No/100</u> (Dollars) (<u>$1,080,200.00</u>), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, <u>Bridge Pointe at Jekyll Sound, LLC</u> has agreed to construct in <u>Bridge Pointe at Jekyll Sound</u> Subdivision, in <u>Camden County, GA</u> the following improvements:

*Completion of the roadway curb and gutter for Bridge Pointe at Jekyll Sound Phase 1 in accordance with the attached estimate provided by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

-Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this <u>10th</u> day of <u>March</u>, 2006

<u>Bridge Pointe at Jekyll Sound, LLC</u>
Principal

By: _____

<u>Lexon Insurance Company</u>
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

# SUBDIVISION BOND

Bond No.: <u>1016860</u>

Principal Amount: <u>$4,321,544.50</u>

KNOW ALL MEN BY THESE PRESENTS, that we <u>Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328</u> as Principal, and <u>Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148</u> a <u>Texas</u> Corporation, as Surety, are held and firmly bound unto <u>Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548,</u> as Obligee, in the penal sum of <u>Four Million Three Hundred Twenty One Thousand Five Hundred Forty Four and 50/100</u> (Dollars) (<u>$4,321,544.50</u>), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, <u>Bridge Pointe at Jekyll Sound, LLC</u> has agreed to construct in <u>Bridge Pointe at Jekyll Sound</u> Subdivision, in <u>Camden County, GA</u> the following improvements:

*Completion of the roadway grading and paving, and storm sewer construction for Bridge Pointe at Jekyll Sound Phase 1 in accordance with the attached estimate provided by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

<u>Bridge Pointe at Jekyll Sound, LLC</u>
Principal

By: _____

<u>Lexon Insurance Company</u>
Surety

By: _____
Stephen T. Klazmer, Attorney-in-Fact

# SUBDIVISION BOND

Bond No.: 1016861

Principal Amount: $536,500.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of Five Hundred Thirty Six Thousand Five Hundred and No/100 (Dollars) ($536,500.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Removal of unsuitable dirt material from Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P. & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____


Lexon Insurance Company
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

# SUBDIVISION BOND

Bond No.: 1016862

Principal Amount: $4,368,500.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of Four Million Three Hundred Sixty Eight Thousand Five Hundred and No/100 (Dollars) ($4,368,500.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of Lake Excavation and Construction for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____


Lexon Insurance Company
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

# SUBDIVISION BOND

Bond No.: 1016863

Principal Amount: $3,678,260.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of Three Million Six Hundred Seventy Eight Thousand Two Hundred Sixty and No/100 (Dollars) ($3,678,260.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of the wastewater disposal system for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____

Lexon Insurance Company
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

# SUBDIVISION BOND

Bond No.: 1016864

Principal Amount: $1,882,463.00

KNOW ALL MEN BY THESE PRESENTS, that we Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328 as Principal, and Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148 a Texas Corporation, as Surety, are held and firmly bound unto Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548, as Obligee, in the penal sum of One Million Eight Hundred Eighty Two Thousand Four Hundred Sixty Three and No/100 (Dollars) ($1,882,463.00), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Bridge Pointe at Jekyll Sound, LLC has agreed to construct in Bridge Pointe at Jekyll Sound Subdivision, in Camden County, GA the following improvements:

*Completion of the electrical and telephone conduit installation for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this 10th day of March, 2006

Bridge Pointe at Jekyll Sound, LLC
Principal

By: _____

Lexon Insurance Company
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

## SUBDIVISION BOND

Bond No.: <u>1016865</u>

Principal Amount: $<u>187,500.00</u>

KNOW ALL MEN BY THESE PRESENTS, that we <u>Bridge Pointe at Jekyll Sound, LLC, 2000 River</u> <u>Edge Parkway, Suite 580, Atlanta, GA 30328</u> as Principal, and <u>Lexon Insurance Company, 1919 S.</u> <u>Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148</u> a <u>Texas</u> Corporation, as Surety, are held and firmly bound unto <u>Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548,</u> as Obligee, in the penal sum of <u>One Hundred Eighty Seven Thousand Five Hundred and No/100</u> (Dollars) ($<u>187,500.00</u>), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, <u>Bridge Pointe at Jekyll Sound, LLC</u> has agreed to construct in <u>Bridge Pointe at Jekyll Sound</u> Subdivision, in <u>Camden County, GA</u> the following improvements:

*Completion of the sanitary sewer force main for Phase 1 of Bridge Pointe at Jekyll Sound in accordance* *with the attached estimate prepared by P. & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this <u>10th</u> day of <u>March</u>, 2006

<u>Bridge Pointe at Jekyll Sound, LLC</u>
Principal

By: _____

<u>Lexon Insurance Company</u>
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

## SUBDIVISION BOND

Bond No.: <u>1016866</u>

Principal Amount: $357,500.00

KNOW ALL MEN BY THESE PRESENTS, that we <u>Bridge Pointe at Jekyll Sound, LLC, 2000 River Edge Parkway, Suite 580, Atlanta, GA 30328</u> as Principal, and <u>Lexon Insurance Company, 1919 S. Highland Ave., Bldg. A – Suite 300, Lombard, IL 60148</u> a Texas Corporation, as Surety, are held and firmly bound unto <u>Camden County Joint Development Authority, P.O. Box 867, Kingsland, GA 31548,</u> as Obligee, in the penal sum of <u>Three Hundred Fifty Seven Thousand Five Hundred and No/100</u> (Dollars) (<u>$357,500.00</u>), lawful money of the United States of America, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, <u>Bridge Pointe at Jekyll Sound, LLC</u> has agreed to construct in <u>Bridge Pointe at Jekyll Sound</u> Subdivision, in <u>Camden County, GA</u> the following improvements:

*Completion of the offsite roadway improvements for Phase 1 of Bridge Pointe at Jekyll Sound in accordance with the attached estimate prepared by P & A Engineering dated February 15, 2006.*

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Upon approval by the Obligee, this instrument may be proportionately reduced as the public improvements are completed.

Signed, sealed and dated, this <u>10th</u> day of <u>March</u>, 2006

<u>Bridge Pointe at Jekyll Sound, LLC</u>
Principal

By: _____

<u>Lexon Insurance Company</u>
Surety

By: _____
Stephen T. Kazmer, Attorney-in-Fact

BOOK    PAGE
1481    00626

FILED
CAMDEN CO. CLERK'S OFFICE
2009 JUN 19 PM 2: 22



THIS DOCUMENT WAS PREPARED BY:

Franklin H. Caplan, Esq.
Berger Singerman, P.A.
200 South Biscayne Boulevard, Suite 1000
Miami, Florida 33131

RETURN TO:

Chicago Title Ins. Co
Suite 460
4170 Ashford Dunwoody Rd.
Atlanta, GA 30319

Property Identification No.: _____

Grantee Tax Identification No.: _____

42173

## SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED is executed and delivered effective as of February
17, 2009 by Bridge Pointe at Jekyll Sound, LLC, a Georgia limited liability company whose
post office mailing address is 5337 Millenia Lakes Boulevard, Suite 121, Orlando, FL 32839
("Grantor"), to Jekyll Sound Development Company, LLC ("Grantee"), whose mailing address
is 2847 John Deere Drive, #102, Knoxville, Tennessee 37917.

## WITNESSETH:

A.    This Special Warranty Deed is executed and delivered by Grantor to Grantee
pursuant to that certain Order Authorizing (1) Sale of Substantially All of The Debtor's Assets
Free and Clear of Liens, Claims and Encumbrances, and (2) Other Related Relief, entered on
February 3, 2009, by the United States Bankruptcy Court for the Middle District of Florida in the
jointly administered cases of Land Resource, LLC, et als, Bankruptcy Case No. 6:08-bk-10159-
ABB (the "Bankruptcy Sale Order").

B.    Grantor, pursuant to the Bankruptcy Sale Order and for and in consideration of
the sum of $10.00 and other good and valuable consideration, the receipt and adequacy of which
is hereby acknowledged, hereby grants, bargains, sells, conveys and confirms unto the Grantee,
and its successors and assigns, in fee simple forever, all of Grantor's right, title and interest in
that certain portion of a real property situate in Camden County, Georgia and more particularly
described on Exhibit "A" (the "Property").

TOGETHER with all improvements thereon, and the tenements, hereditaments and
appurtenances thereto belonging or in any way pertaining to the Property.

TO HAVE AND TO HOLD, the same in fee simple.

SUBJECT TO THE FOLLOWING (provided that reference to the following exceptions
and matters is without intent to and shall not be deemed to reimpose any such exceptions and
matters): (a) real estate taxes for the year 2009 and any taxes and assessments levied or assessed
subsequent to the date hereof; (b) restrictions and matters appearing on the plat or common to the
subdivision, and other restrictions, conditions, agreements, reservations, and utility and other

1937999-3

IN WITNESS WHEREOF, the Grantor has signed and sealed these presents the day and year first above written.

WITNESSES:

Print Name: HEATHER HOLLIDAY

Print Name: Jessica Yoos

Grantor:

**BRIDGE POINTE AT JEKYLL SOUND, LLC, a Georgia limited liability company**

By: Land Resource Group, Inc., a Georgia Corporation, its Manager

By:
Name: J. Robert Ward
Title: President

STATE OF Georgia )
                     ) SS:
COUNTY OF Cobb )

I HEREBY CERTIFY that the foregoing instrument was acknowledged and executed before this 5th day of February, 2009 by J. Robert Ward as President of Land Resource Group, Inc., a Georgia Corporation, as Manager of Bridge Pointe at Jekyll Sound, LLC, a Georgia limited liability company, on behalf of said entities. He [check one] ✓ is personally known to me, or ____ has produced evidence of his identity satisfactory to me.

NOTARY PUBLIC

Sign: Beth Nowlin

Print: Beth Nowlin

My Commission Expires:

(SEAL)

**CLERK'S NOTE: CONTINUE NEXT PAGE**

1937999-2
Bridge Pointe - SWD

3

EXHIBIT "A"

LEGAL DESCRIPTION

All that lot, tract, or parcel of land lying and being in the 33rd G.M. District, Camden County, Georgia, consisting of 1,131.01 acres, and being shown on that certain plat of survey entitled A Map to Show Boundary Survey of A Portion of the Honey Creek Tract, 33rd District G.M., Camden County, Georgia, a dated April 28, 2006, prepared by Privett-Bennett & Associates, Inc. certified by Ernest R. Bennett, Jr. G.R.L.S. No. 2893, as recorded in the Office of the Clerk of Superior Court of Camden County, Georgia in Plat Drawer 20, as Map No. 27, and being more particularly described as follows: Beginning at an iron pipe at the point where the northwesterly right-of-way line of Georgia Episcopal Center Road (an 80-foot right-of-way) intersects the northerly right-of-way line of Dover Bluff (an 80 foot right-of-way); AND FROM SAID POINT OF BEGINNING, running in a westerly direction along the northerly right-of-way line of Dover Bluff Road a chord of distance of 26.64 feet to an iron pipe (the bearing of the aforesaid chord being North 77 degrees 22' 17" West); thence; running North 78 degrees 37' 00" West along said northerly right-of-way line 2081.34 feet to an iron pin; thence, running in a westerly direction along said northerly right-of-way line a chord distance of 296.93 feet to an iron pin (the bearing of the aforesaid chord being North 62 degrees 26' 30" West); thence running North 46 degrees 16' 00" West along the northeasterly right-of-way line of Dover Bluff Road 1700.12 feet to an iron pipe; thence, running in a northwesterly direction along said northeasterly right-of-way line a chord distance of 158.43 feet to an iron pipe ( the bearing of the aforesaid chord being North 46 degrees 08' 00" West;; thence running North 46 degrees 00'00" West along said northeasterly right-of-way line 2772.29 feet to an iron pipe; thence, running in a northwesterly direction along said northeasterly right-of-way line a chord distance of 112.01 feet, more or less, to a point in the centerline of Hull Creek (the bearing of the aforesaid chord being North 48 degrees 10' 48" West) thence, running in a generally northerly direction along the centerline of Hull Creek 5624 feet, more or less, to a point in the low water mark of Maiden Creek; thence, running in a generally easterly and then northerly direction along said low water mark 6341 feet, more or less, to a point; thence, continuing in a generally easterly direction along said low water mark 6834 feet, more or less, to a point in the low water mark of Fosters Creek; thence, running in a generally westerly direction along the low water mark of Fosters Creek 12,268 feet, more or less, to the end of navigability of said creek, as shown on that plat recorded in Plat Cabinet 2, File 189-B, Camden County, Georgia records; thence, running in a southerly direction along said boundary line to a point in the low water mark of the southerly side of said creek; thence, running generally in an easterly direction along said low water mark 12,485 feet, more or less, to a point in the low water mark of Maiden Creek; thence, running in an easterly direction along

*CONTINUED ON FOLLOWING PAGE*

EXHIBIT "A-1" to LEGAL DESCRIPTION

LOTS CONVEYED AT BRIDGE POINTE AT JEKYLL SOUND

Lot 487
Book 1261, Page 798

Lot 524
Book 1268, Page 175

Lot 520
Book 1257, Page 183

Lot 202
Book 1259, Page 636

Lot 253
Book 1260, Page 355

Lot 9   Lot 389
Book 1260, Page 357

Lot 367
Book 1260, Page 359

Lot 516
Book 1260, Page 373

Lot 93
Book 1260, Page 376

Lot 85
Book 1260, Page 385

Lot 124      Lot 229
Book 1261, Page 32

Lots 322 & 323
Book 1261, Page 60

Lot 342
Book 1261, Page 70

Lot 345
Book 1261, Page 72

Lot 94
Book 1261, Page 432

Lot 88
Book 1261, Page 589

Book 1261, Page 598

Lot 373
Book 1261, page 600

Lot 478
Book 1261, Page 602

Lot 161
Book 1261, Page 790

Lot 487
Book 1261, Page 798

Book 1261, Page 800

Lot 262
Book 1261, Page 42

Lot 349
Book 1261, Page 52

Lot 259
Book 1262, Page 201

Lot 521
Book 1262, Page 203

Lot 404
Book 1262, Page 416

Lot 276
Book 1262, Page 418

Lot 297
Book 1262, Page 443

Lot 199
Book 1262, Page 635

Lot 8
Book 1263, Page 112

Lot 64
Book 1263, Page 120

Lot 324
Book 1263, Page 128

Lot 544
Book 1263, Page 138

Lot 242
Book 1263, Page 499

Lot 413
Book 1263, Page 524

Lot 511
Book 1264, Page 1

Lot 3
Book 1264, Page 68

Lot 302
Book 1261, Page 802

Lot 388
Book 1261, Page 812

Lot 535
Book 1264, Page 207

Lots 4 & 439
1264, Page 743

Lot 55
Book 1264, Page 810

Lot 145
Book 1264, Page 818

Lot 11
Book 1265, Page 20

Lot 400
Book 1265, Page 22

Lot 267
Book 1265, Page 108

Lot 264
Book 1265, Page 122

Lot 239
Book 1265, Page 130

Lot 366
Book 1265, Page 132

Lot 307
Book 1265, Page 134

Lot 280
Book 1265, Page 698

Lot 318
Book 1265, page 706

Lot 303
Book 1265, Page 762

Lot 10
Book 1267, Page 724

Lot 237
Book 1267, Page 726

Lot 405
Book 1269, Page 159

Lot 358
Book 1269, Page 399

Lot 258
Book 1269, page 751

Lot 292
Book 1269, Page 761

Lot 541
Book 1269, Page 780

Lot 74
Book 1270, Page 313

Lot 522
Book 1270, Page 366

Lot 505
Book 1270, Page 777

Lot 331
Book 1270, Page 785

Lot 523
Book 1271, Page 269

Lot 538
Book 1271, Page 279

Lot 231
Book 1271, Page 604

Lot 263
Book 1271, Page 614

Lot 179
Book 1268, Page 506

Lot 56
Book 1268, Page 516

Lot 395
Book 1271, Page 803

Lot 92
Book 1272, Page 89

Lot 252
Book 1272, Page 272

Lot 457
Book 1272, Page 274

Lot 315
Book 1272, Page 282

Lot 509
Book 1272, Page 368

Lot 396
Book 1272, Page 380

Lot 245
Book 1272, Page 543

Lot 335
Book 1272, Page 554

Lot 316
Book 1272, Page 601

Lot 241
Book 1272, Page 623

Lot 152
Book 1273, Page 577

Lot 352
Book 1273, Page 585

Lot 251
Book 1277, Page 220

Lot 338
Book 1277, Page 223

Lot 90
Book 1277, Page 231

Lot 201
Book 1282, Page 306

Lot 199
Book 1282, Page 425

Lot 525
Book 1283, Page 388

Lot 268
Book 1283, Page 398

Lot 232
Book 1283, Page 546

Lot 518
Book 1283, Page 556

Lot 370
Book 1283, Page 803

Lot 203
Book 1284, Page 1

Lot 286
Book 1284, Page 586

Lot 225
Book 1285, Page 33

Lot 336
Book 1285, Page 43

Lot 433
Book 1281, Page 671

Lot 391
Book 1282, Page 302

Lot 196
Book 1282, Page 304

Lot 273
Book 1285, Page 446

Lot 224
Book 1286, Page 303

Lot 501
Book 1287, Page 163

Lot 517
Book 1288, Page 781

Lot 462
Book 1289, Page 59

Lot 515
Book 1289, Page 61

Lot 57
Book 1289, Page 71

Lot 512
Book 1289, Page 73

Lot 424
Book 1289, Page 175

Lot 393
Book 1289, Page 373

Lot 296
Book 1290, page 134

Lot 5
Book 1295, Page 517

Lot 510
Book 1296, Page 271

Lot 463
Book 1297, Page 294

Lot 23
Book 1297, Page 808

Lot 19
Book 1298, Page 209

Lot 18
Book 1302, Page 784

Lot 301
Book 1302, Page 793

Lot 194
Book 1303, Page 848

Lot 275
Book 1304, Page 123

Lot 265
Book 1304, page 143

Lot 281
Book 1320, Page 202

Lot 282
Book 1331, Page 166

Lot 317
Book 1324, Page 724

Lot 219
Book 1331, Page 246

Lot 263
Book 1325, Page 329

Lot 319
Book 1332, Page 498

Lot 305
Book 1325, Page 831

Lot 440
Book 1333, Page 610

Lot 208
Book 1329, Page 393

Lot 95
Book 1333, Page 620

Lot 443
Book 1330, Page 49

Lot 384
Book 1334, Page 143

Lot 325
Book 1331, Page 150

Lot 77
Book 1337, Page 736

Lot 325
Book 1331, Page 152

Lot 181
Book 1347, Page 360

Lot 325
Book 1331, Page 154

Lot 7
Book 1339, Page 323

Lot 325
Book 1331, Page 156

Lot 234
Book 1340, Page 134

Lot 325
Book 1331, Page 148

Lot 2
Book 1341, Page 120

Lot 282
Book 1331, Page 158

Lot 6
Book 1343, Page 536

Lot 282
Book 1331, Page 160

Lot 170
Book 1343, Page 548

Lot 282
Book 1331, Page 162

Lot 372
Book 1344, Page 24

Lot 282
Book 1331, Page 164

Lot 432
Book 1344, Page 49

Lot 475
Book 1350, Page 469

Lot 78
Book 1350, Page 517

Lot 452
Book 1351, Page 97

Lot 248
Book 1360, Page 326

Lot 353
Book 1360, Page 499

Lot 542
Book 1362, Page 284

Lot 446
Book 1362, Page 297

Lot 377
Book 1363, Page 241

Lot 500
Book 1363, Page 558

Lot 197
Book 1363, Page 822

Lots 37, 329, 356, and 429
Book 1364, Page 422

Lot 497
Book 1350, Page 479

Lot 188
Book 1350, Page 527

BOOK    PAGE

1481    00646

BOOK PAGE

1481 0.0648

| Phase | Lot # | Lot Name | Status | Available | Under Contract | Site Reservation | Hold Owner | Off Market | Approved | Subtotal Closeable | Unavailable | Closed | Total | Unavailable Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP - Phase 1 | 355 | BP - Phase 1 - 355 | Closed | | | | | | | | | 73,749 | 73,749 | |
| BP - Phase 1 | 356 | BP - Phase 1 - 356 | Closed | | | | | | | | | 73,245 | 73,245 | |
| BP - Phase 1 | 357 | BP - Phase 1 - 357 | Closed | | | | | | | | | 60,900 | 60,900 | |
| BP - Phase 1 | 358 | BP - Phase 1 - 358 | Closed | | | | | | | | | 60,900 | 60,900 | |
| BP - Phase 1 | 359 | BP - Phase 1 - 359 | Closed | | | | | | | | | 73,413 | 73,413 | |
| BP - Phase 1 | 360 | BP - Phase 1 - 360 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 361 | BP - Phase 1 - 361 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 362 | BP - Phase 1 - 362 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 363 | BP - Phase 1 - 363 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 364 | BP - Phase 1 - 364 | Closed | | | | | | | | | 99,304 | 99,304 | |
| BP - Phase 1 | 365 | BP - Phase 1 - 365 | Closed | | | | | | | | | 101,900 | 101,900 | |
| BP - Phase 1 | 366 | BP - Phase 1 - 366 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 367 | BP - Phase 1 - 367 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 368 | BP - Phase 1 - 368 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 369 | BP - Phase 1 - 369 | Closed | | | | | | | | | 91,300 | 91,300 | |
| BP - Phase 1 | 370 | BP - Phase 1 - 370 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 371 | BP - Phase 1 - 371 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 372 | BP - Phase 1 - 372 | Closed | | | | | | | | | 90,836 | 90,836 | |
| BP - Phase 1 | 373 | BP - Phase 1 - 373 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 374 | BP - Phase 1 - 374 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 375 | BP - Phase 1 - 375 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 376 | BP - Phase 1 - 376 | Closed | | | | | | | | | 71,542 | 71,542 | |
| BP - Phase 1 | 377 | BP - Phase 1 - 377 | Closed | | | | | | | | | 73,801 | 73,801 | |
| BP - Phase 1 | 378 | BP - Phase 1 - 378 | Closed | | | | | | | | | 61,556 | 61,556 | |
| BP - Phase 1 | 379 | BP - Phase 1 - 379 | Closed | | | | | | | | | 71,606 | 71,606 | |
| BP - Phase 1 | 380 | BP - Phase 1 - 380 | Available | 99,000 | | | | | | 99,000 | | | 99,000 | |
| BP - Phase 1 | 381 | BP - Phase 1 - 381 | Closed | | | | | | | | | 63,600 | 63,600 | |
| BP - Phase 1 | 382 | BP - Phase 1 - 382 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 383 | BP - Phase 1 - 383 | Closed | | | | | | | | | 69,500 | 69,500 | |
| BP - Phase 1 | 384 | BP - Phase 1 - 384 | Closed | | | | | | | | | 80,961 | 80,961 | |
| BP - Phase 1 | 385 | BP - Phase 1 - 385 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 386 | BP - Phase 1 - 386 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 387 | BP - Phase 1 - 387 | Closed | | | | | | | | | 70,900 | 70,900 | |
| BP - Phase 1 | 388 | BP - Phase 1 - 388 | Closed | | | | | | | | | 70,900 | 70,900 | |
| BP - Phase 1 | 389 | BP - Phase 1 - 389 | Closed | | | | | | | | | 51,900 | 51,900 | |
| BP - Phase 1 | 390 | BP - Phase 1 - 390 | Closed | | | | | | | | | 51,900 | 51,900 | |
| BP - Phase 1 | 391 | BP - Phase 1 - 391 | Closed | | | | | | | | | 59,900 | 59,900 | |
| BP - Phase 1 | 392 | BP - Phase 1 - 392 | Closed | | | | | | | | | 51,900 | 51,900 | |
| BP - Phase 1 | 393 | BP - Phase 1 - 393 | Closed | | | | | | | | | 69,900 | 69,900 | |
| BP - Phase 1 | 394 | BP - Phase 1 - 394 | Closed | | | | | | | | | 69,873 | 69,873 | |
| BP - Phase 1 | 395 | BP - Phase 1 - 395 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 396 | BP - Phase 1 - 396 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 397 | BP - Phase 1 - 397 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 398 | BP - Phase 1 - 398 | Closed | | | | | | | | | 86,900 | 86,900 | |
| BP - Phase 1 | 399 | BP - Phase 1 - 399 | Closed | | | | | | | | | 72,090 | 72,090 | |
| BP - Phase 1 | 400 | BP - Phase 1 - 400 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 401 | BP - Phase 1 - 401 | Closed | | | | | | | | | 78,551 | 78,551 | |
| BP - Phase 1 | 402 | BP - Phase 1 - 402 | Closed | | | | | | | | | 72,797 | 72,797 | |
| BP - Phase 1 | 403 | BP - Phase 1 - 403 | Closed | | | | | | | | | 73,684 | 73,684 | |
| BP - Phase 1 | 404 | BP - Phase 1 - 404 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 405 | BP - Phase 1 - 405 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 406 | BP - Phase 1 - 406 | Closed | | | | | | | | | 73,643 | 73,643 | |
| BP - Phase 1 | 407 | BP - Phase 1 - 407 | Closed | | | | | | | | | 90,062 | 90,062 | |
| BP - Phase 1 | 408 | BP - Phase 1 - 408 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 409 | BP - Phase 1 - 409 | Closed | | | | | | | | | 95,549 | 95,549 | |
| BP - Phase 1 | 410 | BP - Phase 1 - 410 | Closed | | | | | | | | | 98,966 | 98,966 | |
| BP - Phase 1 | 411 | BP - Phase 1 - 411 | Closed | | | | | | | | | 90,623 | 90,623 | |
| BP - Phase 1 | 412 | BP - Phase 1 - 412 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 413 | BP - Phase 1 - 413 | Closed | | | | | | | | | 81,900 | 81,900 | |
| BP - Phase 1 | 414 | BP - Phase 1 - 414 | Closed | | | | | | | | | 107,813 | 107,813 | |
| BP - Phase 1 | 415 | BP - Phase 1 - 415 | Closed | | | | | | | | | 111,900 | 111,900 | |
| BP - Phase 1 | 416 | BP - Phase 1 - 416 | Closed | | | | | | | | | 111,900 | 111,900 | |
| BP - Phase 1 | 417 | BP - Phase 1 - 417 | Closed | | | | | | | | | 51,900 | 51,900 | |
| BP - Phase 1 | 418 | BP - Phase 1 - 418 | Closed | | | | | | | | | 95,489 | 95,489 | |
| BP - Phase 1 | 419 | BP - Phase 1 - 419 | Closed | | | | | | | | | 101,149 | 101,149 | |
| BP - Phase 1 | 420 | BP - Phase 1 - 420 | Closed | | | | | | | | | 87,130 | 87,130 | |
| BP - Phase 1 | 421 | BP - Phase 1 - 421 | Closed | | | | | | | | | 97,907 | 97,907 | |
| BP - Phase 1 | 422 | BP - Phase 1 - 422 | Closed | | | | | | | | | 115,338 | 115,338 | |
| BP - Phase 1 | 423 | BP - Phase 1 - 423 | Closed | | | | | | | | | 107,852 | 107,852 | |
| BP - Phase 1 | 424 | BP - Phase 1 - 424 | Closed | | | | | | | | | 111,900 | 111,900 | |
| BP - Phase 1 | 425 | BP - Phase 1 - 425 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 426 | BP - Phase 1 - 426 | Closed | | | | | | | | | 101,369 | 101,369 | |
| BP - Phase 1 | 427 | BP - Phase 1 - 427 | Closed | | | | | | | | | 101,509 | 101,509 | |
| BP - Phase 1 | 428 | BP - Phase 1 - 428 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 429 | BP - Phase 1 - 429 | Closed | | | | | | | | | 101,309 | 101,309 | |
| BP - Phase 1 | 430 | BP - Phase 1 - 430 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 431 | BP - Phase 1 - 431 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 432 | BP - Phase 1 - 432 | Closed | | | | | | | | | 80,818 | 80,818 | |
| BP - Phase 1 | 433 | BP - Phase 1 - 433 | Closed | | | | | | | | | 111,900 | 111,900 | |
| BP - Phase 1 | 434 | BP - Phase 1 - 434 | Closed | | | | | | | | | 80,285 | 80,285 | |
| BP - Phase 1 | 435 | BP - Phase 1 - 435 | Closed | | | | | | | | | 59,900 | 59,900 | |
| BP - Phase 1 | 436 | BP - Phase 1 - 436 | Closed | | | | | | | | | 107,763 | 107,763 | |
| BP - Phase 1 | 437 | BP - Phase 1 - 437 | Closed | | | | | | | | | 111,900 | 111,900 | |
| BP - Phase 1 | 438 | BP - Phase 1 - 438 | Closed | | | | | | | | | 114,900 | 114,900 | |
| BP - Phase 1 | 439 | BP - Phase 1 - 439 | Closed | | | | | | | | | 60,900 | 60,900 | |
| BP - Phase 1 | 440 | BP - Phase 1 - 440 | Closed | | | | | | | | | 55,117 | 55,117 | |
| BP - Phase 1 | 441 | BP - Phase 1 - 441 | Closed | | | | | | | | | 101,263 | 101,263 | |
| BP - Phase 1 | 442 | BP - Phase 1 - 442 | Closed | | | | | | | | | 113,935 | 113,935 | |
| BP - Phase 1 | 443 | BP - Phase 1 - 443 | Available | 127,542 | | | | | | 127,542 | | | 127,542 | |
| BP - Phase 1 | 444 | BP - Phase 1 - 444 | Available | 110,240 | | | | | | 110,240 | | | 110,240 | |
| BP - Phase 1 | 445 | BP - Phase 1 - 445 | Closed | | | | | | | | | 60,900 | 60,900 | |
| BP - Phase 1 | 446 | BP - Phase 1 - 446 | Closed | | | | | | | | | 98,946 | 98,946 | |
| BP - Phase 1 | 447 | BP - Phase 1 - 447 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 448 | BP - Phase 1 - 448 | Closed | | | | | | | | | 59,626 | 59,626 | |
| BP - Phase 1 | 449 | BP - Phase 1 - 449 | Closed | | | | | | | | | 60,900 | 60,900 | |
| BP - Phase 1 | 450 | BP - Phase 1 - 450 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 451 | BP - Phase 1 - 451 | Closed | | | | | | | | | 101,231 | 101,231 | |
| BP - Phase 1 | 452 | BP - Phase 1 - 452 | Closed | | | | | | | | | 128,309 | 128,309 | |
| BP - Phase 1 | 453 | BP - Phase 1 - 453 | Closed | | | | | | | | | 128,966 | 128,966 | |
| BP - Phase 1 | 454 | BP - Phase 1 - 454 | Closed | | | | | | | | | 119,887 | 119,887 | |
| BP - Phase 1 | 455 | BP - Phase 1 - 455 | Closed | | | | | | | | | 141,900 | 141,900 | |
| BP - Phase 1 | 456 | BP - Phase 1 - 456 | Available | 124,465 | | | | | | 124,465 | | | 124,465 | |
| BP - Phase 1 | 457 | BP - Phase 1 - 457 | Closed | | | | | | | | | 91,900 | 91,900 | |
| BP - Phase 1 | 458 | BP - Phase 1 - 458 | Closed | | | | | | | | | 135,410 | 135,410 | |
| BP - Phase 1 | 459 | BP - Phase 1 - 459 | Available | 128,909 | | | | | | 128,909 | | | 128,909 | |
| BP - Phase 1 | 460 | BP - Phase 1 - 460 | Closed | | | | | | | | | 121,793 | 121,793 | |
| BP - Phase 1 | 461 | BP - Phase 1 - 461 | Closed | | | | | | | | | 124,017 | 124,017 | |
| BP - Phase 1 | 462 | BP - Phase 1 - 462 | Closed | | | | | | | | | 136,900 | 136,900 | |
| BP - Phase 1 | 463 | BP - Phase 1 - 463 | Closed | | | | | | | | | 137,489 | 137,489 | |
| BP - Phase 1 | 464 | BP - Phase 1 - 464 | Closed | | | | | | | | | 146,900 | 146,900 | |
| BP - Phase 1 | 465 | BP - Phase 1 - 465 | Hold Owner | | | | 128,909 | | | 128,909 | | | 128,909 | |
| BP - Phase 1 | 466 | BP - Phase 1 - 466 | Available | 97,793 | | | | | | 97,793 | | | 97,793 | |
| BP - Phase 1 | 467 | BP - Phase 1 - 467 | Closed | | | | | | | | | 128,966 | 128,966 | |
| BP - Phase 1 | 468 | BP - Phase 1 - 468 | Closed | | | | | | | | | 128,966 | 128,966 | |
| BP - Phase 1 | 469 | BP - Phase 1 - 469 | Closed | | | | | | | | | 141,900 | 141,900 | |
| BP - Phase 1 | 470 | BP - Phase 1 - 470 | Closed | | | | | | | | | 128,716 | 128,716 | |
| BP - Phase 1 | 471 | BP - Phase 1 - 471 | Closed | | | | | | | | | 121,976 | 121,976 | |
| BP - Phase 1 | 472 | BP - Phase 1 - 472 | Closed | | | | | | | | | 121,976 | 121,976 | |

BOOK PAGE

1481    00650

| Plat# | Lot # | Lot Name | Status | Available | Under Contract | Hold/Pending | Not Surveyed | Off Market | Proposed | Subtotal Closable | Unavailable | Closed | Total | Unavailable Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

BOOK    PAGE
1481    00652

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                        Chapter 11 Cases

LAND RESOURCE, LLC, *et al.*                  Case No. 6:08-bk-10159-ABB
                                              Jointly Administered with cases
                                              6:08-bk-10159 through 6:08-bk-10192 and
                                              6:08-bk-11675

                    Debtors.
_____/

APPLICABLE DEBTOR:

Bridge Point at Jekyll Sound, LLC,
(Case No. 6:08-bk-10167-ABB)

_____/

### ORDER (1) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (2) GRANTING OTHER RELATED RELIEF

THIS CAUSE having come before the Court on January 22, 2009 at 10:00 a.m. in

Orlando, Florida, upon the hearing (the "Sale Hearing") to consider the motion (the "Sale

Motion") (D.E. No. 137) to approve the sale of substantially all of the assets of Bridge Point at

Jekyll Sound, LLC (the "Selling Debtor") to Emerson Properties, LLC (the "Buyer") pursuant

to the terms of that certain Purchase and Sale Agreement dated as of January 16, 2009, as

amended effective January 21, 2009 (the "APA"). The Court, having reviewed the Sale Motion,

the *Order (A) Approving Bidding Procedures for the Sale of a Portion of or Substantially all of*

*the Debtor's Assets, (B) Approving Certain Bidder Protections, and (C) Scheduling a Final Sale*

*Hearing and Approving the Form and Manner of Notice Thereof* (the "Bid Procedures

Order")[1] (D.E. No. 173) and the record in this case, having considered the evidence presented

_____

[1] .  Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to such

1935621-1

BOOK    PAGE
1481    00654

thus all such parties are deemed to have consented to the sale in accordance with the provisions of section 363(f)(2) of the Bankruptcy Code. Moreover, a sale free and clear of such interests may be authorized by the Court pursuant to sections 363(f)(1) and 363(f)(5) of the Bankruptcy Code because applicable nonbankruptcy law permits sales free and clear of such interests and the holders of such interests could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

5.    An objection to the sale of the Purchased Assets was filed by Bond Safeguard Insurance Company and Lexon Insurance Company (the "**Objection**") (D.E. No. 249), which was withdrawn at the hearing. No other objections to the sale were filed.

6.    The APA (as may be modified by this Order) constitutes the Highest and Best Bid received by the Selling Debtor for the Purchased Assets. The APA provides, among other things, for a purchase price of $3,050,000.

7.    Buyer is a purchaser acting in good faith who is entitled to the protections offered to such good faith purchasers, as that term is utilized in section 363(m) of the Bankruptcy Code.

8.    The Sale of the Purchased Assets has been undertaken in good faith and at arms' length by and between the Selling Debtor and Buyer.

9.    The Selling Debtor has advanced sound business reasons for selling the Purchased Assets, and it is a reasonable exercise of the Selling Debtor's business judgment and it is in the best interest of the estate to sell the Purchased Assets and for the Debtor to execute, deliver and perform its obligations under the APA.

10.    The total consideration to be realized by the estates pursuant to the Sale is fair and reasonable, and the Sale of the Purchased Assets is in the best interests of the estate. Accordingly, it is

1935621-1

directed to sell and transfer all of the right, title and interest of the estates in and to the Purchased Assets free and clear of Encumbrances to Buyer, or to the Back-Up Bidder in the event Buyer fails to close on the sale transaction.

G.    Upon the closing on the sale of the Purchased Assets with Buyer and this Order becoming final and non-appealable, the Selling Debtor is authorized and directed to return any the deposit of Back-Up Bidder.

H.    The Sale of the Purchased Assets is approved in its entirety, and the Selling Debtor is hereby authorized, empowered and directed to execute and deliver such documents and perform all things necessary to effectuate this Order and to consummate the transactions contemplated by this Order, the APA, and pursuant to the Sale Motion. Each Manager, President, any Vice President, and the Secretary of the Selling Debtor (each a "Proper Officer"), is hereby authorized and directed to execute and deliver any and all documents reasonably necessary to consummate the Sale in the name and on behalf of the Selling Debtor, or otherwise to take all actions (including, without limitation, (i) negotiation, execution, delivery, and filing of any agreements, certificates, or other instruments or documents, (ii) the payment of any consideration, and (iii) the payment of expenses and taxes) as such Proper Officer may deem necessary, appropriate, or advisable in order to consummate the transactions contemplated by the APA and this Order. All acts of any Proper Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects. Pursuant to section 363(b) and (f) of the Bankruptcy Code, upon consummation of the sale of the Purchased Assets, the Purchased Assets are sold and transferred to Buyer (or to the Back-Up Bidder in the event Buyer fails to close on the sale transaction) free and clear of any and all liens, claims, liabilities, encumbrances

1935621-1

BOOK        PAGE
*1481*      *00658*

K.    The Selling Debtor is immediately authorized to return all deposits or earnest money received from bidders, other than from Buyer and the Back-Up Bidder, whose deposits or earnest money shall be retained by the Debtor in accordance with this Order and the Bid Procedures Order.

L.    The APA and related documents may be modified, amended or supplemented by the parties thereto without further order of the Court, provided that any such modification, amendment or supplement is not material.

M.    Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and/or appropriate, including without limitation a certified copy of this Order, to consummate the transactions contemplated by this Order.

N.    This Order shall be binding upon and inure to the benefit of the Selling Debtor's estate, Buyer (or to the Back-Up Bidder in the event Buyer fails to close on the sale transaction), and their respective assignees.

O.    The Selling Debtor and Buyer (or to the Back-Up Bidder in the event Buyer fails to close on the sale transaction) shall be and hereby are entitled to the protection of section 363(m) of the Bankruptcy Code with respect to the Sale of the Purchased Assets approved and authorized in this Order in the event this Order or any authorization contained herein is reversed or modified on appeal.

P.    This Order shall not be subject to the 10 day stay provided for by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

1935621-1

EXHIBIT " C "

This Instrument prepared by:
Franklin H. Caplan, Esq.
Berger Singerman, P.A.
200 South Biscayne Boulevard, Suite 1000
Miami, Florida 33131

When Recorded Return To:
C. Mark Troutman, Esq.
Troutman & Troutman, P.C.
124 Independence Lane
LaFollette, Tennessee 37766

BOOK PAGE
1481 00660

RETURN TO
C. Clark

Chicago Title Ins. Co.
Suite 460
4170 Ashford Dunwoody Rd.
Atlanta, GA 30319

FILED
CAMDEN CO. CLERKS OFFICE

2009 JUN 19 PM 2: 22

· 4274

## ASSIGNMENT OF DECLARANT RIGHTS
### UNDER DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

THIS ASSIGNMENT ("Assignment"), dated as of February 17, 2009, is made by Bridge Pointe at Jekyll Sound, LLC, a Georgia limited liability company ("Assignor"), and Jekyll Sound Development Company, LLC, a Tennessee limited liability company, and its successors and assigns ("Assignee"):

RECITALS

A.    Assignor and various of its Affiliates are debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108, in connection with Chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court"), jointly administered as Case Nos. 6:08-bk-10159 through 6:08-bk-10192 (the "Chapter 11 Cases").

B.    Assignor and Assignee entered into that certain Purchase and Sale Agreement dated as of January ___, 2009 (the "Purchase Agreement"). Pursuant to the Purchase Agreement, Assignor conditionally agreed to sell and convey to Assignee the Property legally described in Exhibit "A" (the "Property"), and various Purchased Assets associated with the Property, including, without limitation, Assignor's rights and status as "declarant" under and pursuant to that certain Declaration of Covenants, Conditions and Restrictions recorded at Deed Book 1248, beginning at page 578, as amended, Camden County, Georgia (as amended of record, the "Declaration").

C.    This Assignment is delivered by Assignor and Assignee pursuant to the Purchase Agreement, and pursuant to Section 365 of the Bankruptcy Code, and in accordance with and subject to that certain Order Granting Debtor's Motion for Orders (a) Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests; (b) Establishing Auction Date, Related Deadlines and Bid Procedures; and (c) Approving the Form and Manner of Sale Notices (the "Sale Order") entered in the Chapter 11 Cases on January 23, 2009, as may be amended by further court order.

1945789-2

NOW, THEREFORE, in consideration of the recitals set forth above and incorporated herein, and for other good and valuable consideration, Assignor and Assignee, each intending legally to be bound, agree as follows

1.  Pursuant to Section 10.6 of the Declaration, Assignor hereby grants, transfers, conveys and assigns to Assignee, Assignor's rights, title, interests and status as "declarant" under and with respect to the Declaration and any and all easements granted to or reserved in favor of the "declarant" under the Declaration (collectively, "Declarant Rights"). Assignee hereby accepts and assumes the Declarant Rights.

2.  Assignor represents and warrants to Assignee that (a) Assignor has not previously assigned the Declarant's Rights; and (b) this Assignment is authorized by the Sale Order and is the valid and enforceable obligation of Assignor.

3.  Effective from and after February 17, 2009, Assignor is automatically released and relieved of all duties, liabilities and obligations attributable to Assignor specifically or the declarant generally under the Declaration, and Assignee shall for all purposes be the successor declarant thereunder.

4.  Assignor and Assignee have provided a copy of this Assignment to the Bridge Pointe at Jekyll Sound Community Association, Inc. (the "Association"), which, by executing a counterpart of this Assignment in the space below, acknowledges and consents to the assignment of Declarant Rights hereunder, and the release of Assignor as provided above, and the assumption of Assignee of the Declarant Rights.

5.  If any provision of this Assignment shall be invalid, illegal or unenforceable, it shall not affect or impair the validity, legality and enforceability of any other provision of this Assignment or of any documents related thereto.

6.  This Assignment shall be binding upon Assignor and its successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns.

7.  This Assignment shall be recorded in the Public Records of Camden County, Georgia. This Assignment shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Georgia, excluding the principles thereof governing conflicts of law. This Assignment may be executed in counterparts, each of which shall be deemed an original and all of such counterparts shall together constitute one and the same instrument.

[the    remainder    of    this    page    is    intentionally    left    blank]

IN WITNESS WHEREOF, Assignor, Assignee and the Association have executed this Assignment as of the date set forth above.

WITNESSES:

Print Name: ~~Montice Holliday~~

Print Name: Jessica Voos

ASSIGNOR:

Bridge Pointe at Jekyll Sound, LLC, a Georgia limited liability company

By: Land Resource Group, Inc., its Manager

By: 
Name: J. Robert Ward
Title: President

STATE OF Georgia )
                      ) SS:
COUNTY OF Cobb )

I HEREBY CERTIFY that the foregoing instrument was acknowledged and executed before this 5th day of February, 2009 by J. Robert Ward, as President of Land Resource Group, Inc., as Manager of Bridge Pointe at Jekyll Sound, LLC, a Georgia limited liability company, on behalf of said entities. He [check one] ✓ is personally known to me, or ____ has produced evidence of his identity satisfactory to me.

Beth Nowlin
Notary Public, State of ~~Florida~~ Georgia
[Notary Seal]

BETH NOWLIN
MY COMMISSION EXPIRES
FEBRUARY 12, 2012
NOTARY PUBLIC
COBB COUNTY, GEORGIA

CLERK'S NOTE: CONTINUE NEXT PAGE

1948789-1
Assignment - Bridge Pointe                    3

ASSIGNEE:

Jekyll Sound Development Company, LL, a Georgia
~~Emerson Properties, LLC, a Tennessee~~ limited
liability company

Print Name: Co/Mark Troutman

By:

Print Name: Robert Williams, Jr.

By: _____
Name: George L. Potter
Title: Secretary

STATE OF _Tennessee_ )
                                  ) SS:
COUNTY OF _Campbell_ )

    I HEREBY CERTIFY that the foregoing instrument was acknowledged and executed
before this _19_ day of February, 2009 by _George L. Potter_ _Secretary_ of ~~Emerson~~
~~Properties, LLC, a Tennessee~~ limited liability company; on behalf of the company. He [check
one] _✓_ is personally known to me, or _____ has produced evidence of his identity satisfactory to

co

Jekyll
Sound
Developme
Company,
LLC,
a Georgia
Limited Liability
Company



Notary Public, State of _Tennessee_
      [Notary Seal]

C. MARK TROUTMAN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
KNOX COUNTY

CLERK'S NOTE: CONTINUE NEXT PAGE

Acknowledged and Agreed:

Bridge Pointe at Jekyll Sound Community Association, Inc.,
a Georgia corporation not for profit

By: _____
Name: _____
Title: _____

STATE OF FLORIDA        )
                        ) SS:
COUNTY OF ORANGE        )

    I HEREBY CERTIFY that the foregoing instrument was acknowledged and executed before this 11th day of February, 2009 by J. ROBERT WARD, as _____ of Bridge Pointe at Jekyll Sound Community Association, Inc., a Georgia corporation not for profit, on behalf of the company. He [check one] _____ is personally known to me, or ✓ has produced evidence of his identity satisfactory to me.



_____
Notary Public, State of _____
[Notary Seal]

SHARON J WAGNER
Notary Public - State of Florida
My Comm. Expires Oct 7, 2012
Commission # DD 829224
Bonded Through National Notary Assn.

CLERK'S NOTE: CONTINUE NEXT PAGE

## LEGAL DESCRIPTION

THE REAL PROPERTY AS SET FORTH ON EXHIBIT A, LESS AND EXCEPT ANY AND ALL LOTS AND PARCELS PREVIOUSLY CONVEYED, MORE PARTICULARLY IDENTIFIED AS "CLOSED" ON THE ATTACHED LOT INVENTORY REPORT.

EXHIBIT "A"

LEGAL DESCRIPTION

All that lot, tract, or parcel of land lying and being in the 33rd G.M. District, Camden County, Georgia, consisting of 1,131.01 acres, and being shown on that certain plat of survey entitled A Map to Show Boundary Survey of A Portion of the Honey Creek Tract, 33rd District G.M., Camden County, Georgia, dated April 28, 2006, prepared by Privett-Bennett & Associates, Inc. certified by Ernest R. Bennett, Jr. G.R.L.S. No. 2893, as recorded in the Office of the Clerk of Superior Court of Camden County, Georgia in Plat Drawer 20, as Map No. 27, and being more particularly described as follows: Beginning at an iron pipe at the point where the northwesterly right-of-way line of Georgia Episcopal Center Road (an 80-foot right-of-way) intersects the northerly right-of-way line of Dover Bluff (an 80 foot right-of-way); AND FROM SAID POINT OF BEGINNING, running in a westerly direction along the northerly right-of-way line of Dover Bluff Road a chord of distance of 26.64 feet to an iron pipe (the bearing of the aforesaid chord being North 77 degrees 22' 17" West); thence; running North 78 degrees 37' 00" West along said northerly right-of-way line 2081.34 feet to an iron pin; thence, running in a westerly direction along said northerly right-of-way line a chord distance of 296.93 feet to an iron pin (the bearing of the aforesaid chord being North 62 degrees 28' 30" West); thence running North 46 degrees 16' 00" West along the northeasterly right-of-way line of Dover Bluff Road 1706.12 feet to an iron pipe; thence, running in a northwesterly direction along said northeasterly right-of-way line a chord distance of 158.43 feet to an iron pipe ( the bearing of the aforesaid chord being North 46 degrees 08' 00" West;; thence running North 46 degrees 00'00" West along said northeasterly right-of-way line 2772.29 feet to an iron pipe; thence, running in a northwesterly direction along said northeasterly right-of-way line a chord distance of 112.01 feet, more or less, to a point in the centerline of Hull Creek (the bearing of the aforesaid chord being North 48 degrees 10' 48" West) thence, running in a generally northerly direction along the centerline of Hull Creek 6624 feet, more or less, to a point in the low water mark of Maiden Creek; thence, running in a generally easterly and then northerly direction along said low water mark 6341 feet more or less, to a point; thence, continuing in a generally easterly direction along said low water mark 5834 feet, more or less, to a point in the low water mark of Fosters Creek; thence, running in a generally westerly direction along the low water mark of Fosters Creek 12,268 feet, more or less, to the end of navigability of said creek, as shown on that plat recorded in Plat Cabinet 2, File 189-B, Camden County, Georgia records; thence, running in a southerly direction along said boundary line to a point in the low water mark of the southerly side of said creek; thence, running generally in an easterly direction along said low water mark 12,485 feet, more or less, to a point in the low water mark of Maiden Creek; thence, running in an easterly direction along

*CONTINUED ON FOLLOWING PAGE*

EXHIBIT "A" CONTINUED

said low water mark and then in a southerly direction along the westerly low water
mark of Honey Creek 4537 feet, more or less, to a point in the northerly line of lands
now or formerly of the Bishop of the Episcopal Diocese of Georgia, Inc.; thence,
running in a northerly and then westerly direction along a line separating high ground
from salt marsh 2355 feet, more or less, to a point in the westerly line of said lands of
Bishop of the Episcopal Diocese of Georgia, Inc.; thence, running South 24 degrees
26' 38" West along the westerly line of said lands 1000 feet, more or less, to a 5/8
inch rebar; thence, running South 24 degrees 34' 52" West along said westerly line
1789.49 feet to a concrete monument; thence, running South 28 degrees 24' 47" East
along the southerly line of said lands of the Episcopal Diocese of Georgia 1013.96
feet to a concrete monument; thence running South 57 degrees 44' 11" West along
the northwesterly right-of-way line of Georgia Episcopal Center Road 2399.66 feet to
an iron pipe which is the POINT OF BEGINNING.

LESS AND EXCEPT THE FOLLOWING LOTS IN BRIDGE POINTE AT JEKYLL
SOUND SUBDIVISION, PHASE I WHICH HAVE BEEN CONVEYED TO THIRD
PARTIES:

SEE ATTACHED EXHIBIT "A-1" CONSISTING OF 11 PAGES WHICH BY THIS
REFERENCE IS INCORPORATED HEREIN

EXHIBIT "A-1" to LEGAL DESCRIPTION

LOTS CONVEYED AT BRIDGE POINTE AT JEKYLL SOUND

Lot 487                          Lots 322 & 323
Book 1261, Page 798              Book 1261, Page 60

Lot 524                          Lot 342
Book 1268, Page 175              Book 1261, Page 70

Lot 520                          Lot 345
Book 1257, Page 183              Book 1261, Page 72

Lot 202                          Lot 94
Book 1259, Page 636              Book 1261, Page 432

Lot 253                          Lot 88
Book 1260, Page 355              Book 1261, Page 589

Lot 9    Lot 389
Book 1260, Page 357              Book 1261, Page 598

Lot 367                          Lot 373
Book 1260, Page 359              Book 1261, page 600

Lot 516                          Lot 478
Book 1260, Page 373              Book 1261, Page 602

Lot 93                           Lot 161
Book 1260, Page 376              Book 1261, Page 790

Lot 85                           Lot 487
Book 1260, Page 385              Book 1261, Page 798

Lot 124        Lot 229
Book 1261, Page 32               Book 1261, Page 800

EXHIBIT "A-1" to LEGAL DESCRIPTION

LOTS CONVEYED AT BRIDGE POINTE AT JEKYLL SOUND

| | |
|---|---|
| Lot 487<br>Book 1261, Page 798 | Lots 322 & 323<br>Book 1261, Page 60 |
| Lot 524<br>Book 1268, Page 175 | Lot 342<br>Book 1261, Page 70 |
| Lot 520<br>Book 1257, Page 183 | Lot 345<br>Book 1261, Page 72 |
| Lot 202<br>Book 1259, Page 636 | Lot 94<br>Book 1261, Page 432 |
| Lot 253<br>Book 1260, Page 355 | Lot 88<br>Book 1261, Page 589 |
| Lot 9   Lot 389<br>Book 1260, Page 357 | Book 1261, Page 598 |
| Lot 367<br>Book 1260, Page 359 | Lot 373<br>Book 1261, page 600 |
| Lot 516<br>Book 1260, Page 373 | Lot 478<br>Book 1261, Page 602 |
| Lot 93<br>Book 1260, Page 376 | Lot 161<br>Book 1261, Page 790 |
| Lot 85<br>Book 1260, Page 385 | Lot 487<br>Book 1261, Page 798 |
| Lot 124<br>Book 1261, Page 32 | Lot 229<br>Book 1261, Page 800 |

BOOK    PAGE

1481    0067.0

| | |
|---|---|
| Lot 262<br>Book 1261, Page 42 | Lot 302<br>Book 1261, Page 802 |
| Lot 349<br>Book 1261, Page 52 | Lot 388<br>Book 1261, Page 812 |
| Lot 259<br>Book 1262, Page 201 | Lot 535<br>Book 1264, Page 207 |
| Lot 521<br>Book 1262, Page 203 | Lots 4 & 439<br>1264, Page 743 |
| Lot 404<br>Book 1262, Page 416 | Lot 55<br>Book 1264, Page 810 |
| Lot 276<br>Book 1262, Page 418 | Lot 145<br>Book 1264, Page 818 |
| Lot 297<br>Book 1262, Page 443 | Lot 11<br>Book 1265, Page 20 |
| Lot 199<br>Book 1262, Page 635 | Lot 400<br>Book 1265, Page 22 |
| Lot 8<br>Book 1263, Page 112 | Lot 267<br>Book 1265, Page 108 |
| Lot 64<br>Book 1263, Page 120 | Lot 264<br>Book 1265, Page 122 |
| Lot 324<br>Book 1263, Page 128 | Lot 239<br>Book 1265, Page 130 |
| Lot 544<br>Book 1263, Page 138 | Lot 366<br>Book 1265, Page 132 |
| Lot 242<br>Book 1263, Page 499 | Lot 307<br>Book 1265, Page 134 |
| Lot 413<br>Book 1263, Page 524 | Lot 280<br>Book 1265, Page 698 |
| Lot 511<br>Book 1264, Page 1 | Lot 318<br>Book 1265, page 706 |
| Lot 3<br>Book 1264, Page 68 | Lot 303<br>Book 1265, Page 762 |

Lot 375
Book 1264, Page 125

Lot 272
Book 1265, Page 764

Lot 246
Book 1266, Page 286

Lot 279
Book 1267, Page 734

Lot 75
Book 1266, Page 396

Lot 230
Book 1268, Page 82

Lot 398
Book 1266, Page 404

Lot 207
Book 1268, Page 90

Lot 293
Book 1267, Page 19

Lot 533
Book 1268, Page 100

Lot 13
Book 1267, Page 44

Lot 330
Book 1268, Page 121

Lot 392
Book 1267, Page 69

Lot 445
Book 1268, Page 123

Lot 238
Book 1267, Page 181

Lot 206
Book 1268, Page 133

Lot 244
Book 1267, Page 722

Lot 334
Book 1268, Page 155

Lot 10
Book 1267, Page 724

Lot 540
Book 1268, Page 165

Lot 237
Book 1267, Page 726

Lot 54
Book 1268, Page 175

Lot 279
Book 1267, Page 734

Lot 386
Book 1268, Page 478

Lot 238
Book 1267, Page 181

Lot 270
Book 1268, Page 480

Lot 244
Book 1267, Page 722

Lot 283
Book 1268, Page 504

Lot 10
Book 1267, Page 724

Lot 237
Book 1267, Page 726

Lot 405
Book 1269, Page 159

Lot 358
Book 1269, Page 399

Lot 258
Book 1269, page 751

Lot 292
Book 1269, Page 761

Lot 541
Book 1269, Page 780

Lot 74
Book 1270, Page 313

Lot 522
Book 1270, Page 366

Lot 505
Book 1270, Page 777

Lot 331
Book 1270, Page 785

Lot 523
Book 1271, Page 269

Lot 538
Book 1271, Page 279

Lot 231
Book 1271, Page 604

Lot 263
Book 1271, Page 614

Lot 179
Book 1268, Page 506

Lot 56
Book 1268, Page 516

Lot 395
Book 1271, Page 803

Lot 92
Book 1272, Page 89

Lot 252
Book 1272, Page 272

Lot 457
Book 1272, Page 274

Lot 315
Book 1272, Page 282

Lot 509
Book 1272, Page 368

Lot 396
Book 1272, Page 380

Lot 245
Book 1272, Page 543

Lot 335
Book 1272, Page 554

Lot 316
Book 1272, Page 601

Lot 241
Book 1272, Page 623

Lot 152
Book 1273, Page 577

Lot 352
Book 1273, Page 585

Lot 271
Book 1271, Page 622

Lot 357
Book 1273, Page 587

Lot 519
Book 1271, Page 793

Lot 385
Book 1273, Page 589

Lot 51
Book 1273, Page 749

Lot 481
Book 1277, Page 510

Lot 416
Book 1274, Page 334

Lot 480
Book 1277, Page 512

Lot 371
Book 1274, Page 343

Lot 382
Book 1277, Page 514

Lot 295
Book 1274, Page 820

Lot 397
Book 1277, Page 525

Lots 168 & 387
Book 1275, Page 257

Lot 531
Book 1278, Page 584

Lot 284
Book 1275, Page 269

Lot 412
Book 1279, Page 739

Lot 12
Book 1275, Page 273

Lot 343
Book 1281, Page 173

Lot 321
Book 1275, Page 275

Lot 464
Book 1281, Page 183

Lot 266
Book 1276, Page 82

Lot 464
Book 1281, Page 185

Lot 140
Book 1276, Page 466

Lot 469
Book 1281, Page 195

Lot 180
Book 1276, Page 611

Lot 455
Book 1281, Page 203

Lot 361
Book 1277, Page 218

Lot 351
Book 1281, Page 211

Lot 251
Book 1277, Page 220

Lot 338
Book 1277, Page 223

Lot 90
Book 1277, Page 231

Lot 201
Book 1282, Page 306

Lot 199
Book 1282, Page 425

Lot 525
Book 1283, Page 388

Lot 268
Book 1283, Page 398

Lot 232
Book 1283, Page 546

Lot 518
Book 1283, Page 556

Lot 370
Book 1283, Page 803

Lot 203
Book 1284, Page 1

Lot 286
Book 1284, Page 586

Lot 225
Book 1285, Page 33

Lot 336
Book 1285, Page 43

Lot 433
Book 1281, Page 671

Lot 391
Book 1282, Page 302

Lot 196
Book 1282, Page 304

Lot 273
Book 1285, Page 446

Lot 224
Book 1286, Page 303

Lot 501
Book 1287, Page 163

Lot 517
Book 1288, Page 781

Lot 462
Book 1289, Page 59

Lot 515
Book 1289, Page 61

Lot 57
Book 1289, Page 71

Lot 512
Book 1289, Page 73

Lot 424
Book 1289, Page 175

Lot 393
Book 1289, Page 373

Lot 296
Book 1290, page 134

Lot 278
Book 1285, Page 296

Lot 435
Book 1285, Page 298

Lot 311
Book 1285, Page 308

Lot 513
Book 1285, Page 310

Lot 277
Book 1294, Page 729

Lot 65
Book 1295, Page 109

Lot 369
Book 1295, Page 111

Lot 333
Book 1295, Page 113

Lot 368
Book 1295, Page 115

Lot 437
Book 1295, Page 117

Lot 166
Book 1295, Page 119

Lot 254
Book 1295, Page 121

Lot 36
Book 1295, Page 131

Lot 344
Book 1295, Page 141

Lot 223
Book 1290, Page 697

Lot 220
Book 1292, Page 47

Lot 146
Book 1292, page 480

Lot 374
Book 1292, Page 525

Lot 17
Book 1298, Page 217

Lot 34
Book 1298, Page 282

Lot 514
Book 1299, Page 213

Lot 415
Book 1299, Page 215

Lot 341
Book 1299, Page 433

Lot 306
Book 1300, Page 675

Lot 320
Book 1301, Page 92

Lot 30
Book 1301, Page 94

Lot 390
Book 1301, Page 558

Lot 300
Book 1301, Page 560

Lot 5
Book 1295, Page 517

Lot 510
Book 1296, Page 271

Lot 463
Book 1297, Page 294

Lot 23
Book 1297, Page 808

Lot 19
Book 1298, Page 209

Lot 18
Book 1302, Page 784

Lot 301
Book 1302, Page 793

Lot 194
Book 1303, Page 848

Lot 275
Book 1304, Page 123

Lot 265
Book 1304, page 143

Lot 346
Book 1304, Page 164

Lot 214
Book 1304, Page 166

Lot 360
Book 1304, Page 605

Lot 156
Book 1304, Page 607

Lot 1
Book 1304, Page 830

Lot 350
Book 1305, Page 618

Lot 449
Book 1306, Page 391

Lot 35
Book 1306, Page 547

Lot 337
Book 1306, Page 572

Lot 417
Book 1306, Page 872

Lot 365
Book 1307, Page 1

Lot 195
Book 1307, Page 75

Lot 26
Book 1307, Page 100

Lot 340
Book 1307, Page 753

Lot 287
Book 1307, Page 778

Lot 205
Book 1308, Page 872

Lot 31
Book 1310, Page 657

Lot 348
Book 1310, Page 667

Lot 235
Book 1311, Page 447

Lot 362
Book 1312, Page 461

Lot 261
Book 1312, Page 488

Lot 529
Book 1313, Page 233

Lot 536
Book 1313, Page 235

Lot 363
Book 1313, Page 566

Lot 226
Book 1313, Page 595

Lot 534
Book 1314, Page 425

Lot 260
Book 1315, Page 487

Lot 265
Book 1316, Page 839

Lot 235
Book 1316, Page 841

Lot 169
Book 1318, Page 340

BOOK    PAGE

1481    00677

Lot 281
Book 1320, Page 202

Lot 282
Book 1331, Page 166

Lot 317
Book 1324, Page 724

Lot 219
Book 1331, Page 246

Lot 263
Book 1325, Page 329

Lot 319
Book 1332, Page 498

Lot 305
Book 1325, Page 831

Lot 440
Book 1333, Page 610

Lot 208
Book 1329, Page 393

Lot 95
Book 1333, Page 620

Lot 443
Book 1330, Page 49

Lot 384
Book 1334, Page 143

Lot 325
Book 1331, Page 150

Lot 77
Book 1337, Page 736

Lot 325
Book 1331, Page 152

Lot 181
Book 1347, Page 360

Lot 325
Book 1331, Page 154

Lot 7
Book 1339, Page 323

Lot 325
Book 1331, Page 156

Lot 234
Book 1340, Page 134

Lot 325
Book 1331, Page 148

Lot 2
Book 1341, Page 120

Lot 282
Book 1331, Page 158

Lot 6
Book 1343, Page 536

Lot 282
Book 1331, Page 160

Lot 170
Book 1343, Page 548

Lot 282
Book 1331, Page 162

Lot 372
Book 1344, Page 24

Lot 282
Book 1331, Page 164

Lot 432
Book 1344, Page 49

Lot 189
Book 1345, Page 660

Lot 164
Book 1346, Page 79

Lot 204
Book 1347, Page 209

Lot 483
Book 1347, Page 773

Lot 227
Book 1348, Page 156

Lot 494
Book 1348, Page 176

Lot 549
Book 1348, Page 451

Lot 493
Book 1348, Page 607

Lot 409
Book 1348, Page 627

Lot 160
Book 1349, Page 131

Lot 526
Book 1349, Page 400

Lot 40
Book 1349, Page 420

Lot 543
Book 1349, Page 440

Lot 470
Book 1350, Page 406

Lot 451
Book 1350, Page 429

Lot 347
Book 1350, Page 449

Lot 473
Book 1346, Page 69

Lot 43
Book 1347, Page 199

Lot 376
Book 1347, Page 761

Lot 89
Book 1347, Page 775

Lot 191
Book 1348, Page 166

Lot 184
Book 1348, Page 229

Lot 44
Book 1348, Page 597

Lot 185
Book 1348, Page 617

Lot 436
Book 1348, Page 670

Lot 545
Book 1349, Page 153

Lot 403
Book 1349, Page 410

Lot 489
Book 1349, Page 430

Lot 175
Book 1349, Page 452

Lot 82
Book 1350, Page 417

Lot 504
Book 1350, Page 439

Lot 149
Book 1350, Page 459

BOOK   PAGE

1481   00679

Lot 475
Book 1350, Page 469

Lot 497
Book 1350, Page 479

Lot 78
Book 1350, Page 517

Lot 188
Book 1350, Page 527

Lot 452
Book 1351, Page 97

Lot 248
Book 1360, Page 326

Lot 353
Book 1360, Page 499

Lot 542
Book 1362, Page 284

Lot 446
Book 1362, Page 297

Lot 377
Book 1363, Page 241

Lot 500
Book 1363, Page 558

Lot 197
Book 1363, Page 822

Lots 37, 329, 356, and 429
Book 1364, Page 422

BOOK   PAGE

1481   00680

BOOK 1481 PAGE 00682

| Phase | Lot # | Lot Name | Status | Available | Under Contract | Hard Retention | Hold Down | Market | Prepared | Subtotal Closeable | Unavailable | Closed | Total | Unavailable Raises |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

BOOK PAGE

1481   00684

BOOK        PAGE

1481        00685

BOOK  PAGE

1481   00686

| Phase | Lot # | Lot Name | Status | Available | Under Contract | Field Owner | Site Reservation | Off Market | Proposed | Subtotal Closable | Unavailable | Closed | Total | Unavailable Items |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP - Phase 2 | 601 | BP - Phase 2-501 | Available | 155,000 | | | | | | 155,000 | | | 155,000 | |
| BP - Phase 2 | 602 | BP - Phase 2-502 | Available | 155,000 | | | | | | 155,000 | | | 155,000 | |
| BP - Phase 2 | 603 | BP - Phase 2-503 | Available | 165,000 | | | | | | 165,000 | | | 165,000 | |
| BP - Phase 2 | 604 | BP - Phase 2-504 | Available | 169,000 | | | | | | 169,000 | | | 169,000 | |
| BP - Phase 2 | 605 | BP - Phase 2-505 | Available | 175,000 | | | | | | 175,000 | | | 175,000 | |
| BP - Phase 2 | 606 | BP - Phase 2-506 | Available | 169,000 | | | | | | 169,000 | | | 169,000 | |
| BP - Phase 2 | 607 | BP - Phase 2-507 | Available | 165,000 | | | | | | 165,000 | | | 165,000 | |
| BP - Phase 2 | 608 | BP - Phase 2-508 | Available | 165,000 | | | | | | 165,000 | | | 165,000 | |
| BP - Phase 2 | 609 | BP - Phase 2-509 | Available | 150,000 | | | | | | 150,000 | | | 150,000 | |
| BP - Phase 2 | 501 | BP - Phase 2-601 | Available | 139,000 | | | | | | 139,000 | | | 139,000 | |
| BP - Phase 2 | 502 | BP - Phase 2-602 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 503 | BP - Phase 2-603 | Closed | | | | | | | | | 191,437 | 191,437 | |
| BP - Phase 2 | 504 | BP - Phase 2-604 | Available | 190,000 | | | | | | 190,000 | | | 190,000 | |
| BP - Phase 2 | 505 | BP - Phase 2-605 | Available | 170,000 | | | | | | 170,000 | | | 170,000 | |
| BP - Phase 2 | 506 | BP - Phase 2-606 | Available | 179,000 | | | | | | 179,000 | | | 179,000 | |
| BP - Phase 2 | 507 | BP - Phase 2-607 | Available | 183,000 | | | | | | 183,000 | | | 183,000 | |
| BP - Phase 2 | 508 | BP - Phase 2-608 | Available | 189,000 | | | | | | 189,000 | | | 189,000 | |
| BP - Phase 2 | 509 | BP - Phase 2-609 | Available | 170,000 | | | | | | 170,000 | | | 170,000 | |
| BP - Phase 2 | 570 | BP - Phase 2-670 | Available | 179,000 | | | | | | 179,000 | | | 179,000 | |
| BP - Phase 2 | 571 | BP - Phase 2-671 | Available | 205,000 | | | | | | 205,000 | | | 205,000 | |
| BP - Phase 2 | 572 | BP - Phase 2-672 | Available | 215,000 | | | | | | 215,000 | | | 215,000 | |
| BP - Phase 2 | 573 | BP - Phase 2-673 | Available | 220,000 | | | | | | 220,000 | | | 220,000 | |
| BP - Phase 2 | 574 | BP - Phase 2-674 | Available | 235,000 | | | | | | 235,000 | | | 235,000 | |
| BP - Phase 2 | 575 | BP - Phase 2-675 | Available | 230,000 | | | | | | 230,000 | | | 230,000 | |
| BP - Phase 2 | 576 | BP - Phase 2-676 | Available | 235,000 | | | | | | 235,000 | | | 235,000 | |
| BP - Phase 2 | 577 | BP - Phase 2-677 | Available | 500,000 | | | | | | 500,000 | | | 500,000 | |
| BP - Phase 2 | 578 | BP - Phase 2-678 | Available | 283,000 | | | | | | 283,000 | | | 283,000 | |
| BP - Phase 2 | 579 | BP - Phase 2-679 | Available | 275,000 | | | | | | 275,000 | | | 275,000 | |
| BP - Phase 2 | 580 | BP - Phase 2-680 | Available | 275,000 | | | | | | 275,000 | | | 275,000 | |
| BP - Phase 2 | 581 | BP - Phase 2-681 | Available | 195,000 | | | | | | 195,000 | | | 195,000 | |
| BP - Phase 2 | 582 | BP - Phase 2-682 | Available | 156,000 | | | | | | 156,000 | | | 156,000 | |
| BP - Phase 2 | 583 | BP - Phase 2-683 | Available | 155,000 | | | | | | 155,000 | | | 155,000 | |
| BP - Phase 2 | 584 | BP - Phase 2-684 | Available | 155,000 | | | | | | 155,000 | | | 155,000 | |
| BP - Phase 2 | 585 | BP - Phase 2-685 | Available | 155,000 | | | | | | 155,000 | | | 155,000 | |
| BP - Phase 2 | 586 | BP - Phase 2-686 | Available | 155,000 | | | | | | 155,000 | | | 155,000 | |
| BP - Phase 2 | 587 | BP - Phase 2-687 | Available | 140,000 | | | | | | 140,000 | | | 140,000 | |
| BP - Phase 2 | 588 | BP - Phase 2-688 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 589 | BP - Phase 2-689 | Available | 140,000 | | | | | | 140,000 | | | 140,000 | |
| BP - Phase 2 | 590 | BP - Phase 2-690 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 591 | BP - Phase 2-691 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 592 | BP - Phase 2-692 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 593 | BP - Phase 2-693 | Available | 130,000 | | | | | | 130,000 | | | 130,000 | |
| BP - Phase 2 | 594 | BP - Phase 2-694 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 595 | BP - Phase 2-695 | Available | 140,000 | | | | | | 140,000 | | | 140,000 | |
| BP - Phase 2 | 596 | BP - Phase 2-696 | Available | 165,000 | | | | | | 165,000 | | | 165,000 | |
| BP - Phase 2 | 597 | BP - Phase 2-697 | Available | 215,000 | | | | | | 215,000 | | | 215,000 | |
| BP - Phase 2 | 598 | BP - Phase 2-698 | Available | 215,000 | | | | | | 215,000 | | | 215,000 | |
| BP - Phase 2 | 599 | BP - Phase 2-699 | Available | 205,000 | | | | | | 205,000 | | | 205,000 | |
| BP - Phase 2 | 600 | BP - Phase 2-700 | Available | 165,000 | | | | | | 165,000 | | | 165,000 | |
| BP - Phase 2 | 801 | BP - Phase 2-001 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 802 | BP - Phase 2-002 | Available | 133,000 | | | | | | 133,000 | | | 133,000 | |
| BP - Phase 2 | 803 | BP - Phase 2-003 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 804 | BP - Phase 2-004 | Available | 120,000 | | | | | | 120,000 | | | 120,000 | |
| BP - Phase 2 | 805 | BP - Phase 2-005 | Available | 120,000 | | | | | | 120,000 | | | 120,000 | |
| BP - Phase 2 | 806 | BP - Phase 2-006 | Available | 140,000 | | | | | | 140,000 | | | 140,000 | |
| BP - Phase 2 | 807 | BP - Phase 2-007 | Available | 130,000 | | | | | | 130,000 | | | 130,000 | |
| BP - Phase 2 | 808 | BP - Phase 2-008 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 809 | BP - Phase 2-009 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 810 | BP - Phase 2-010 | Available | 130,000 | | | | | | 130,000 | | | 130,000 | |
| BP - Phase 2 | 811 | BP - Phase 2-011 | Available | 150,000 | | | | | | 150,000 | | | 150,000 | |
| BP - Phase 2 | 812 | BP - Phase 2-012 | Available | 140,000 | | | | | | 140,000 | | | 140,000 | |
| BP - Phase 2 | 813 | BP - Phase 2-013 | Available | 150,000 | | | | | | 150,000 | | | 150,000 | |
| BP - Phase 2 | 814 | BP - Phase 2-014 | Under Contract | | 280,000 | | | | | 280,000 | | | 280,000 | |
| BP - Phase 2 | 815 | BP - Phase 2-015 | Available | 260,000 | | | | | | 260,000 | | | 260,000 | |
| BP - Phase 2 | 816 | BP - Phase 2-016 | Available | 500,000 | | | | | | 500,000 | | | 500,000 | |
| BP - Phase 2 | 817 | BP - Phase 2-017 | Available | 500,000 | | | | | | 500,000 | | | 500,000 | |
| BP - Phase 2 | 818 | BP - Phase 2-018 | Available | 490,000 | | | | | | 490,000 | | | 490,000 | |
| BP - Phase 2 | 819 | BP - Phase 2-019 | Available | 490,000 | | | | | | 490,000 | | | 490,000 | |
| BP - Phase 2 | 820 | BP - Phase 2-020 | Available | 475,000 | | | | | | 475,000 | | | 475,000 | |
| BP - Phase 2 | 821 | BP - Phase 2-021 | Available | 460,000 | | | | | | 460,000 | | | 460,000 | |
| BP - Phase 2 | 822 | BP - Phase 2-022 | Closed | | | | | | | | 459,833 | 459,833 | |
| BP - Phase 2 | 823 | BP - Phase 2-023 | Closed | | | | | | | | 206,512 | 206,512 | |
| BP - Phase 2 | 824 | BP - Phase 2-024 | Available | 206,000 | | | | | | 206,000 | | | 206,000 | |
| BP - Phase 2 | 825 | BP - Phase 2-025 | Available | 202,000 | | | | | | 202,000 | | | 202,000 | |
| BP - Phase 2 | 826 | BP - Phase 2-026 | Available | 195,000 | | | | | | 195,000 | | | 195,000 | |
| BP - Phase 2 | 827 | BP - Phase 2-027 | Available | | | | | | | | 165,823 | 165,823 | |
| BP - Phase 2 | 828 | BP - Phase 2-028 | Closed | | | | | | | | 120,879 | 120,879 | |
| BP - Phase 2 | 829 | BP - Phase 2-029 | Closed | | | | | | | | | 149,000 | |
| BP - Phase 2 | 830 | BP - Phase 2-030 | Available | 149,000 | | | | | | 149,000 | | | 149,000 | |
| BP - Phase 2 | 831 | BP - Phase 2-031 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 832 | BP - Phase 2-032 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 833 | BP - Phase 2-033 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 834 | BP - Phase 2-034 | Available | 145,000 | | | | | | 145,000 | | | 145,000 | |
| BP - Phase 2 | 835 | BP - Phase 2-035 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 836 | BP - Phase 2-036 | Available | 125,000 | | | | | | 125,000 | | | 125,000 | |
| BP - Phase 2 | 837 | BP - Phase 2-037 | Available | 125,000 | | | | | | 125,000 | | | 125,000 | |
| BP - Phase 2 | 838 | BP - Phase 2-038 | Available | 125,000 | | | | | | 125,000 | | | 125,000 | |
| BP - Phase 2 | 839 | BP - Phase 2-039 | Available | 120,000 | | | | | | 120,000 | | | 120,000 | |
| BP - Phase 2 | 840 | BP - Phase 2-040 | Available | 118,000 | | | | | | 118,000 | | | 118,000 | |
| BP - Phase 2 | 841 | BP - Phase 2-041 | Available | 118,000 | | | | | | 118,000 | | | 118,000 | |
| BP - Phase 2 | 842 | BP - Phase 2-042 | Available | 99,000 | | | | | | 99,000 | | | 99,000 | |
| BP - Phase 2 | 843 | BP - Phase 2-043 | Available | 95,000 | | | | | | 95,000 | | | 95,000 | |
| BP - Phase 2 | 844 | BP - Phase 2-044 | Closed | | | | | | | | 84,547 | 84,547 | |
| BP - Phase 2 | 845 | BP - Phase 2-045 | Available | 115,000 | | | | | | 115,000 | | | 115,000 | |
| BP - Phase 2 | 846 | BP - Phase 2-046 | Closed | | | | | | | | 137,353 | 137,353 | |
| BP - Phase 2 | 847 | BP - Phase 2-047 | Available | 133,000 | | | | | | 133,000 | | | 133,000 | |
| BP - Phase 2 | 848 | BP - Phase 2-048 | Available | 133,000 | | | | | | 133,000 | | | 133,000 | |
| BP - Phase 2 | 849 | BP - Phase 2-049 | Available | 133,000 | | | | | | 133,000 | | | 133,000 | |
| BP - Phase 2 | 850 | BP - Phase 2-050 | Available | 138,000 | | | | | | 138,000 | | | 138,000 | |
| BP - Phase 2 | 851 | BP - Phase 2-051 | Available | 139,000 | | | | | | 139,000 | | | 139,000 | |
| BP - Phase 2 | 852 | BP - Phase 2-052 | Available | 139,000 | | | | | | 139,000 | | | 139,000 | |
| BP - Phase 2 | 853 | BP - Phase 2-053 | Available | 115,000 | | | | | | 115,000 | | | 115,000 | |
| BP - Phase 2 | 854 | BP - Phase 2-054 | Available | 108,000 | | | | | | 108,000 | | | 108,000 | |
| BP - Phase 2 | 855 | BP - Phase 2-055 | Available | 119,000 | | | | | | 119,000 | | | 119,000 | |
| BP - Phase 2 | 856 | BP - Phase 2-056 | Available | 110,000 | | | | | | 110,000 | | | 110,000 | |
| BP - Phase 2 | 857 | BP - Phase 2-057 | Available | 119,000 | | | | | | 119,000 | | | 119,000 | |
| BP - Phase 2 | 858 | BP - Phase 2-058 | Available | 125,000 | | | | | | 125,000 | | | 125,000 | |
| BP - Phase 2 | 859 | BP - Phase 2-059 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 860 | BP - Phase 2-060 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 861 | BP - Phase 2-061 | Available | 135,000 | | | | | | 135,000 | | | 135,000 | |
| BP - Phase 2 | 862 | BP - Phase 2-062 | Available | 139,000 | | | | | | 139,000 | | | 139,000 | |
| BP - Phase 2 | 863 | BP - Phase 2-063 | Available | 139,000 | | | | | | 139,000 | | | 139,000 | |
| BP - Phase 2 | 864 | BP - Phase 2-064 | Available | 105,000 | | | | | | 105,000 | | | 105,000 | |
| BP - Phase 2 | 865 | BP - Phase 2-065 | Available | 100,000 | | | | | | 100,000 | | | 100,000 | |
| BP - Phase 2 | 866 | BP - Phase 2-066 | Available | 119,000 | | | | | | 119,000 | | | 119,000 | |

BOOK PAGE

1481. 00687

| Phase | Lot # | Lot Name | Status | Available | Under Contract | Hold Owner | Site Reservation | Off Market | Proposed | Subtotal Closeable | Unavailable | Closed | Total | Unavailable Homes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | 130,000 |
| BP - Phase 2 | 667 | BP - Phase 2-667 | Available | 130,000 | | | | | | 130,000 | | | | 130,000 |
| BP - Phase 2 | 668 | BP - Phase 2-668 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 669 | BP - Phase 2-669 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 670 | BP - Phase 2-670 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 671 | BP - Phase 2-671 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 672 | BP - Phase 2-672 | Available | 130,000 | | | | | | 130,000 | | | | 130,000 |
| BP - Phase 2 | 673 | BP - Phase 2-673 | Available | 130,000 | | | | | | 110,000 | | | | 112,000 |
| BP - Phase 2 | 674 | BP - Phase 2-674 | Available | 119,000 | | | | | | 115,000 | | | | 115,000 |
| BP - Phase 2 | 675 | BP - Phase 2-675 | Available | 135,000 | | | | | | 130,000 | | | | 130,000 |
| BP - Phase 2 | 676 | BP - Phase 2-676 | Available | 119,000 | | | | | | 118,000 | | | | 112,000 |
| BP - Phase 2 | 677 | BP - Phase 2-677 | Available | 135,000 | | | | | | 132,000 | | | | 134,000 |
| BP - Phase 2 | 678 | BP - Phase 2-678 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 679 | BP - Phase 2-679 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 680 | BP - Phase 2-680 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 681 | BP - Phase 2-681 | Available | 135,000 | | | | | | 130,000 | | | | 135,000 |
| BP - Phase 2 | 682 | BP - Phase 2-682 | Available | 135,000 | | | | | | 135,000 | | | | 135,000 |
| BP - Phase 2 | 683 | BP - Phase 2-683 | Available | 135,000 | | | | | | 145,000 | | | | 145,000 |
| BP - Phase 2 | 684 | BP - Phase 2-684 | Available | 135,000 | | | | | | 115,000 | | | | 115,000 |
| BP - Phase 2 | 685 | BP - Phase 2-685 | Available | 119,000 | | | | | | 105,000 | | | | 105,000 |
| BP - Phase 2 | 686 | BP - Phase 2-686 | Available | 119,000 | | | | | | 105,000 | | | | 105,000 |
| BP - Phase 2 | 687 | BP - Phase 2-687 | Available | 105,000 | | | | | | 105,000 | | | | 105,000 |
| BP - Phase 2 | 688 | BP - Phase 2-688 | Available | 105,000 | | | | | | 109,000 | | | | 109,000 |
| BP - Phase 2 | 689 | BP - Phase 2-689 | Available | 109,000 | | | | | | 109,000 | | | | 109,000 |
| BP - Phase 2 | 690 | BP - Phase 2-690 | Available | 109,000 | | | | | | 109,000 | | | | 109,000 |
| BP - Phase 2 | 691 | BP - Phase 2-691 | Available | 109,000 | | | | | | 109,000 | | | | 109,000 |
| BP - Phase 2 | 692 | BP - Phase 2-692 | Available | 109,000 | | | | | | 115,000 | | | | 115,000 |
| BP - Phase 2 | 693 | BP - Phase 2-693 | Available | 118,000 | | | | | | 105,000 | | | | 105,000 |
| BP - Phase 2 | 694 | BP - Phase 2-694 | Available | 105,000 | | | | | | 105,000 | | | | 105,000 |
| BP - Phase 2 | 695 | BP - Phase 2-695 | Available | 105,000 | | | | | | 105,000 | | | | 109,000 |
| BP - Phase 2 | 696 | BP - Phase 2-696 | Available | 105,000 | | | | | | 115,000 | | | | 115,000 |
| BP - Phase 2 | 697 | BP - Phase 2-697 | Available | 102,000 | | | | | | 115,000 | | | | 105,000 |
| Resort Amenities | | | | 33,333,000 | 280,000 | | | | | 33,333,000 | | 1,419,000 | 34,900,901 | 109,000 |
| Lot Counts | | | | 133 | 1 | | | | | 140 | | 7 | | 147 |

Recorded _____ JUN 1 9 2009 _____

_signature_

Clerk Superior Court

BOOK    PAGE     FILED
                   CAMDEN CO. CLERK'S OFFICE    **EXHIBIT " D "**

1519    00499    2010 APR 13 AM 11: 07

012101

**PLEASE RETURN TO:**
The Law Firm of
**JENNIFER L. MACMILLAN, P.C.**
P.O. Box 21159
St. Simons Island, GA 31522

WHEN RECORDED RETURN TO:
Steve L. Howard, County Administrator
Camden County, Georgia
P.O. Box 99
Woodbine, GA 31569

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE, made and entered into as of the _19th_ day of February, 2010, by and between BPJS INVESTMENTS, LLC, a Georgia Limited Liability Company, with an address of 2195 Dover Bluff Road, Waverly, GA 31565, party of the first part (hereinafter the "Borrower"), and CAMDEN COUNTY, GEORGIA, Beneficiary, with an address of P.O. Box 99, Woodbine, GA 31569, collectively party of the second part.

## WITNESSETH:

That for and in consideration of One Hundred Dollars ($100.00) and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, said party of the first part has bargained and sold and does hereby bargain, sell, convey and confirm unto the said party of the second part the following described real estate (sometimes referred to herein as the "Premises") situated and being in Camden County, Georgia, to-wit:

See Exhibit A attached hereto
and incorporated by reference herein.

TOGETHER with all rights, title, and interest of party of the first part in and to all buildings, structures, and other improvements now or hereafter located on the Premises or any part or parcel thereof; and

1

**BPJSI000268**

BOOK    PAGE

1519   00500

TOGETHER with all rights, title, and interest of party of the first part in and to the minerals, flowers, shrubs, crops, trees, timber, and other emblements now or hereafter on the Premises or under or above the same or any part or parcel thereof; and

TOGETHER with all and singular the tenements, hereditaments, easements, and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder or remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, claim, and demand whatsoever of party of the first part of, in, and to the same and of, in, and to every part and parcel thereof; and

TOGETHER with all goods, inventory, machinery, apparatus, equipment, fittings, fixtures, accessions, personal property of any kind or nature, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, and articles of personal property of every kind and nature whatsoever (hereinafter collectively called "Equipment"), now or hereafter located in, upon, or under the Premises or any part thereof and used or usable in connection with said property and now owned or hereafter acquired by party of the first part, including, but without limiting the generality of the foregoing, all heating, air-conditioning, freezing, lighting, laundry, incinerating, and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers, ranges, furnaces, oil burners, or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; beds of all types; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings; together with all building materials and equipment now or hereafter delivered to the Premises and intended to be installed therein; together with all additions thereto and replacements thereof (party of the first part hereby agreeing with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be requested by party of the second part or Beneficiary to confirm the conveyance, transfer, and assignment of any of the foregoing); together with all additions and replacements thereof and all proceeds and products of the foregoing; and

TOGETHER with any and all rents which are now due or may hereafter become due to party of the first part by reason of the renting, leasing, and bailment of the Premises, the improvements thereon and Equipment; and

TOGETHER with all of party of the first part's accounts, contract rights, accounts receivable, inventory, leases, income, intangibles and rights to income with regard to the Premises, the improvements thereon and the Equipment, now owned or hereafter acquired and now due or which hereafter may become due, including all contract rights and general intangibles with regard to the operation of the Premises, specifically including, without limitation, all rights, title and interest of party of the first part in, to and under all operating,

2

BOOK    PAGE
1519    00501

franchise, management and maintenance agreements relating, directly or indirectly, to the Premises, and all agreements and leases for furniture, fixtures, equipment and telephone systems, and all lease and occupancy agreements with respect to any part of the Premises, and all funds deposited in any reserve and/or reservation deposit accounts pertaining to the Premises; and

TOGETHER with any and all awards, insurance proceeds or payments to party of the first part, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, (c) any casualty or damage to the Premises, the improvements thereon and/or the Equipment, or (d) any other injury to or taking of, or decrease in the value of, the Premises, to the extent of all amounts which may be secured by this Deed at the date of receipt of any such award or payment by party of the second part and to the extent of the reasonable attorney's fees, costs and disbursements incurred by party of the second part in connection with the collection of such award or payment.

TO HAVE AND TO HOLD, the aforedescribed real estate, together with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining unto the said party of the second part, its successors and assigns, in fee simple forever, and the said party of the first part does hereby covenant with the said party of the second part, its successors and assigns that it is lawfully seized in fee of the aforedescribed real estate; that it has a good right to sell and convey the same; that the same is unencumbered, and that the title and quiet possession thereto it will and its heirs and personal representatives shall warrant and forever defend against the lawful claims of all persons, EXCEPT for any permitted encumbrances set forth on the attached Exhibit B, attached hereto and incorporated herein by reference.

But this conveyance is intended to operate and is to be construed as a deed passing the title to the Premises to Beneficiary and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the full, prompt and final payment of any and all indebtedness, principal, interest, attorney's fees and costs, as may be provided in instruments evidencing such indebtedness, or otherwise, now or hereafter owing directly or indirectly, by Borrower, or, as endorser or guarantor for others to the Beneficiary or the holder of the such debt, including, the debt owing to the Camden County, Georgia in the principal amount of $10,000,000.00 arising from the development of the infrastructure in the Bridge Point at Jekyll Sound Subdivision, which development shall be completed on or before January 15, 2013, said date being the maturity date of the indebtedness. The parties may agree to extend the maturity date from time to time.

This instrument is to secure the debt, principal and interest, and any extensions, modifications, and/or renewals thereof, and any notes given in payment of principal or interest, and all reasonable attorneys' fees, court costs, and expenses of whatever kind incident to the collection of said indebtedness and/or the enforcement and/or protection of the lien of this conveyance including but not limited to any and all advances made by Beneficiary to protect or

3

**BPJSI000270**

BOOK    PAGE
1519    00502

preserve the Premises or the lien created hereby on the Premises, or for taxes or insurance premiums as hereinafter provided, or for any additional amounts which party of the first part or Beneficiary is required to pay hereunder, or which may be advanced by Beneficiary hereunder and for any and all other debts of any kind owing from the party of the first part to the Beneficiary (all collectively sometimes hereinafter referred to as the "Indebtedness").

Should the Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, and should Borrower perform all covenants herein contained in a timely manner, then this Deed shall be promptly cancelled and surrendered.

1.  In the event of any default in any of the terms and conditions of any Deed or other document, the lien of which may be or become prior and paramount to the lien of this instrument, then in every such event the owner of any part of the indebtedness secured by this instrument may, at its option, declare the indebtedness secured by this instrument due and payable in full for all purposes, and foreclosure may be had hereunder as in the case of any other default hereunder. The owner of any part of the indebtedness secured hereby may, at its option, advance and pay any such sum or sums as shall be necessary in order that the terms and conditions of any Deed or other instrument, the lien of which is then prior and paramount to the lien of this instrument, may be complied with, and such amounts so paid shall be repaid by party of the first part on demand with interest from the date of such payment at the highest rate legally chargeable on the date of such payment, shall be treated as part of the expenses of administering this trust and shall be secured by the lien of this Deed; and the advancement of such sum or sums shall in no way limit or bar the aforesaid option to accelerate said indebtedness.

2.  If all or any part of the Premises is sold, transferred, pledged, encumbered or conveyed, or any interest of party of the first part therein, without Beneficiary's prior written consent, Beneficiary, in its sole discretion, may declare all sums secured by this Deed to be immediately due and payable, and any attempt by party of the first part to so sell, transfer, pledge, encumber or convey the Premises, or any interest therein, in violation of this paragraph shall be null and void.

3.  Party of the first part desires to secure and make certain the payment of the Note, and of any and all renewals and extensions thereof. Now, therefore, the party of the first part agrees and binds itself that so long as any part of the indebtedness evidenced by the Note shall remain unpaid, he will pay all taxes and assessments against said property promptly when due, and deposit all tax receipts with the holder of the outstanding indebtedness secured hereby; will insure the buildings on said property for not less than the lesser of (1) the insurable value thereof or (2) the total indebtedness secured by mortgages, deeds of trust or other security instruments encumbering the aforedescribed real estate against loss or damage by fire and the perils against

4

BPJSI000271

BOOK PAGE

1519 00503

which insurance is afforded by extended coverage endorsement in some insurance company or companies approved by the holder of the outstanding indebtedness secured hereby, cause said policies to contain a standard mortgage clause in favor of the holder of said indebtedness and deposit said policies with the holder of the outstanding indebtedness secured hereby as further security for said debt; will protect the improvements on said property by proper repairs, and maintain them in good repair and condition; will not do anything or suffer or permit anything to be done whereby the lien of this Deed might or could be impaired; will pay such expenses and fees as may be necessary in the protection of said property and the maintenance and execution of this trust, including, but not being limited to, expenses incurred by the party of the second part in any legal proceeding to which it is made or becomes a party. The net proceeds resulting from the taking of all or any part of the Premises by eminent domain, or from any sale in lieu thereof, shall be applied upon the indebtedness evidenced by the Note in inverse order of its maturity; and in the event of the destruction of the improvements by fires or other casualty, the net proceeds of the insurance shall be applied upon the indebtedness evidenced by the Note in inverse order of its maturity, or at the option of the party of the first part, his heirs and assigns, in the absence of an Event of Default and if the net proceeds of the insurance are sufficient to rebuild and/or restore in full the improvements to their former condition, such proceeds may be used to restore the improvements to their former condition.

4. (a) Party of the first part shall keep and maintain the Premises in compliance with, and shall not cause or permit the Premises to be in violation of any Environmental Law (as defined herein).

(b) Party of the first part shall promptly give written notice to Beneficiary of:

(i) any proceeding or inquiry by any governmental authority (including, without limitation, the Georgia Department of Pollution Control and Ecology, Georgia Emergency Management Agency, Georgia Division of Solid Waste Management, Georgia Department of Health and Environment, and the Georgia Department of Hazardous Waste Management [the "Georgia Departments"]) with respect to the presence of any Hazardous Substance on the Premises or the migration thereof from or to other property;

(ii) all claims made or threatened by any third party against party of the first part or the Premises relating to any loss or injury resulting from any Hazardous Substance; and

(iii) Party of the first part's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Premises that could cause the Premises or any part thereof to be subject to any restrictions on the ownership, occupancy, transferability or use of the Premises under any Environmental Law, including, without limitation, party of the first part's discovery of any occurrence or condition on any real property adjoining or in the

5

**BPJSI000272**

BOOK    PAGE

1519    00504

vicinity of the Premises that could cause the Premises or any part thereof to be classified as "border-zone property" or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Premises under any Environmental Law.

(c)    Beneficiary shall have the right to join and participate in, as a party if it so elects, any legal proceedings or actions initiated in connection with any Environmental Law and have its attorneys' fees in connection therewith paid by party of the first part (which attorney's fees shall become part of the Secured Indebtedness).

(d)    Party of the first part shall protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including reasonable attorneys' fees and costs) directly or indirectly arising out of or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under or about the Premises including without limitation (i) all foreseeable consequential damages; and (ii) the costs of any required or necessary repair, cleanup or detoxification of the Premises and the preparation and implementation of any closure, remedial or other required plans. This indemnity shall survive the repayment of the Secured Indebtedness and/or the extinguishment of the lien of this Deed by foreclosure or action in lieu thereof, and this covenant shall survive such repayment or extinguishment.

(e)    In the event that an investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (the "Remedial Work") is reasonably necessary or desirable under any applicable local, state or federal law or regulation, any judicial order, or by any governmental or nongovernmental entity or person because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a Hazardous Substance in or into the air, soil, groundwater, surface water or soil vapor at, on, about, under or within the Premises (or any portion thereof), party of the first part shall within thirty (30) days after written demand for performance thereof by Beneficiary (or such shorter period of time as may be required under any applicable law, regulation, order or agreement), commence to perform, or cause to be commenced, and thereafter diligently prosecute to completion, all such Remedial Work. All Remedial Work shall be performed by one or more contractors, approved in advance in writing by Beneficiary, and under the supervision of a consulting engineer approved in advance in writing by Beneficiary. All costs and expenses of such Remedial Work shall be paid by party of the first part including, without limitation, the charges of such contractor(s) and/or the consulting engineer, and Beneficiary's reasonable attorneys' fees and costs incurred in connection with monitoring or review of such Remedial Work. In the event party of the first part shall fail to timely commence, or, cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Beneficiary may, but shall not be required to, cause such Remedial Work to be performed and all costs and expenses thereof, or incurred in connection therewith, shall become part of the Secured

6

**BPJSI000273**

BOOK    PAGE
1519    00505

Indebtedness.

(f)        Beneficiary, its agents, employees or workmen are authorized to enter at any reasonable time upon any part of the Premises for the purposes of inspecting the same for Hazardous Substances and party of the first part's compliance with this Paragraph 4 and such inspections may include, without limitation, soil borings. Party of the first part agrees to pay to Beneficiary, upon Beneficiary's demand, all expenses, costs or other amounts incurred by Beneficiary in performing any inspection for the purposes set forth in this clause (g), which expenses, costs or amounts shall become part of the Secured Indebtedness.

"Environmental Law(s)" shall mean any federal, state or local law, statute, ordinance, or regulation pertaining to health, industrial hygiene, or the environmental conditions on, under or about the Premises, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") as amended, 42 U.S.C. Section 9601 et seq., the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. Section 6901 et seq., Clean Air Act, 42 U.S.C. Sections 7401 to 7626, Emergency Planning and Community Right to Know Act, 42 U.S.C. Sections 11001 to 11050, Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. Sections 136 to 136y, Federal Water Pollution Control Act, 33 U.S.C. Sections 1251 to 1387, National Environmental Policy Act of 1969, 42 U.S.C. Sections 4321 to 4347, Safe Drinking Water Act, 42 U.S.C. Sections 300f to 300j-26, and Toxic Substances Control Act, 15 U.S.C. Sections 2601 to 2671.

The terms "Hazardous Substance" shall include without limitation:

(i)        Those substances included within the definitions of "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801 et seq., and in the regulations promulgated pursuant to said laws;

(ii)       Those substances defined as "hazardous wastes" by any of the Georgia Departments in any regulations promulgated by them;

(iii)      Those substances listed in the United States Department of Transportation Table (49 CFR 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto);

(iv)       Such other substances, materials and wastes which are or become regulated under applicable local, state or federal laws, or the United States government, or which are classified as hazardous or toxic under federal, state or local laws or regulations; and

7

**BPJSI000274**

BOOK    PAGE

1519    00506

(v)    Any material, waste or substance which is (A) petroleum, (B) asbestos, (C) polychlorinated biphenyls, (D) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. 1251 et seq. (33 U.S.C. 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. 1317); (E) flammable explosives; or (F) radioactive materials.

(h)    The covenants, representations, warranties and indemnities set forth in this Paragraph 4 shall be deemed continuing covenants, representations, warranties and indemnities running with the land for the benefit of Beneficiary, and any successors and assigns of Beneficiary, including any purchaser at a foreclosure sale, any transferee of the title of Beneficiary, or any subsequent purchaser at a foreclosure sale, and any subsequent owner of the aforedescribed real estate claiming through or under the title of Beneficiary, and shall survive any foreclosure of this Deed, repayment of the Note and any acquisition of title of Beneficiary. The amount of all such indemnified loss, damage, expense or cost shall bear interest thereon at the rate of interest in effect on the Note and shall become part of the Secured Indebtedness and shall become immediately due and payable in full on demand of Beneficiary, its successors and assigns. In the event party of the first part fails to comply or is in breach of the foregoing covenants, representations and warranties, Beneficiary in its sole discretion may declare all sums secured by this Deed to be immediately due and payable.

5.    The owner of any part of the Indebtedness may, at its discretion, advance and pay such sums as may be proper to satisfy taxes, maintain insurance and repairs, and protect and preserve the Premises; and such amounts so paid shall be held and treated as part of the expense of administering this trust, shall be repaid by party of the first part on demand with interest at the highest rate legally chargeable on the date of the advance, and shall be secured by the lien of this Deed.

6.    If party of the first part shall pay the indebtedness evidenced by the Note, when due according to the Note's terms, and shall pay such sums as shall be necessary to discharge taxes and maintain insurance and repairs and the costs, fees and expenses of making, enforcing and executing this trust, when they shall severally be due and payable, then this conveyance shall become void, and the owner of the indebtedness shall execute a proper release of lien instrument or enter marginal satisfaction on the record of this Deed, or in the alternative, party of the second part shall reconvey by quit claim the property herein described, all at the expense of said party of the first part.

But if party of the first part shall fail to pay any part of said indebtedness, whether principal or interest, promptly when the same becomes due according to the Note's terms, or shall fail to pay any sum necessary to satisfy and discharge taxes and assessments before they become delinquent, or to maintain insurance or repairs, or the necessary expense of protecting the Premises and executing this trust, or if party of the first part shall die, or upon the occurrence

8

**BPJSI000275**

BOOK    PAGE
1519    00507

of any breach or default under the terms of the Note, this instrument or any other instrument executed in connection with the Note, then or in any such event, all of the indebtedness herein secured shall, at the option of the owner of any of said indebtedness and without notice, become immediately due and payable, principal and interest, and party of the second part is hereby authorized and empowered to enter and take possession of said property, and before or after such entry to advertise the sale of said property as required by law once a week for four (4) weekly notices in some newspaper of general circulation published in Camden County, Georgia, and in which Sheriff's sales are advertised in that county or in some newspaper published in the county or counties in which the land described in this Deed is situated, if other than Camden County, Georgia, and sell the said property at public sale for cash to the highest bidder, free from equity of redemption, statutory right of redemption, homestead, dower, and all of the rights and exemptions of every kind, all of which are hereby expressly waived, and party of the second part shall execute a conveyance to the purchaser in fee simple, and deliver possession to the purchaser, which the party of the first part binds itself shall be given without obstruction, hindrance or delay. The party of the first part hereby waives all rights under the doctrine of marshalling of assets and all similar doctrines and agrees that the parcels encumbered hereby need not be foreclosed upon or sold in any particular order and may be foreclosed upon and sold individually or together. Party of the second part shall be entitled to foreclose upon and sell any part of the Premises without prejudice to the right to conduct subsequent foreclosure and sale of the balance of the Premises. The Premises or any part thereof may be foreclosed upon and sold in one parcel, or in such parcels, manner, or order as party of the second part in their sole discretion may elect, and one or more exercises of the power herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the obligations secured hereby have been performed in full. The Party of the second part may adjourn such foreclosure sale to another date certain upon announcement made before or during the appointed time for the sale.

At any such public sale, the Beneficiary may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises in fee simple, with full warranties of title, and to this end, Borrower hereby appoints Beneficiary the agent and attorney-in-fact of Borrower to make such sale and conveyance, and thereby to divest Borrower of all right, title or equity that Borrower may have in and to the Premises and to vest the same in the purchaser or purchasers at such sale or sales, and all acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon the Borrower. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative of the other remedies provided hereby or by law for the collection of the Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of the indebtedness.

If an Event of Default shall have occurred, Beneficiary may, in addition to and not in abrogation of any of the rights set forth herein, either with or without entry or taking possession, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce the payment of the Indebtedness, and (ii) to pursue any other remedy available to it,

.9

BPJSI000276

BOOK    PAGE
1519    00508

all as Beneficiary shall determine most effectual for such purposes.

The owners of any part of the indebtedness hereby secured may become the purchaser at any foreclosure sale under this conveyance. In such event, the Beneficiary or owner of the debt shall be entitled to apply all or part of the Indebtedness as a credit to the purchase price bid.

7.     If the Note secured hereby is placed in the hands of an attorney for collection, by suit or otherwise, or to enforce its collection by foreclosure or to protect the security for its payment, the party of the first part will pay all costs as provided in said Note, or, if none is so provided, a reasonable attorney's fee, and the same shall be a lien on the Premises and enforced by a sale of the property as herein provided.

8.     The proceeds of any foreclosure sale shall be applied as follows: first to the payment of the expenses of the sale, the protection of the property, including the expense of any litigation and reasonable attorney's fees, and the usual commission to the party of the second part; second, to the payment of the indebtedness herein secured or intended so to be, without preference or priority of any part over any other part, and any balance of said indebtedness remaining unpaid shall be the subject of immediate suit; and third, should there be any surplus, party of the second part will pay it to the party of the first part, or his assigns. In the event of the death, refusal, or of inability for any cause, on the part of the party of the second part named herein, or of any successor trustee, to act hereunder, or for any other reason satisfactory to the owner of the Secured Indebtedness, the owner or owners of the Secured Indebtedness are authorized either in their own name or through an attorney or attorneys in fact appointed for that purpose by written instrument duly registered, to name and appoint a successor or successors to execute this trust, such appointment to be evidenced by writing, duly acknowledged and recorded in the Register's Office for Camden County, Georgia; and when such writing shall have been so recorded, the substituted trustee named therein shall thereupon be vested with all the right and title, and clothed with all the power of the party of the second part and such like power of substitution shall continue so long as any part of the indebtedness secured hereby remains unpaid.

9.     Party of the first part, for itself, its heirs, representatives, successors and assigns, covenants and agrees that at any time after default in payment of any of the indebtedness hereby secured, or upon failure to perform any of the covenants to be kept and performed by it, party of the second part may enter upon and take possession of said property and collect the rents and profits therefrom, with payment of such to party of the second part after default being full acquittance to the tenant but party of the second part shall be required to account only for the net rents received by it; and from and after the conveyance of said property under this Deed at a foreclosure sale, party of the first part, and all persons under it, shall, at the option of the purchaser, be and become the tenants-at-will of the purchaser, at a reasonable monthly rental commencing with the date of delivery of the trustee's deed.

10

BPJSI000277

BOOK   PAGE

1519   00509

10.    In the event that more than one trustee be named herein, any one of such trustees shall be clothed with full power to act when action hereunder shall be required, and to execute any conveyance of said property.  In the event that more than one trustee be named herein and the substitution of a trustee shall become necessary for any reason the substitution of one trustee in the place of those or any of those named herein shall be sufficient.  The term "trustee" shall be construed to mean "trustees" whenever the context requires.  The necessity of the trustee herein named, or any successor in trust, making oath, filing inventory or giving bond, is expressly waived.

11.    If fulfillment of any provisions hereof or any transaction related hereto or to the Note at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein shall be illegal or unenforceable such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this indenture shall remain in full force and effect.

12.    Acquisition of the Premises or any part thereof by the Beneficiary shall not effect a merger of this Deed, which shall not be released except by a release of lien instrument executed by Beneficiary and filed in the Register's Office for Camden County, Georgia.

13.    If the Secured Indebtedness, or any part thereof, is now or hereafter further secured by chattel mortgages, deeds of trust, security interests, pledges, contracts of guaranty, assignments of leases or other securities, Beneficiary (and/or party of the second part) may, at its option, exhaust any one or more of said securities and the security hereunder either concurrently or independently, and in such order as it may determine, and Beneficiary (and/or party of the second part) shall not be required to marshall assets.

14.    No waiver by the party of the second part or by the holder of the indebtedness secured hereby shall be construed as a waiver of a subsequent similar default or any other default by the party of the first part.

15.    The singular number may be construed as plural, and the plural as singular, and pronouns occurring herein shall be construed according to their proper gender and number, as the context of this instrument may require.

16.    This Deed is to be construed in accordance with the laws of the State of Georgia.

IN WITNESS WHEREOF, the party of the first party has entered into this instrument this instrument as of the day and year first above written.

11

**BPJSI000278**

6/8/2016 11:47 AM

BOOK    PAGE

1519    00510

BPJS INVESTMENTS, LLC,
a Georgia limited liability company

By: _____
Its: _____

STATE OF ~~GEORGIA~~ *Tennessee*
COUNTY OF _Campbell_

Before me the undersigned Notary Public in and for the State and County aforesaid,
personally appeared _George C. Potter_ with whom I am
personally acquainted and who upon oath acknowledged himself to be the
_Chief Manager_ of BPJS INVESTMENTS, LLC, a Georgia
limited liability company, the within bargainer, and that he, as such officer of the limited liability
company, being authorized to so, executed the foregoing instrument for the purposes therein
contained by signing his name as _Chief Manager_ of the limited liability company.

WITNESS my hand and official seal this _19_ day of February _____, 2010.

My Commission expires: _10-5-2010_

_____
Notary Public

**CLERK'S NOTE: CONTINUE NEXT PAGE**

12

**BPJSI000279**

6/8/2016 11:47 AM

BOOK    PAGE

**EXHIBIT A TO**                         1519    00511
**DEED TO SECURE DEBT AND SECURITY AGREEMENT**

All of those certain lots lying and being in the 33rd G.M. District, Camden County,
Georgia, and being more particularly described as follows:

BEING all of the following lots located in Bridge Pointe at Jekyll Sound Subdivision as
shown on the plats of survey of the same by Ernest R. Bennett, Jr., Georgia Land
Surveyor No. 2893, dated April 28, 2006 and recorded in Plat Drawer 20, Map Nos. 26-
48, Camden County, Georgia Records, and as shown on plat of survey dated May 7,
2007, and recorded in Plat Drawer 23, Map Nos. 1-19, Camden County, Georgia Records
and plat of survey recorded in Plat Drawer 22, Map Nos. 58-67, Camden County,
Georgia Records and being identified as the following lots:

Lots 14, 15, 16, 20, 21, 22, 27, 28, 29, 32, 33, 38, 47, 48, 49, 54, 58, 59, 60, 61, 62, 63,
66, 69, 70, 71, 72, 73, 76, 83, 84, 86, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106,
107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 121, 122, 123, 125, 126,
127, 128, 129, 130, 132, 133, 134, 135, 136, 137, 138, 139, 144, 151, 159, 162, 163, 165,
167, 380, 408, 425, 428, 430, 431, 456, 459, 465, 466, 474, 477, 479, 482, 484, 485, 488,
489, 490, 492, 495, 496, 499, 503, 508, 527, 528, 532, 546, 550, 551, 552, 553, 554, 555,
556, 557, 558, 559, 560, 561, 562, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574,
575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592,
593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610,
611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 622, 625, 626, 627, 630, 631, 632,
633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 645, 647, 648, 649, 650, 651, 652,
653, 654, 655, 656, 657, 658, 659, 660, 661, 662, 663, 664, 665, 666, 667, 668, 669, 670,
671, 672, 673, 674, 675, 676, 677, 678, 679, 680, 681, 682, 683, 684, 685, 686, 687, 695,
696, and 697.

Being part of the same property conveyed by Special Warranty Deed to Jekyll Sound
Development Company, LLC, dated February 17, 2009 recorded in Book _____, Page
_____, Camden County, Georgia Records.

**BPJSI000280**

BOOK    PAGE

CHICAGO TITLE INSURANCE COMPANY
ALTA COMMITMENT
SCHEDULE B – SECTION 2

1519    00512

Commitment Number: Bridge Pointe

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims, or other matters, if any, created, first appearing in the Public Records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

**Standard Exceptions**

2. Rights or claims of parties in possession not shown by the Public Records.

3. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

4. Taxes or special assessments which are not shown as existing liens by the Public Records.

5. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.

6. Easements, or claims of easements, not shown by the Public Records.

**Special Exceptions**

7. State and County taxes for the year 2009 and subsequent years not yet due and payable.

8. Any additional taxes, interest and/or penalties which may be assessed for the current tax year or prior tax year by virtue of adjustment, re-appraisal, re-assessment, appeal or other amendment to the tax records of the county in which the Real property is located.

9. Any right, title or claim of the State of Georgia to any part of the Subject Property which is determined to be coastal marshlands within the estuarine area as defined in the Coastal Marshland Protection Act of 1970, to be all tidally influenced waters, marshes and marshland lying within the tide elevation ranges as defined in said Act.

10. Questions relating to matters of bankruptcy not shown of record in the Office of the Clerk of Superior Court of Camden County.

11. No certification is afforded as to the exact amount of acreage contained in subject property.

12. Rights of upper and lower riparian owners in and to the waters of rivers, creeks, or branches crossing or adjoining the property, and the natural flow thereof, free from diminution or pollution.

13. Restrictions imposed by the US Army Corps of Engineers upon the use of any portion of the Real Property consisting of "wetlands".

**BPJSI000281**

BOOK    PAGE

1519    00450

THIS DOCUMENT WAS PREPARED BY:

Bruce A. Maas, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, New York 14534

Property Identification No.: _See Exhibit C_

PLEASE RETURN TO:
**The Law Firm of
JENNIFER L. MACMILLAN, P.C.
P.O. Box 21159
St. Simons Island, GA 31522**

CAMDEN COUNTY GEORGIA
REAL/ESTATE TRANSFER TAX
PAID $_____
This ___ day of ___ Apr 10
_____
Clerk of Superior Court
Susan L. Waldron

FILED
CAMDEN CO. CLERK'S OFFICE

2010 APR 13  AM 11: 06

C C 2100

## SPECIAL WARRANTY DEED

THIS SPECIAL WARRANTY DEED is executed and delivered effective as of _2/11/2010_ 2010 by JEKYLL SOUND DEVELOPMENT COMPANY, LLC a Georgia limited liability company qualified to do business in Georgia, whose post office mailing address is c/o Michael Fleishman, Esq., Greenebaum Doll & McDonald PLLC, 101 South 5th Street, Suite 3300, Louisville, Kentucky ("Grantor"), to BPJS INVESTMENTS, LLC a Georgia limited liability company ("Grantee"), whose mailing address is 2195 Dover Bluff Road, Waverly, Georgia 31565.

### W I T N E S S E T H:

Grantor, in consideration of the sum of $10.00 and other good and valuable consideration, the receipt whereof is hereby acknowledged, hereby grants, bargains, sells, conveys and confirms unto the Grantee, and its personal representatives, successors and assigns, in fee simple forever, all of Grantor's right, title and interest in and to that certain portion of real property situate in Camden County, Georgia and more particularly described on Exhibit "A" (the "Property")

TOGETHER with all improvements thereon, and the tenements, hereditaments and appurtenances thereto belonging or in any way pertaining to the Property.

TO HAVE AND TO HOLD, the same in fee simple.

SUBJECT TO THE FOLLOWING (provided that reference to the following exceptions and matters is without intent to and shall not be deemed to reimpose any such exceptions and matters): (a) real estate taxes for the year 2009 and any taxes and assessments levied or assessed subsequent to the date hereof; (b) restrictions and matters appearing on the plat or common to the subdivision, and other restrictions, conditions, agreements, reservations, and utility and other easements of record; and (c) zoning, planning and land use ordinances enacted by governmental authorities, and other requirements imposed by governmental authorities.

TO HAVE AND TO HOLD said property unto Grantee, so that neither Grantor nor any person or persons claiming under Grantor shall at any time or by any means or ways, have, claim or demand any right or title to said property or appurtenances.  Where the context requires or permits "Grantor" and "Grantee" shall include their respective successors and assigns.

IN WITNESS WHEREOF, the Grantor has signed and sealed these presents the day and year first above written.

WITNESSES:

~~Kimberly Simpkins~~
233? Hersey Dr.
Louisville, Ky. 40216

Name:

*Patricia A. Ihimer*
3225 Oakwood Blvd.
Gullison rille, N 47130

Name:

GRANTOR:

JEKYLL SOUND DEVELOPMENT COMPANY,
LLC, a Georgia limited liability company

By: _____

Name: _____
Title: MANAGER
CAMDEN COUNTY DEVELOPMENT LLC

STATE OF *Kentucky*      )
                                          ) SS:
COUNTY OF *Jefferson*   )

I HEREBY CERTIFY that the foregoing instrument was acknowledged and executed before me this *18* day of *February*, 2010 by *Thomas A. Dieez*, as *manager* of JEKYLL SOUND DEVELOPMENT COMPANY, LLC, a Georgia limited liability company qualified to do business in Georgia, on behalf of said entities. He is personally known to me, or  has produced evidence of his identity satisfactory to me.

_____
Notary Public    *Commission expires July 21, 2012*
[Notary Seal]

CLERK'S NOTE: CONTINUE NEXT PAGE

BOOK PAGE

1519 00452

EXHIBIT "A"

All that lot, tract, or parcel of land lying and being in the 33rd G. M. District, Camden County, Georgia, more particularly described as follows:

Beginning at an iron pipe at the southeasternmost corner of Lot 29 of Hickory Bluff Extension No. 1 Subdivision, as shown on that certain plat of survey by George P. Underwood, Georgia Registered Land Surveyor No. 1927, dated September 25, 1978, recorded in Plat Book 8, Page 9, Camden County, Georgia, records; AND FROM SAID POINT OF BEGINNING, running North 01° 05' 29" West 479.10 feet to the mean low water mark of the Little Satilla River; thence, running in a generally southeasterly direction along said low water mark 289 feet, more or less, to a point; thence, running South 62° 02' 21" West 152 feet, more or less, to an iron pin; thence, running South 61° 43' 19" East 76.28 feet to an iron pin; thence, running South 06° 16' 07" West along the westerly line of Lot 101 of Hickory Bluff Subdivision 143.19 feet to an iron pin in the northerly right-of-way line of Hickory Bluff Road (a 60-foot right-of-way); thence, running in a westerly direction along said northerly right-of-way line a chord distance of 280.74 feet to an iron pipe which is the point of beginning (the bearing of the aforesaid chord being South 86° 05' 23" West).

LESS AND EXCEPT the following portion of such property: Beginning at an iron pin at the southwesterly corner of Lot 101 Hickory Bluff Subdivision, as shown on that plat recorded in Plat Book 4, Page 63, Camden County, Georgia, records; AND FROM SAID POINT OF BEGINNING, running in a westerly direction along the northerly right-of-way line of Hickory Bluff Road, and along an arc of a curve concave to the south and having a radius of 1421.18 feet, a chord distance of 30.12 feet to a point (the bearing of the aforesaid chord being North 88° 50' 57" West); thence, running North 06° 16' 07" East 158 feet to a point in the southwesterly line of lands now or formerly of Deborah H. Fendig (according to deed recorded in Deed Book 782, Page 457, aforesaid records); thence, running South 61° 43' 19" East along said southwesterly line 32.36 feet to an iron pin; thence, running South 06° 16' 07" West 143.19 feet to an iron pin which is the point of beginning. Containing 0.10 acre, more or less, and being the same land conveyed by White Sands L.L.C. to Camden County, Georgia, by instrument dated March 18, 2004, recorded in Deed Book 1038, Page 603, Camden County, Georgia, records.

Said property being the same property shown on that certain survey entitled "Map to Shaw Boundary Survey of A Portion of the Honey Creek Tract, 35th District G.M., Camden County, Georgia," dated April 28, 2006, revised March 29, 2007 and further revised May 22, 2007, prepared by Privett-Bennett & Associates, Inc. certified by Ernest R. Bennett, Jr. G.R.L.S. No 2899.

LESS AND EXCEPT THE FOLLOWING LOTS IN BRIDGE POINTE AT JEKYLL SOUND SUBDIVISION, PHASE 1, WHICH HAVE BEEN CONVEYED TO THIRD PARTIES AS SHOWN ON EXHIBIT "A-1" CONSISTING OF 14 PAGES WHICH BY THIS REFERENCE IS INCORPORATED HEREIN.

EXHIBIT A
LEGAL DESCRIPTION
(Bridge Pointe)

All that lot, tract, or parcel of land lying and being in the 33rd G.M. District, Camden County, Georgia, consisting of 1,131.01 acres and being shown on that certain plat of survey entitled "Map to Show Boundary Survey of A Portion of the Honey Creek Tract, 33rd District G.M., Camden County, Georgia," dated April 28, 2006, prepared by Prince-Bennett & Associates, Inc., certified by Ernest R. Bennett, Jr. G.R.L.S. No 2693, as recorded in the Office of the Clerk of Superior Court of Camden County, Georgia in Plat Drawer 20, as Map No. 27, and being more particularly described as follows: Beginning at an iron pipe at the point where the northwesterly right-of-way line of Georgia Episcopal Center Road (an 80-foot right-of-way) intersects the northerly right-of-way line of Dover Bluff Road (an 80-foot right-of-way); AND FROM SAID POINT OF BEGINNING, running in a westerly direction along the northerly right-of-way line of Dover Bluff Road a chord distance of 26.64 feet to an iron pipe (the bearing of the aforesaid chord being North 77 degrees 22' 17" West); thence, running North 78 degrees 37' 00" West along said northerly right-of-way line 2081.34 feet to an iron pin; thence, running in a westerly direction along said northerly right-of-way line a chord distance of 256.93 feet to an iron pin (the bearing of the aforesaid chord being North 62 degrees 26' 30" West); thence running North 46 degrees 16' 00" West along the northeasterly right-of-way line of Dover Bluff Road 1700.12 feet to an iron pipe; thence, running in a northwesterly direction along said northeasterly right-of-way line a chord distance of 153.43 feet to an iron pipe (the bearing of the aforesaid chord being North 46 degrees 08' 00" West); thence running North 46 degrees 00'00" West along said northeasterly right-of-way line 2772.29 feet to an iron pipe; thence, running in a northwesterly direction along said northeasterly right-of-way line a chord distance of 112.01 feet, more or less, to a point in the centerline of Hull Creek (the bearing of the aforesaid chord being North 48 degrees 10' 48" West) thence, running in a generally northerly direction along the centerline of Hull Creek 5624 feet, more or less, to a point in the low water mark of Maiden Creek; thence, running in a generally easterly and then northerly direction along said low water mark 6341 feet more or less, to a point, thence, continuing in a generally easterly direction along said low water mark 5834 feet, more or less, to a point in the low water mark of Foster's Creek; thence, running in a generally westerly direction along the low water mark of Foster's Creek 12,269 feet, more or less, to the end of navigability of said creek, as shown on that plat recorded in Plat Cabinet 2, File 189-B, Camden County, Georgia records; thence, running in a southerly direction along said boundary line to a point in the low water mark of the southerly side of said creek; thence, running generally in an easterly direction along said low water mark 12,485 feet, more or less, to a point in the low water mark of Maiden Creek; thence, running in an easterly direction along said low water mark and then in a southerly direction along the westerly low water mark of Honey Creek 4537 feet, more or less, to a point in the northerly line of lands now or formerly of the Bishop of the Episcopal Diocese of Georgia, Inc.; thence, running in a northerly and then westerly direction along a line separating high ground from salt marsh 2355 feet, more or less, to a point in the westerly line of said lands of Bishop of the Episcopal Diocese of Georgia, Inc.; thence, running South 24 degrees 28' 38" West along the westerly line of said lands 1000 feet, more or less, to a 5/8 inch rebar; thence, running South 24 degrees 34' 52" West along said westerly line 1769.49 feet to a concrete monument; thence, running South 28 degrees 24' 47" East along the southerly line of said lands of the Episcopal Diocese of Georgia 1013.26 feet to a concrete monument; thence running South 57 degrees 44' 11" West along the northwesterly right-of-way line of Georgia Episcopal Center Road 2399.68 feet to an iron pipe which is the POINT OF BEGINNING.

Said property being the same property shown on that certain survey entitled "Map to Show Boundary Survey of A Portion of the Honey Creek Tract, 33rd District G.M., Camden County, Georgia," dated April 28, 2006, revised March 29, 2007 and further revised May 22, 2007, prepared by Privett-Bennett & Associates, Inc. certified by Ernest R. Bennett, Jr. G.R.L.S. No 2893.

LESS AND EXCEPT THE FOLLOWING LOTS IN BRIDGE POINTE AT JEKYLL SOUND SUBDIVISION, PHASE 1, WHICH HAVE BEEN CONVEYED TO THIRD PARTIES AS SHOWN ON EXHIBIT "A-1" CONSISTING OF 14 PAGES WHICH BY THIS REFERENCE IS INCORPORATED HEREIN;

EXHIBIT "A-1" to LEGAL DESCRIPTION:

LOTS CONVEYED AT BRIDGE POINTE AT JEKYLL SOUND

Lot 482
Book 1261, Page 768

Lot 524
Book 1260, Page 175

Lot 526
Book 1260, Page 183

Lot 703
Book 1260, Page 276

Lot 251
Book 1260, Page 355

Lot 9
Book 1260, Page 357

Lot 347
Book 1260, Page 359

Lot 516
Book 1260, Page 373

Lot 53
Book 1260, Page 376

Lot 55
Book 1260, Page 385

Lot 126
Book 1261, Page 32

Lot 266
Book 1261, Page 42

Lot 345
Book 1261, Page 52

Lot 259
Book 1262, Page 201

Lots 522 & 523
Book 1261, Page 70

Lot 362
Book 1261, Page 70

Lot 963
Book 1261, Page 72

Lot 94
Book 1261, Page 487

Lot 88
Book 1261, Page 588

Lot 389
Book 1261, Page 598

Lot 373
Book 1261, page 600

Lot 478
Book 1261, Page 702

Lot 167
Book 1261, Page 704

Lot 482
Book 1261, Page 708

Lot 222
Book 1261, Page 800

Lot 301
Book 1261, Page 802

Lot 363
Book 1261, Page 812

Lot 535
Book 1264, Page 707

A-1-1

BOOK PAGE

1519 00456

Lot 321
Book 1262, Page 203

Lots 4 & 139
1264, Page 743

Lot 404
Book 1262, Page 416

Lot 85
Book 1264, Page 810

Lot 276
Book 1262, Page 418

Lot 145
Book 1264, Page 818

Lot 287
Book 1262, Page 447

Lot 11
Book 1265, Page 20

Lot 139
Book 1262, Page 632

Lot 400
Book 1265, Page 21

Lot 6
Book 1263, Page 112

Lot 367
Book 1265, Page 108

Lot 65
Book 1263, Page 120

Lot 289
Book 1265, Page 137

Lot 334
Book 1263, Page 728

Lot 239
Book 1265, Page 150

Lot 549
Book 1263, Page 738

Lot 365
Book 1265, Page 452

Lot 242
Book 1263, Page 499

Lot 307
Book 1266, Page 434

Lot 413
Book 1263, Page 524

Lot 150
Book 1265, Page 698

Lot 511
Book 1263, Page 1

Lot 148
Book 1266, Page 705

Lot 3
Book 1264, Page 68

Lot 103
Book 1265, Page 740

Lot 378
Book 1264, Page 121

Lot 171
Book 1265, Page 761

Lot 546
Book 1265, Page 486

Lot 219
Book 1267, Page 752

A-2-0

BOOK    PAGE

1519    00457

| | |
|---|---|
| Lot 75<br>Book 1266, Page 356 | Lot 210<br>Book 1268, Page 82 |
| Lot 398<br>Book 1266, Page 404 | Lot 207<br>Book 1268, Page 91 |
| Lot 283<br>Book 1267, Page (9 | Lot 335<br>Book 1268, Page 100 |
| Lot 13<br>Book 1267, Page 84 | Lot 519<br>Book 1268, Page 421 |
| Lot 392<br>Book 1267, Page 69 | Lot 445<br>Book 1268, Page 473 |
| Lot 238<br>Book 1267, Page 181 | Lot 205<br>Book 1268, Page 132 |
| Lot 244<br>Book 1267, Page 722 | Lot 331<br>Book 1268, Page 153 |
| Lot 10<br>Book 1267, Page 724 | Lot 340<br>Book 1268, Page 182 |
| Lot 227<br>Book 1267, Page 216 | Lot 524<br>Book 1268, Page 175 |
| Lot 279<br>Book 1267, Page 774 | Lot 386<br>Book 1268, Page 478 |
| Lot 235<br>Book 1267, Page 181 | Lot 276<br>Book 1268, Page 480 |
| Lot 277<br>Book 1267, Page 722 | Lot 283<br>Book 1265, Page 504 |
| Lot 10<br>Book 1267, Page 724 | Lot 179<br>Book 1268, Page 504 |
| Lot 227<br>Book 1268, Page 726 | Lot 36<br>Book 1268, Page 516 |
| Lot 303<br>Book 1268, Page 152 | Lot 395<br>Book 1251, Page 301 |

A-1-3

Lot 333
Book 1269, Page 398

Lot 258
Book 1269, page 781

Lot 257
Book 1269, Page 761

Lot 341
Book 1269, Page 720

Lot 34
Book 1270, Page 315

Lot 352
Book 1270, Page 366

Lot 303
Book 1270, Page 717

Lot 351
Book 1270, Page 783

Lot 335
Book 1271, Page 769

Lot 353
Book 1271, Page 379

Lot 331
Book 1271, Page 301

Lot 263
Book 1271, Page 614

Lot 371
Book 1271, Page 692

Lot 318
Book 1271, Page 753

Lot 31
Book 1273, Page 749

Lot 92
Book 1272, Page 89

Lot 232
Book 1272, Page 272

Lot 437
Book 1272, Page 294

Lot 315
Book 1272, Page 282

Lot 399
Book 1272, Page 368

Lot 398
Book 1272, Page 396

Lot 245
Book 1272, Page 543

Lot 315
Book 1272, Page 554

Lot 318
Book 1272, Page 201

Lot 241
Book 1272, Page 523

Lot 152
Book 1273, Page 577

Lot 622
Book 1273, Page 585

Lot 437
Book 1273, Page 587

Lot 235
Book 1273, Page 5601

Lot 431
Book 1277, Page 510

A.J.4

EXHIBIT

Lot 476
Book 1276, Page 304

Lot 371
Book 1276, Page 313

Lot 295
Book 1274, Page 320

Lots 166 & 167
Book 1275, Page 257

Lot 284
Book 1275, Page 369

Lot 12
Book 1275, Page 273

Lot 382
Book 1075, Page 275

Lot 285
Book 1276, Page 82

Lot 361
Book 1276, Page 456

Lot 186
Book 1276, Page 211

Lot 381
Book 1277, Page 218

Lot 251
Book 1277, Page 220

Lot 372
Book 1377, Page 222

Lot 96
Book 1273, Page 251

Lot 201
Book 1282, Page 306

Lot 480
Book 1277, Page 342

Lot 382
Book 1277, Page 514

Lot 397
Book 1837, Page 525

Lot 531
Book 1278, Page 584

Lot 412
Book 1279, Page 730

Lot 343
Book 1281, Page 173

Lot 484
Book 1284, Page 183

Lot 484
Book 1281, Page 121

Lot 469
Book 1281, Page 195

Lot 293
Book 1281, Page 203

Lot 351
Book 1281, Page 211

Lot 438
Book 1281, Page 571

Lot 391
Book 1282, Page 392

Lot 196
Book 1282, Page 364

Lot 271
Book 1285, Page 446

Lot 199,
Book 1282, Page 325

Lot 525,
Book 1283, Page 388

Lot 266,
Book 1283, Page 398

Lot 252,
Book 1283, Page 540

Lot 512,
Book 1283, Page 556

Lot 370,
Book 1283, Page 802

Lot 303,
Book 1284, Page 1

Lot 288,
Book 1284, Page 536

Lot 223,
Book 1285, Page 33

Lot 336,
Book 1285, Page 43

Lot 278,
Book 1285, Page 265

Lot 433,
Book 1285, Page 298

Lot 311,
Book 1285, Page 308

Lot 541,
Book 1285, Page 310

Lot 277,
Book 1286, Page 779

Lot 229,
Book 1288, Page 303

Lot 301,
Book 1289, Page 165

Lot 519,
Book 1288, Page 281

Lot 462,
Book 1289, Page 59

Lot 515,
Book 1289, Page 61

Lot 37,
Book 1289, Page 61

Lot 518,
Book 1289, Page 73

Lot 426,
Book 1289, Page 426

Lot 393,
Book 1289, Page 791

Lot 395,
Book 1290, page 336

Lot 223,
Book 1290, Page 547

Lot 299,
Book 1292, Page 47

Lot 148,
Book 1292, Page 480

Lot 394,
Book 1892, Page 528

Lot 37,
Book 1292, Page 717

A-1-6

Lot 85
Book 1295, Page 109

Lot 60
Book 1295, Page 111

Lot 331
Book 1295, Page 113

Lot 368
Book 1295, Page 115

Lot 437
Book 1295, Page 117

Lot 466
Book 1295, Page 119

Lot 334
Book 1295, Page 121

Lot 3E
Book 1295, Page 131

Lot 344
Book 1295, Page 141

Lot 5
Book 1296, Page 517

Lot 510
Book 1296, Page 271

Lot 403
Book 1297, Page 299

Lot 25
Book 1295, Page 308

Lot 19
Book 1295, Page 209

Lot 346
Book 1304, Page 164

Lot 29
Book 1298, Page 782

Lot 514
Book 1298, Page 213

Lot 428
Book 1299, Page 215

Lot 341
Book 1299, Page 457

Lot 306
Book 1300, Page 695

Lot 520
Book 1301, Page 906

Lot 301
Book 1302, Page 94

Lot 390
Book 1301, Page 538

Lot 300
Book 1304, Page 569

Lot 18
Book 1302, Page 784

Lot 501
Book 1302, Page 391

Lot 194
Book 1301, Page 848

Lot 325
Book 1304, Page 123

Lot 262
Book 1304, Page 148

Lot 209
Book 1301, Page 876

A-13

Lot 21V.
Book 1304, Page 466

Lot 361
Book 1304, Page 501

Lot 166
Book 1304, Page 607

Lot 1
Book 1306, Page 420

Lot 356
Book 1306, Page 518

Lot 368
Book 1306, Page 391

Lot 55
Book 1306, Page 547

Lot 237
Book 1306, Page 572

Lot 417
Book 1306, Page 852

Lot 363
Book 1307, Page 4

Lot 193
Book 1307, Page 76

Lot 26
Book 1307, Page 100

Lot 340
Book 1307, Page 773

Lot 287
Book 1307, Page 775

Lot 231
Book 1320, Page 262

Lot 21
Book 1310, Page 657

Lot 148
Book 1310, Page 667

Lot 255
Book 1311, Page 447

Lot 362
Book 1312, Page 481

Lot 361
Book 1312, Page 483

Lot 329
Book 1313, Page 233

Lot 336
Book 1313, Page 235

Lot 363
Book 1313, Page 566

Lot 226
Book 1315, Page 194

Lot 526
Book 1314, Page 425

Lot 260
Book 1315, Page 433

Lot 265
Book 1316, Page 839

Lot 212
Book 1316, Page 841

Lot 169
Book 1316, Page 840

Lot 387
Book 1321, Page 186

A-1-8

| Lot 317 | Lot 229 |
|---|---|
| Book 1324, Page 724 | Book 1331, Page 346 |
| Lot 263 | Lot 319 |
| Book 1325, Page 329 | Book 1332, Page 498 |
| Lot 305 | Lot 440 |
| Book 1325, Page 231 | Book 1333, Page 610 |
| Lot 208 | Lot 85 |
| Book 1329, Page 393 | Book 1333, Page 620 |
| Lot 447 | Lot 384 |
| Book 1330, Page 47 | Book 1334, Page 143 |
| Lot 325 | Lot 27 |
| Book 1331, Page 156 | Book 1334, Page 232 |
| Lot 325 | Lot 181 |
| Book 1331, Page 157 | Book 1337, Page 360 |
| Lot 325 | Lot 7 |
| Book 1331, Page 158 | Book 1338, Page 325 |
| Lot 325 | Lot 239 |
| Book 1331, Page 159 | Book 1340, Page 434 |
| Lot 325 | Lot 2 |
| Book 1331, Page 160 | Book 1341, Page 120 |
| Lot 282 | Lot 6 |
| Book 1331, Page 161 | Book 1343, Page 536 |
| Lot 282 | Lot 170 |
| Book 1331, Page 162 | Book 1344, Page 548 |
| Lot 282 | Lot 372 |
| Book 1331, Page 163 | Book 1344, Page 24 |
| Lot 282 | Lot 432 |
| Book 1331, Page 164 | Book 1344, Page 49 |
| Lot 189 | Lot 473 |
| Book 1345, Page 660 | Book 1346, Page 89 |

Lot 164
Book 1346, Page 78

Lot 284
Book 1347, Page 209

Lot 853
Book 1347, Page 475

Lot 227
Book 1348, Page 155

Lot 494
Book 1348, Page 176

Lot 249
Book 1348, Page 451

Lot 493
Book 1348, Page 607

Lot 409
Book 1348, Page 627

Lot 160
Book 1348, Page 191

Lot 516
Book 1348, Page 400

Lot 40
Book 1349, Page 420

Lot 543
Book 1349, Page 446

Lot 470
Book 1350, Page 406

Lot 451
Book 1350, Page 429

Lot 407
Book 1350, Page 448

Lot 475
Book 1350, Page 469

Lot 79
Book 1350, Page 517

Lot 452
Book 1351, Page 97

Lot 45
Book 1347, Page 199

Lot 176
Book 1347, Page 261

Lot 89
Book 1347, Page 775

Lot 271
Book 1348, Page 166

Lot 184
Book 1348, Page 228

Lot 44
Book 1348, Page 297

Lot 185
Book 1348, Page 917

Lot 436
Book 1348, Page 578

Lot 545
Book 1349, Page 153

Lot 603
Book 1349, Page 410

Lot 498
Book 1349, Page 435

Lot 175
Book 1349, Page 452

Lot 82
Book 1350, Page 412

Lot 304
Book 1350, Page 432

Lot 69
Book 1350, Page 432

Lot 107
Book 1350, Page 507

Lot 188
Book 1350, Page 527

Lot 354
Book 1365, Page 265

Lot 410
Book 1367, Page 60

Lot 401
Book 1368, Page 50

Lot 396
Book 1369, Page 415

Lot 164
Book 1373, Page 123

Lot 507
Book 1395, Page 767

Lot 299
Book 1380, Page 416

Lot 411
Book 1377, Page 21

Lot 530
Book 1398, Page 412

Lot 471
Book 1395, Page 655

Lot 472
Book 95, Page 677

Lot 539
Book 95, Page 699

Lot 221
Book 95, Page 720

Lot 402
Book 95, Page 721

Lot 25
Book 95, Page 722

Lot 434
Book 1407, Page 20

Lot 378
Book 95, Page 748

Lot 288
Book 1398, Page 803

Lot 87
Book 1598, Page 829

Lot 243
Book 1398, Page 856

Lot 80
Book 1399, Page 27

Lot 157
Book 1399, Page 57

Lot 342
Book 1399, Page 73

Lot 460
Book 1399, Page 99

Lot 177
Book 99, Page 145

Lot 409
Book 99, Page 165

Lot 182
Book 1401, Page 1

Lot 304
Book 1404, Page 27

Lot 33
Book 1404, Page 180

Lot 193
Book 1404, Page 216

Lot 52
Book 1405, Page 850

Lot 394
Book 1408, Page 374

Lot 153
Book 1404, Page 291

Lot 155
Book 1404, Page 370

Lot 303
Book 1404, Page 422

Lot 565
Book 1404, Page 425

Lot 438
Book 1405, Page 587

Lot 313
Book 1505, Page 607

Lot 422
Book 1505, Page 635

Lot 250
Book 1392, Page 549

Lot 448
Book 1505, Page 636

Lot 420
Book 1405, Page 638

Lot 87
Book 1405, Page 664

Lot 421
Book 1379, Page 51

Lot 399
Book 1382, Page 175

Lot 57
Book 1364, Page 422

Lot 336
Book 1364, Page 422

Lot 249
Book 1404, Page 395

Lot 418
Book 1404, Page 344

Lot 79
Book 1412, Page 276

Lot 411
Book 1379, Page 51

Lot 67
Book 1417, Page 497

Lot 68
Book 1417, Page 498

Lot 239
Book 1417, Page 499

Lot 41
Book 1383, Page 233

Lot 881
Book 1418, Page 294

Lot 131
Book 1421, Page 94

Lot 120
Book 1424, Page 100

Lot 407
Book 1427, Page 202

Lot 192
Book 1384, Page 193

Lot 197
Book 1363, Page 822

Lot 329
Book 1364, Page 422

Lot 428
Book 1364, Page 422

N-1-73

BOOK    PAGE
1519    00467

As more fully and accurately shown and described on that certain plat of survey by Ernest R. Bennett, Jr., Georgia Registered Land Surveyor No. 2893, dated April 28, 2006, and recorded in Plat Drawer 20, Maps Nos. 28-48, Camden County, Georgia Records, and as shown on Replat #1, as more fully and accurately described on that certain plat of survey by Ernest R. Bennett, Jr., Georgia Registered Land Surveyor No. 2893, dated May 7, 2007, and recorded in Plat Drawer 23, Maps Nos. 1-19, Camden County, Georgia Records, which recorded plats are incorporated herein by reference and made a part of this description by this reference.

FURTHERMORE, LESS AND EXCEPT THE FOLLOWING LOTS IN BRIDGE POINTE AT JEKYLL SOUND SUBDIVISION, PHASE 2, WHICH HAVE BEEN CONVEYED TO THIRD PARTIES:

Lot 624
Book 1409, Page 218

Lot 628
Book 1418, Page 257

Lot 623
Book 1404, Page 251

Lot 629
Book 1404, Page 277

Lot 646
Book 1413, Page 519

Lot 644
Book 1505, Page 636

Name
Description / Street Address
Map Number
Date Paid
Total Due Select

BRIDGE POINTE AT JEKYLL SOUND LC
docks / L S/S MAIDEN CREEK NLY
139--054-
$9805.15

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 14 BRIDGE POINTE PH 1
139B--014-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 15 BRIDGE POINTE PH 1
139B--015-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 16 BRIDGE POINTE PH 1
139B--016-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 20 BRIDGE POINTE PH 1
139B--020-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 21 BRIDGE POINTE PH 1
139B--021-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 22 BRIDGE POINTE PH 1
139B--022-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 27 BRIDGE POINTE PH 1
139B--027-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 28 BRIDGE POINTE PH 1
139B--028-
$3117.94

Page 1 of 31

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 29 BRIDGE POINTE PH 1
139B-029-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 32 BRIDGE POINTE PH 1
139B-032-
$872.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 33 BRIDGE POINTE PH 1
139B-033-
$872.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 38 BRIDGE POINTE PH 1
139B-038-
$872.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 45 BRIDGE POINTE PH 1
139B-045-
$980.05

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 46 BRIDGE POINTE PH 1
139B-046-
$980.05

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 47 BRIDGE POINTE PH 1
139B-047-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 48 BRIDGE POINTE PH 1
139B-048-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 49 BRIDGE POINTE PH 1
139B-049-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 54 BRIDGE POINTE PH 1
139B-054-
$1031.98

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 58 BRIDGE POINTE PH 1
139B--058-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 59 BRIDGE POINTE PH 1
139B--059-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 60 BRIDGE POINTE PH 1
139B--060-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 61 BRIDGE POINTE PH 1
139B--061-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 62 BRIDGE POINTE PH 1
139B--062-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 63 BRIDGE POINTE PH 1
139B--063-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 66 BRIDGE POINTE PH 1
139B--066-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 69 BRIDGE POINTE PH 1
139B--069-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 70 BRIDGE POINTE PH 1
139B--070-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 71 BRIDGE POINTE PH 1
139B--071-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 72 BRIDGE POINTE PH 1
139B--072-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 73 BRIDGE POINTE PH 1
139B--073-
$3117.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 76 BRIDGE POINTE PH 1
139B--076-
$1084.51

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 83 BRIDGE POINTE PH 1
139B--083-
$1084.61

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 84 BRIDGE POINTE PH 1
139B--084-
$1084.51

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 86 BRIDGE POINTE PH 1
139B--086-
$1084.51

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 96 BRIDGE POINTE PH 1
139B--096-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 97 BRIDGE POINTE PH 1
139B--097-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 98 BRIDGE POINTE PH 1
139B--098-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 99 BRIDGE POINTE PH 1
139B--099-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 100 BRIDGE POINTE PH 1
139B--100-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 101 BRIDGE POINTE PH 1
139B--101-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 102 BRIDGE POINTE PH 1
139B--102-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 103 BRIDGE POINTE PH 1
139B--103-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 104 BRIDGE POINTE PH 1
139B--104-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 105 BRIDGE POINTE PH 1
139B--105-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 106 BRIDGE POINTE PH 1
139B--106-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 107 BRIDGE POINTE PH 1
139B--107-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 108 BRIDGE POINTE PH 1
139B--108-
$9077.69

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 109 BRIDGE POINTE PH 1
139B--109-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 110 BRIDGE POINTE PH 1
139B--110-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 111 BRIDGE POINTE PH 1
139B--111-
$9077.09

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 112 BRIDGE POINTE PH 1
139B--112-
$9984.81

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 113 BRIDGE POINTE PH 1
139B--113-
$8086.87

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 114 BRIDGE POINTE PH 1
139B--114-
$5565.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 115 BRIDGE POINTE PH 1
139B--115-
$5351.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 116 BRIDGE POINTE PH 1
139B--116-
$4237.85

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 117 BRIDGE POINTE PH 1
139B--117-
$4237.85

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 118 BRIDGE POINTE PH 1
139B--118-
$4237.85

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 119 BRIDGE POINTE PH 1
139B--119-
$4237.85

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 121 BRIDGE POINTE PH 1
139B--121-
$8852.85

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 122 BRIDGE POINTE PH 1
139B--122-
$7526.36

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 123 BRIDGE POINTE PH 1
139B--123-
$4240.92

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 125 BRIDGE POINTE PH 1
139B--125-
$3998.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 126 BRIDGE POINTE PH 1
139B--126-
$3998.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 127 BRIDGE POINTE PH 1
139B--127-
$3998.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 128 BRIDGE POINTE PH 1
139B--128-
$3998.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 129 BRIDGE POINTE PH 1
139B--129-
$3998.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 130 BRIDGE POINTE PH 1
139B--130-
$3998.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 132 BRIDGE POINTE PH 1
139B--132-
$3598.36

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 133 BRIDGE POINTE PH 1
139B--133-
$3598.36

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 134 BRIDGE POINTE PH 1
139B--134-
$3598.36

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 135 BRIDGE POINTE PH 1
139B--135-
$3207.95

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 136 BRIDGE POINTE PH 1
139B--136-
$3207.95

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 137 BRIDGE POINTE PH 1
139B--137-
$3207.95

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 138 BRIDGE POINTE PH 1
139B--138-
$3207.95

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 139 BRIDGE POINTE PH 1
139B--139-
$3207.95

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 141 BRIDGE POINTE PH 1
139W--141-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 142 BRIDGE POINTE PH 1
139B--142-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 143 BRIDGE POINTE PH 1
139B--143-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 144 BRIDGE POINTE PH 1
139B--144-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 151 BRIDGE POINTE PH 1
139B--151-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 159 BRIDGE POINTE PH 1
139B--159-
$1031.98

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 162 BRIDGE POINTE PH 1
139B--162-
$1031.98

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 163 BRIDGE POINTE PH 1
139B--163-
$1031.98

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 165 BRIDGE POINTE PH 1
139B--165-
$1031.98

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 167 BRIDGE POINTE PH 1
139B--167-
$961.93

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 171 BRIDGE POINTE PH 1
139B--171-
$961.93

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 173 BRIDGE POINTE PH 1
139B--173-
$961.93

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 174 BRIDGE POINTE PH 1
139B--174-
$1069.63

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 183 BRIDGE POINTE PH 1
139B-183-
$961.93

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 186 BRIDGE POINTE PH 1
139B-186-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 187 BRIDGE POINTE PH 1
139B-187-
$1125.19

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 190 BRIDGE POINTE PH 1
139B-190-
$961.93

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 200 BRIDGE POINTE PH 1
139B-200-
$1113.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 209 BRIDGE POINTE PH 1
139B-209-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 210 BRIDGE POINTE PH 1
139B-210-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 211 BRIDGE POINTE PH 1
139B-211-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 212 BRIDGE POINTE PH 1
139B-212-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 213 BRIDGE POINTE PH 1
139B-213-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 215 BRIDGE POINTE PH 1
139B--215-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 216 BRIDGE POINTE PH 1
139B--216-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 217 BRIDGE POINTE PH 1
139B--217-
$3170.27

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 218 BRIDGE POINTE PH 1
139B--218-
$2667.22

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 228 BRIDGE POINTE PH 1
139B--228-
$1113.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 233 BRIDGE POINTE PH 1
139B--233-
$1113.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 236 BRIDGE POINTE PH 1
139B--236-
$672.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 247 BRIDGE POINTE PH 1
139B--247-
$1113.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 249 BRIDGE POINTE PH 1
139B--249-
$1113.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 269 BRIDGE POINTE PH 1
139B--269-
$925.77

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 290 BRIDGE POINTE PH 1
139B-290-
$1165.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 294 BRIDGE POINTE PH 1
139B-294-
$1165.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 309 BRIDGE POINTE PH 1
139B-309-
$872.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 328 BRIDGE POINTE PH 1
139B-328-
$1165.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 332 BRIDGE POINTE PH 1
139B-332-
$1165.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 339 BRIDGE POINTE PH 1
139B-339-
$1165.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 380 BRIDGE POINTE PH 1
139B-380-
$872.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 408 BRIDGE POINTE PH 1
139B-408-
$1196.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 425 BRIDGE POINTE PH 1
139B-425-
$1196.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 428 BRIDGE POINTE PH 1
139B-428-
$1196.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 430 BRIDGE POINTE PH 1
139B—430-
$1196.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 431 BRIDGE POINTE PH 1
139B—431-
$1196.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 444 BRIDGE POINTE PH 1
139B—444-
$1329.68

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 447 BRIDGE POINTE PH 1
139B—447-
$1196.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 450 BRIDGE POINTE PH 1
139B—450-
$1465.57

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 456 BRIDGE POINTE PH 1
139B—456-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 459 BRIDGE POINTE PH 1
139B—459-
$1561.90

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 465 BRIDGE POINTE PH 1
139B—465-
$1561.90

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 466 BRIDGE POINTE PH 1
139B—466-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 474 BRIDGE POINTE PH 1
139B—474-
$1516.40

BOOK PAGE
1519 00481

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 477 BRIDGE POINTE PH 1
139B-477-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 479 BRIDGE POINTE PH 1
139B-479-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 482 BRIDGE POINTE PH 1
139B-482-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 484 BRIDGE POINTE PH 1
139B-484-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 485 BRIDGE POINTE PH 1
139B-485-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 488 BRIDGE POINTE PH 1
139B-488-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 489 BRIDGE POINTE PH 1
139B-489-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 490 BRIDGE POINTE PH 1
139B-490-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 492 BRIDGE POINTE PH 1
139B-492-
$1900.49

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 495 BRIDGE POINTE PH 1
139B-495-
$1557.41

Page 14 of 31

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 496 BRIDGE POINTE PH 1
139B--496-
$1557.41

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 499 BRIDGE POINTE PH 1
139B--499-
$1557.41

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 503 BRIDGE POINTE PH 1
139B--503-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 508 BRIDGE POINTE PH 1
139B--508-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 527 BRIDGE POINTE PH 1
139B--527-
$1516.40

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 528 BRIDGE POINTE PH 1
139B--528-
$1050.43

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 532 BRIDGE POINTE PH 1
139B--532-
$1592.21

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 546 BRIDGE POINTE PH 1
139B--546-
$1588.54

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 550 BRIDGE POINTE PH 1
139B--550-
$1557.41

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L TRACTS A1-A10, B, C, D, E, F, G,
139B--551A
$1505.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L TRACTS A1-A10, B, C, D, E, F, G,
BEACON POINTE PKWY
139B-551A-
$1557.41

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 552 BRIDGE POINTE PH 2
SAND DUNE DR
139B-552-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 553 BRIDGE POINTE PH 2
SAND DUNE DR
139B-553-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 554 BRIDGE POINTE PH 2
SAND DUNE DR
139B-554-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 555 BRIDGE POINTE PH 2
SAND DUNE DR
139B-555-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 556 BRIDGE POINTE PH 2
SAND DUNE DR
139B-556-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 557 BRIDGE POINTE PH 2
SAND DUNE DR
139B-557-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 558 BRIDGE POINTE PH 2
SAND DUNE DR
139B-558-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 559 BRIDGE POINTE PH 2
SAND DUNE DR
139B--559-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 560 BRIDGE POINTE PH 2
SAND DUNE DR
139B--560-
$1445.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 561 BRIDGE POINTE PH 2
SAND DUNE DR
139B--561-
$1445.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 562 BRIDGE POINTE PH 2
SAND DUNE DR
139B--562-
$1445.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 564 BRIDGE POINTE PH 2 BUCCANEER CT
139B--564-
$2201.95

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 565 BRIDGE POINTE PH 2 BUCCANEER CT
139B--565-
$1678.26

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 566 BRIDGE POINTE PH 2 BUCCANEER CT
139B--566-
$1709.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 567 BRIDGE POINTE PH 2 BUCCANEER CT
139B--567-
$1715.55

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 568 BRIDGE POINTE PH 2 GLORY AVE
139B--568-
$1709.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 569 BRIDGE POINTE PH 2 GLORY AVE
139B--569-
$1771.49

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 570 BRIDGE POINTE PH 2 GLORY AVE
139B--570-
$1827.42

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 571 BRIDGE POINTE PH 2 GLORY AVE
139B--571-
$2237.57

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 572 BRIDGE POINTE PH 2 GLORY AVE
139B--572-
$2408.61

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 573 BRIDGE POINTE PH 2 GLORY AVE
139B--573-
$2284.29

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 574 BRIDGE POINTE PH 2 GLORY AVE
139B--574-
$2368.20

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 575 BRIDGE POINTE PH 2 GLORY AVE
139B--575-
$3027.90

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 576 BRIDGE POINTE PH 2 GLORY AVE
139B--576-
$2306.05

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 577 BRIDGE POINTE PH 2 GLORY AVE
139B--577-
$5177.72

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 578 BRIDGE POINTE PH 2 GLORY AVE
139B--578-
$2569.18

BOOK    PAGE
1519   00486

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 579 BRIDGE POINTE PH 2 GLORY AVE
139B-579-
$2569.18

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 580 BRIDGE POINTE PH 2 GLORY AVE
139B-580-
$2569.18

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 581 BRIDGE POINTE PH 2 GLORY AVE
139B-581-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 582 BRIDGE POINTE PH 2 GLORY AVE
139B-582-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 583 BRIDGE POINTE PH 2 GLORY AVE
139B-583-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 584 BRIDGE POINTE PH 2 GLORY AVE
139B-584-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 585 BRIDGE POINTE PH 2 GLORY AVE
139B-585-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 586 BRIDGE POINTE PH 2 GLORY AVE
139B-586-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 587 BRIDGE POINTE PH 2 GLORY AVE
139B-587-
$1525.43

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 588 BRIDGE POINTE PH 2 GLORY AVE
139B-588-
$1525.45

Page 19 of 31

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 589 BRIDGE POINTE PH 2 GLORY AVE
139B--589-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 590 BRIDGE POINTE PH 2 GLORY AVE
139B--590-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 591 BRIDGE POINTE PH 2
SAND DUNE RD
139B--591-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 592 BRIDGE POINTE PH 2
SAND DUNE RD
139B--592-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 593 BRIDGE POINTE PH 2
SAND DUNE RD
139B--593-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 594 BRIDGE POINTE PH 2
139B--594-
$1625.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 595 BRIDGE POINTE PH 2 RIPTIDE WAY
139B--595-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 596 BRIDGE POINTE PH 2 RIPTIDE WAY
139B--596-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 597 BRIDGE POINTE PH 2 RIPTIDE WAY
139B--597-
$2248.03

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 598 BRIDGE POINTE PH 2 RIPTIDE WAY
139B--598-
$2157.75

Page 20 of 31

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 599 BRIDGE POINTE PH 2 RIPTIDE WAY
139B—599-
$2087.46

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 600 BRIDGE POINTE PH 2 RIPTIDE WAY
139B—600-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 601 BRIDGE POINTE PH 2 RIPTIDE WAY
139B—601-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 602 BRIDGE POINTE PH 2 RIPTIDE WAY
139B—602-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 603 BRIDGE POINTE PH 2 RIPTIDE WAY
139B—603-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 604 BRIDGE POINTE PH 2
SAND DUNE RD
139B—604-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 605 BRIDGE POINTE PH 2
SAND DUNE RD
139B—605-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 606 BRIDGE POINTE PH 2
SAND DUNE RD
139B—606-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 607 BRIDGE POINTE PH 2
SAND DUNE RD
139B—607-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 608 BRIDGE POINTE PH 2
SAND DUNE RD
139B-608-
$1445.16

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 609 BRIDGE POINTE PH 2
SAND DUNE RD.
139B-609-
$1525.45

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 610 BRIDGE POINTE PH 2
SAND DUNE RD
139B-610-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 611 BRIDGE POINTE PH 2
SAND DUNE RD
139B-611-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 612 BRIDGE POINTE PH 2
SAND DUNE RD
139B-612-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 613 BRIDGE POINTE PH 2
SAND DUNE RD
139B-613-
$1605.75

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 614 BRIDGE POINTE PH 2 FISHING PIER COVE
139B-614-
$2932.30

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 615 BRIDGE POINTE PH 2 FISHING PIER COVE
139B-615-
$2743.48

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 616 BRIDGE POINTE PH 2 FISHING PIER COVE
139B-616-
$4662.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 617 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—617-
$4662.78

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 618 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—618-
$4618.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 619 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—619-
$5235.52

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 620 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—620-
$5285.62

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 621 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—621-
$5018.05

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 622 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—622-
$4742.72

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 625 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—625-
$2175.52

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 626 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—626-
$2097.82

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 627 BRIDGE POINTE PH 2 FISHING PIER COVE
139B—627-
$1942.43

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 630 BRIDGE POINTE PH 2
SAND DUNE RD
139B—630-
$1553.94

Page 23 of 31

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 631 BRIDGE POINTE PH 2
SAND DUNE RD
139B-631-
$1553.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 632 BRIDGE POINTE PH 2
SAND DUNE RD
139B-632-
$1553.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 633 BRIDGE POINTE PH 2
SAND DUNE RD
139B-633-
$1553.94

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 634 BRIDGE POINTE PH 2
SAND DUNE RD
139B-634-
$1476.24

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 635 BRIDGE POINTE PH 2
SAND DUNE RD
139B-635-
$1351.93

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 636 BRIDGE POINTE PH 2
SAND DUNE RD
139B-636-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 637 BRIDGE POINTE PH 2
SAND DUNE RD
139B-637-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 638 BRIDGE POINTE PH 2
SAND DUNE RD
139B-638-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 639 BRIDGE POINTE PH 2
SAND DUNE RD
139B--639-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 640 BRIDGE POINTE PH 2
SAND DUNE RD
139B--640-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 641 BRIDGE POINTE PH 2
SAND DUNE RD
139B--641-
$1193.17

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 642 BRIDGE POINTE PH 2 DRIFTWOOD LANE
139B--642-
$1193.17
BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 643 BRIDGE POINTE PH 2 DRIFTWOOD LANE
139B--643-
$1067.57

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 646 BRIDGE POINTE PH 2 DRIFTWOOD LANE
139B--646-
$1193.17

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 647 BRIDGE POINTE PH 2 DRIFTWOOD LANE
139B--647-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 648 BRIDGE POINTE PH 2 DRIFTWOOD LANE
139B--648-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 649 BRIDGE POINTE PH 2 DRIFTWOOD LANE
139B--649-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 650 BRIDGE POINTE PH 2
139B--650-
$1250.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 651 BRIDGE POINTE PH 2
SAND DUNE LANE
139B-651-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 652 BRIDGE POINTE PH 2
SAND DUNE LANE
139B-652-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 653 BRIDGE POINTE PH 2
SAND DUNE LANE
139B-653-
$1250.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 654 BRIDGE POINTE PH 2
SAND DUNE LANE
139B-654-
$1111.41

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 655 BRIDGE POINTE PH 2
139B-655-
$1250.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 656 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B-656-
$1111.41

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 657 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B-657-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 658 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B-658-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 659 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B-659-
$1389.25

Page 26 of 31

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 660 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--660-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 661 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--661-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 662 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--662-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 663 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--663-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 664 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--664-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 665 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--665-
$1067.57

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 666 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--666-
$1256.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 667 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B--667-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 668 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B–668–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 669 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B–669–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 670 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B–670–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 671 BRIDGE POINTE PH 2
LOGGERHEAD TRAIL
139B–671–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 672 BRIDGE POINTE PH 2
SAND DUNE RD
139B–672–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 673 BRIDGE POINTE PH 2
SAND DUNE RD
139B–673–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 674 BRIDGE POINTE PH 2
SAND DUNE RD
139B–674–
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 675 BRIDGE POINTE PH 2
SAND DUNE RD
139B–675–
$1250.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 676 BRIDGE POINTE PH 2
SAND DUNE RD
139B--676-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 677 BRIDGE POINTE PH 2
SAND DUNE RD
139B--677-
$1250.34

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 678 BRIDGE POINTE PH 2
SAND DUNE RD
139B--678-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 679 BRIDGE POINTE PH 2
SAND DUNE RD
139B--679-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 680 BRIDGE POINTE PH 2
SAND DUNE RD
139B--680-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 681 BRIDGE POINTE PH 2
SAND DUNE RD
139B--681-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 682 BRIDGE POINTE PH 2
SAND DUNE RD
139B--682-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 683 BRIDGE POINTE PH 2
SAND DUNE RD
139B--683-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 684 BRIDGE POINTE PH 2
SAND DUNE RD
139B--684-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 685 BRIDGE POINTE PH 2
SAND DUNE RD
139B--685-
$1389.25

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 686 BRIDGE POINTE PH 2
SAND DUNE RD
139B--686-
$1526.18

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 687 BRIDGE POINTE PH 2
SAND DUNE RD
139B--687-
$1255.97

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 688 BRIDGE POINTE PH 2
SAND DUNE RD
139B--688-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 689 BRIDGE POINTE PH 2
SAND DUNE RD
139B--689-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 690 BRIDGE POINTE PH 2
SAND DUNE RD
139B--690-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 691 BRIDGE POINTE PH 2
SAND DUNE RD
139B--691-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 692 BRIDGE POINTE PH 2
SAND DUNE RD
139B-692-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 693 BRIDGE POINTE PH 2
SAND DUNE RD
139B-693-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 694 BRIDGE POINTE PH 2
SAND DUNE RD
139B-694-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 695 BRIDGE POINTE PH 2
SAND DUNE RD
139B-695-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 696 BRIDGE POINTE PH 2
SAND DUNE RD
139B-696-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L 697 BRIDGE POINTE PH 2
SAND DUNE RD
139B-697-
$1130.37

BRIDGE POINTE AT JEKYLL SOUND LLC
V/L TRACTS 1-6 BRIDGE POINTE
139B-698A-
$260.91

Recorded    APR 1 8 2010

Clerk Superior Court