## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| STEPHEN AGNONE & ENZO AGNONE; DOUGLAS & CYNTHIA PORCELLI; BRIDGE POINTE AT JEKYLL SOUND COMMUNITY ASSOCIATION, INC., et al., | ) ) ) ) ) | |
|       Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| CAMDEN COUNTY, GEORGIA; WILLIS R. KEENE, JR.; JIMMY STARLINE; CHUCK CLARK; TONY SHEPPARD; GARY BLOUNT; DAVID L. RAINER; KATHERINE NISI ZELL; CHARLENE SEARS; STEPHEN L. BERRY; STEPHEN L. HOWARD; O. BRENT GREEN; JOHN MCDILL; DAVID KEATING; SCOTT BRAZELL; LEXON INSURANCE COMPANY; THOMAS A. DIERUF; DAVID E. CAMPBELL; JEKYLL SOUND DEVELOPMENT COMPANY, LLC; and CAMDEN COUNTY DEVELOPMENT, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No: 2:14-cv-00024-LGW-BKE |
|       Defendants. | ) ) | |

## FINAL REPORT AND RECOMMENDATION

Pending before the Court are Class Representatives' Motion for Final Approval of Class Settlement, Original and Amended Requests for Attorneys' Fees and Service Awards, as supplemented, and Petition for Approval of Qualified Settlement Fund. (Docs. 96, 110, 111, 112 & 117). On February 28, 2019, this Court held a hearing on the motions ("Fairness Hearing"). After careful consideration of the same, the materials and evidence submitted in support thereof and a previously filed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class, as supplemented (Docs. 78, 82, 84 & 91), and the positions of

the Parties expressed in writing and at the Fairness Hearing, this Court is of the opinion and recommends the motions be granted as follows:

1.     The proposed non-opt out Class Settlement, as provided in the Settlement Agreement, should be finally approved in the form of a Final Order as to the claims of the Class Members against the Lexon Defendants.[1]

2.     Final certification of the non-opt out Settlement Class should be granted pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), and 23(b)(2).

3.     The previous appointment of Douglas Porcelli, Joseph Moronese, Jr., and Richard Mumford as Class Representatives should be finally approved.

4.     The previous appointment of Robert Aitkens and John Sparks and their respective law firms as Class Counsel should be finally approved.

5.     The requested Service Awards for Douglas Porcelli and Richard Mumford should be granted.

6.     Class Counsel's Amended Request for Attorneys' Fees, as supplemented, should be granted.

7.     The Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund should be granted.

In support if its recommendation to grant the motions, this Court makes the following findings of fact and conclusions of law:

---

[1] The Lexon Defendants are Lexon Insurance Company; Jekyll Sound Development Company, LLC; Camden County Development, LLC; Thomas A. Dieruf; and David E. Campbell.

12170.10
12183.4
12183.6

# I. Introduction

## A. Background

This action arises from a failed subdivision in Camden County, Georgia ("Camden County" or the "County") known as Bridge Pointe at Jekyll Sound (the "Subdivision") and bonds issued by Lexon Insurance Company ("Lexon") to secure completion of infrastructure improvements in the Subdivision (the "Bonds"). The original developer bankrupted before constructing the infrastructure improvements. A company owned in part by Lexon executives acquired unsold lots and amenity parcels in the Subdivision through a bankruptcy sale. A subsequent developer, BPJS Investments, LLC ("BPJSI"), negotiated a release of the Bonds with the County in return for (i) payment by Lexon of $4 million that BPJSI committed to use to construct infrastructure improvements in the Subdivision, (ii) a transfer of a nearby marina to BPJSI, and (iii) transfer of unsold lots and amenity parcels in the Subdivision to BPJSI. Development of the Subdivision has been at a virtual standstill since those transactions were completed.

## B. The Lawsuits

This case (the "*Agnone* Action") was filed by owners of approximately 200 lots in the Subdivision and Bridge Pointe at Jekyll Sound Community Association, Inc. ("BPJSCA" or the "Association"), a mandatory association of lot owners in the Subdivision, against the Camden County Defendants.[2] The lot owners alleged that the Camden County Defendants failed to comply with applicable law regarding release of the Lexon Bonds. Their complaint was

---

[2] The Camden County Defendants are Camden County, Georgia, Willis R. Keene, Jr., Jimmy Starline, Chuck Clark, Tony Sheppard; Gary Blount, David L. Rainer, Katherine Nisi Zell, Charlene Sears, Stephen L. Berry, Stephen L. Howard, O. Brent Green, John McDill, David Keating, Scott Brazell.

12170.10
12183.4
12183.6

amended by a second amended complaint, (Doc. 80), to add Class allegations and claims on behalf of a putative class of equitable and legal owners of lots in the Subdivision against the Lexon Defendants for failing to perform their duties and obligations under the Bonds.

Another case pending before this Court, the *Camden County* Action[3], filed shortly before this matter, arises from the same facts and circumstances as this case, and includes claims brought by Camden County against Lexon Insurance Company, and Lexon Insurance Company against BPJSI and principals of BPJSI.[4]

A third matter, the *Befumo* Action[5] is pending in the Superior Court of Gwinnett County, Georgia, and involves claims brought by a group of owners of lots in the Subdivision against the Lexon Defendants and BPJSI and its affiliates and principals.[6]

C.    **Investigation and Analysis**

Class Representatives, through their counsel, have conducted a thorough investigation of the facts, analyzed the relevant legal issues, reviewed relevant documents, and confirmed the results of their investigation through additional discovery, including thousands of pages of documents obtained from the *Camden County* Action.  They engaged, with the Lexon Defendants, in three mediations and extensive subsequent negotiations.  Class Representatives, through Class Counsel, have weighed the potential risks and costs associated with continued

---

[3] *Camden County v. Lexon Insurance Company, et. al.*, Case No. 2:14-cv-00020-LGW-BKE (S.D. Ga. 2014).

[4] Several owners of lots in the Subdivision intervened in the *Camden County* Action; their complaint in intervention was dismissed.

[5] *Befumo, et al. v. Lexon Insurance Co., et al.*, Civil Action File No. 17-A05587-1, Superior Court of Gwinnett County, Georgia.

[6] All three of these cases are sometimes referred to as the "Lawsuits".

12170.10
12183.4
12183.6

prosecution of the Action against the benefits of the Settlement Agreement and determined that the proposed Class Settlement is in the best interests of the Class Members.

The Lexon Defendants have conducted their own investigation of the facts and legal issues, and, while they deny the factual allegations in the second amended complaint and deny any and all liability with respect to the claims alleged therein, they have weighed the potential risks and costs associated with continued litigation of the Action against the benefits of the Settlement and determined that the proposed Class Settlement is in the best interests of the Lexon Defendants.

The Settlement Agreement provides for settlement of all claims of a class of legal and equitable owners of lots in the Subdivision against the Lexon Defendants, and settlement of all claims of named Plaintiffs against the Camden County Defendants in this Action. If finally approved, the Settlement will resolve, in addition, Camden County's claims against the Lexon Defendants in the *Camden County* Action, the Plaintiff-Intervenor's claims against the Lexon Defendants in the *Camden County* Action, and the claims of all Plaintiffs against the Lexon Defendants in the *Befumo* Action.

## II. THE PROPOSED SETTLEMENT

An executed copy of the Settlement Agreement is attached as an Exhibit to the Third Supplement to Motion for Preliminary Approval and Certification of Class. (Doc. 91). It is incorporated by reference as if fully set forth herein. In summary, the Settlement Agreement provides, *inter alia*, that the Settlement Class will receive from the Lexon Defendants, subject to the terms and conditions of the Agreement, a total of $11.75 million with which to construct infrastructure improvements in the Subdivision, to pay Class Counsel's attorneys' fees approved

12170.10
12183.4
12183.6

by the Court, and to pay Class Representatives up to $5,000 each[7] for their service as representatives of the Class ("Service Award"). The terms of payment are described below.

A.     **Benefits to the Class**

The Settlement will collectively benefit Class Members by providing them with funds to construct infrastructure improvements, such as roads, curbs and gutters, walkways, utility connections, sewers, and other infrastructure improvements. The Lexon Defendants have paid or will pay all costs of Notice to the Settlement Class. A description of how and when the Settlement Proceeds will be paid and disbursed is included in the Agreement and summarized below.

- Lexon has paid $3.75 million (the "Camden Settlement Fund Payment") into the Registry of the United States District Court for the Southern District of Georgia (the "Registry of the Court"). Upon receipt by the Registry of the Court, those funds were transferred to an interest bearing account in the Court Registry Investment System ("CRIS").

- Lexon has paid at the direction of Camden County $250,000 (the "Camden Payment") into the IOLTA Escrow Account of Aitkens & Aitkens, P.C., for the benefit of the Association for use as determined by the Association.

- Within ten (10) business days of a final order approving the Class Settlement without material change and the exhaustion of any appeal ("Final Approval Order"), the Lexon Defendants shall pay an additional $7,750,000 ("Lexon Settlement Fund Payment") into the Registry of the Court for immediate transfer

---

[7] The Court understands that Class Representative Moronese has declined his $5,000 award.

12170.10
12183.4
12183.6

to the CRIS.  The Camden Settlement Fund Payment and the Lexon Settlement Fund Payment (totaling $11.5 million), together with accrued interest (the "Final Settlement Fund") shall remain in the CRIS subject to the terms of the Settlement Agreement and the Final Order.

- The Association as representative of the lot owners in the Subdivision, has also received from the Camden County Defendants (1) the above-described Camden Payment from Lexon by assignment from the County, (2) $25,000 from other Defendants in the *Befumo* Action by direction from the County of its entitlement under the Amended Memorandum Regarding Settlement by and between the Camden County Defendants, the Lexon Defendants, and George L. "Boog" Potter, Mike Martinez, BPJSI, Robert Steven Williams, Sr. and Robert Steven Williams, Jr. filed August 29, 2017, in the *Camden County* Action ("AMRS"), (3) an assignment of all right and interest in any lien (excluding tax liens) or security interest of Camden County in any real property in the Subdivision owned by any one or more of George L. "Boog" Potter, Mike Martinez, BPJSI, Robert Steven Williams, Sr. or Robert Steven Williams, Jr. or any transferee from any one or more of these defendants, and (4) an assignment of all right and interest of the County in that certain obligation of BPJSI, Robert Steven Williams, Sr., and Robert Steven Williams, Jr. under the AMRS to pay $100,000.[8]

---

[8] In addition, the Plaintiffs in the *Agnone* Action and the *Befumo* Action have entered into a Settlement Agreement with George L. "Boog" Potter, Mike Martinez, MIROBO, LLC,

12170.10
12183.4
12183.6

B.     **Benefit to the Lexon Defendants**

Pursuant to the Settlement Agreement, each member of the Settlement Class will be deemed to have, and will have, released each of the Lexon Defendants from all claims, whether known or unknown, related to or arising from the Subdivision or the Bonds, to be effective on the date the Lexon Settlement Fund Payment is paid into the Registry of the Court as follows:

> Plaintiffs and each and every Settlement Class member fully releases and forever discharges each of the Lexon Defendants, any past or present parent, affiliate, or sister company of any of the Lexon Defendants, any past or present direct or indirect subsidiary of any of the Lexon Defendants, any successor and/or assign of any of the Lexon Defendants, and all of the past and present employees, agents, representatives, attorneys, insurers, officers, and directors of each of them of and from any and all liability, rights, claims, actions, causes of action, demands, and remedies, known or unknown, present or future, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise from, are based upon, or relate in any way to the Subdivision, the Bonds, and any conduct, omissions, duties, allegations, or matters alleged in any of the Lawsuits related thereto.

C.     **The Settlement Class**

On October 10, 2018, this Court reported and recommended that a Settlement Class of:

> All persons or entities who hold legal or equitable title as of the date of preliminary approval of the Class Action Settlement to any Unit or Parcel in the Bridge Pointe at Jekyll Sound Subdivision and any transferees of any Unit or Parcel following preliminary approval of the Class Action Settlement, except for BPJS Investments, LLC; Robert Steven Williams, Sr.; Robert Steven Williams, Jr.; and any related entities or persons, as these entities are obligated to release any and all claims against Lexon Insurance Company and any related entities or persons (together the "Lot Owners")

be preliminarily certified. (Doc. 102).

---

and Emerson Property, LLC, and a Settlement Agreement with BPJSI, Wilrite, LLC, Robert Steven Williams, Sr. and Robert Steven Williams, Jr.

12170.10
12183.4
12183.6

This Court found that the proposed Settlement Class met the requirements of Fed. R. Civ. P. 23(a), (b)(1) and (b)(2) and that the proposed Settlement Class should be preliminarily certified as a non-opt out class for settlement purposes only.

In addition to recommending that the Settlement Class be certified preliminarily, this Court:

- recommended that Robert G. Aitkens and the law firm of Aitkens & Aitkens, P.C. of Atlanta, Georgia, and John T. Sparks and the law firm of Austin & Sparks, P.C. of Atlanta, Georgia be appointed as Class Counsel;

- recommended that Douglas Porcelli, Richard Mumford, and Joseph Moronese be appointed as Class Representatives;

- found that the Settlement was the result of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel and was not the result of collusion;

- found that the Settlement met the requirements of Fed. R. Civ. P. 23(a), (b)(1) and (b)(2), was within the range of reasonableness, and should be preliminarily approved as a non-opt out Class Settlement;

- recommended the establishment of a deadline for Settlement Class Members to object to the Settlement and scheduled a Fairness Hearing on February 28, 2019.

- found that the proposed Notice Program and proposed form of Notice, as modified, satisfied Federal Rule of Civil Procedure 23 and constitutional due process requirements, and were reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Class Action, Class Certification, the terms of the Settlement, Class Counsel's application for an

9

award of attorneys' fees and expenses  and request for service fees for Class

Representatives,  Class Members' rights to object to the Settlement, the deadline

for objecting, and the date and time of a Fairness Hearing.

The Court adopted and incorporated by reference the findings in this Court's Amended

Report and Recommendation (Doc. 102) in full.  (Doc. 107).  This Court now incorporates by

reference as if fully set forth herein its Amended Report and Recommendation (Doc. 102) and

the Court's Order of October 11, 2018, (Doc. 107).

### III. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court reports and recommends the following:

A.     **The Requirements for a Settlement Class are Satisfied**

To certify a class under Fed. R. Civ. P. 23, the Court must find that the elements of Rule

23(a) have been met, as well as the requirements of either Rule 23(b)(1), (2) or (3).   In

determining whether these requirements are met, the Court must conduct a rigorous analysis.

Fed. R. Civ. P. 23.

The Settlement Class defined in the Settlement Agreement meets all of the requirements

for certification of a Settlement Class under Rule 23(a) and 23(b)(1) and (b)(2) of the Federal

Rules of Civil Procedure.  Accordingly, the Court recommends final certification of the

following Settlement Class:

> All persons or entities who hold legal or equitable title as of the date of
> preliminary approval of the Class Action Settlement to any Unit or Parcel in the
> Bridge Pointe at Jekyll Sound Subdivision and any transferees of any Unit or
> Parcel following preliminary approval of the Class Action Settlement, except for
> BPJS Investments, LLC; Robert Steven Williams, Sr.; Robert Steven Williams,
> Jr.; and any related entities or persons, as these entities are obligated to release
> any and all claims against Lexon Insurance Company and any related entities or
> persons (together the "Lot Owners").

12170.10
12183.4
12183.6

The Court recommends the following findings of fact and conclusions of law with respect to the satisfaction of the elements of Fed. R. Civ. P. 23.

1. **Numerosity:** The Settlement Class consists of the equitable and legal owners of over 400 lots in his subdivision. They hail from some 28 states across the United States and from Canada. Thus, the Fed. R. Civ. P. 23(a)(1) numerosity requirement is met. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir.1986); *Columbus Drywall & Insulation*, *Inc. v. Masco Corp.*, 258 F.R.D. 545 (N.D. Ga. 2007).

2. **Commonality:** Fed. R. Civ. P. 23(a)(2) requires that there be questions of law and fact common to the class. The bar for proving commonality is met when there is at least one issue whose resolution will affect all or a significant number of the Class members. *See Williams v. Mohawk Industries*, 568 F.3d 1350, 1355 (11th Cir. 2009). Here, the commonality requirement is satisfied for settlement purposes because there are many questions of law and fact common to the Settlement Class regarding the Subdivision and the Bonds, including: (i) whether any of the Lexon Defendants breached any duty or obligation to any of the Class Members; (ii) whether Class Members have standing to bring their claims; (iii) whether the Lexon Defendants owed any duty or obligation to any of the Class Members; (iv) whether any claims Class Members might have had against the Lexon Defendants have already been released by the County's release of Lexon from liability; (v) the extent to which the Bonds covered the costs of infrastructure improvements that were not completed by the developer of the Subdivision; and (vi) if there was any breach of any obligation or duty by any of the Lexon Defendants, what the remedy should be. *See Fed. R. Civ. P. 23(a)(2).*

3. **Typicality:** Typicality does not require that the class representative's claims be identical to those of the class members. *See Ex parte Gov't Employees Ins. Co.*, 729 So. 2d 299,

12170.10
12183.4
12183.6

304 (Ala. 1999) ("This [typicality] requirement focuses on the interests of the class representative.") Instead, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." NEWBERG & CONTE, NEWBERG ON CLASS ACTIONS §§ 3.5, 3.13 (4th ed. 2002). The typicality requirement of Rule 23(a)(3) is met in this case. Class Representatives are typical of absent Settlement Class Members because the infrastructure improvements that would benefit the lots in the Subdivision have not been constructed, and all of them will benefit from the relief provided by the Settlement, creation of a common fund for construction of infrastructure improvements in the Subdivision. Further, the Class Representatives are not subject to any unique defenses. Rule 23(a)(3) is therefore satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

4. **Adequacy:** Rule 23(a)(4) requires that the class representative and class counsel fairly and adequately protect the interests of the class. The adequacy requirement encompasses two inquiries: (i) the attorneys representing the class must be qualified, experienced and generally able to conduct the litigation, and (ii) the class representative must not have interests antagonistic to those of the class. *See Ex parte Russell Corp.*, 703 So. 2d 953, 963 (Ala. 1997) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). The Court finds that Class Representatives and Class Counsel are adequate representatives of the Settlement Class, able to fairly represent the interests of each member of the Settlement Class under Rule 23(a)(4). In

12170.10
12183.4
12183.6

reaching this determination, the Court considered: (i) Class Counsel's qualifications, experience and conduct of the proposed litigation; and (ii) the absence of any interests antagonistic to those of the rest of the Settlement Class. The Court also considered the results of the settlement achieved by Class Representatives and Class Counsel for the benefit of the Settlement Class. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between Class Representatives and the Settlement Class as to the settlement of this Action, and Class Representatives have retained competent counsel to represent them and the Settlement Class. Class Counsel have regularly engaged in complex litigation with factual and legal issues similar to the present Action, including collective actions, and have dedicated substantial resources to prosecuting this action. Moreover, the Class Representatives and Class Counsel have vigorously and capably represented the Class Members' interests in this action.

5. **Risk of Inconsistent Judgments:** Under Rule 23(b)(1)(A), certification is appropriate if there is a risk of "inconsistent or varying adjudications" that would subject the defendant to "incompatible standards of conduct." *See* Fed.R.Civ.P. 23(b)(1)(A). "The phrase 'incompatible standards of conduct' refers to the situation where different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) (some internal quotation marks omitted). Courts routinely certify classes under Rule 23(b)(1)(A) when adjudication of a single action will require the defendant to take actions that will necessarily affect the entire class. *See, e.g., Klewinowski v. MFP, Inc.*, No. 8:13-CV-1204-T-33TBM, 2013 WL 5177865, at *3 (M.D. Fla. Sept. 12, 2013) (certifying class under Rule 23(b)(1)(A) because a single, unitary adjudication was the only way to conclusively determine whether the letter defendant sent its

13

customers violated the law); *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 371(S.D. Miss. 2003), aff'd sub nom. *Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004) (certifying class under Rule 23(b)(1)(A) when plaintiffs challenged the lawfulness of policies that applied to all customers); *Rozo v. Principal Life Ins. Co.*, No. 4:14-CV-000463-JAJ-CFB, 2017 WL 2292834, at *5 (S.D. Iowa May 12, 2017) (certifying class under Rule 23(b)(1)(A), because "[i]f the class is not certified, and adjudication proceeds on an individual basis, there is a very real risk of inconsistent judgments regarding [the defendant's] fiduciary status and its compliance with ERISA standards, as well as the amount of money to which plan participants are entitled"); *In re Enron Corp.*, No. CIV.A. H-01-3913, 2006 WL 1662596, at *15 (S.D. Tex. June 7, 2006) (certifying class under Rule 23(b)(1)(A) in ERISA action because adjudication of individual action would impose obligations on defendant that would apply equally to all class members).

The 1966 Advisory Committee Note to Rule 23(b)(1)(A) specifically identifies disputes over a bond issue as a situation that would warrant certification under Rule 23(b)(1). *See* Fed. R. Civ. P. 23 Advisory Committee 1966 Cmt (also identifying disputes regarding a landowner's riparian rights or rights respecting a nuisance as warranting certification under Rule 23(b)(1)). The committee reasoned this situation warranted a "unitary adjudication" because a defendant might be ordered to comply with two differing standards of conduct. *See id.*

Class Representatives allege the Lexon Defendants failed to honor their duties and obligations under payment and performance bonds and this failure, in turn, has prevented the construction of infrastructure improvements in the Subdivision that would benefit owners of lots in the Subdivision. These improvements would be common to each Lot Owner in the Subdivision. Moreover, whether and the extent to which the Lexon Defendants would be liable to Class Representatives and Class Members to construct these improvements turns on several

14

issues including: (a) the standing of a lot owner who is not a party to the Bonds to enforce the obligations of the surety, (b) whether the County's alleged release of the Bonds is binding on Class Members, and (c) the extent to which the Lexon Defendants would be liable, if at all, for completion of infrastructure improvements in the Subdivision under the Bonds. Thus, a unitary adjudication is necessary to avoid potentially inconsistent judgments and differing standards of conduct.

### 6. Protection of the Interests of Other Similarly Situated Claimants:

Certification is appropriate under Rule 23(b)(1)(B) when "adjudications with respect to individual class members [would], as a practical matter, . . . be dispositive of [or impair] the interests of the other members not parties to the individual adjudications." *See* Fed. R. Civ. P. 23(b)(1)(B).

The Lot Owners will have, through the Association, an interest in roads, curbs and gutters, walkways, utility connections, sewers, and other infrastructure improvements of the Subdivision as co-owners. A judgment bearing on the interest of one Lot Owner will, therefore, potentially impact or impair the interests of other Lot Owners. Accordingly, all Lot Owners as described in the Motion for Final Approval of Class Settlement should be part of the Class, except BPJSI, Williams, Sr., and Williams, Jr., who have already released all of their claims against the Lexon Defendants, because as Class Members all of them will be potentially affected by the judgment. *See Reefshare, Ltd. v. Nagata*, No. CV 87-0024, 1987 WL 109921, at *6 (D. Haw. Aug. 4, 1987), certified question answered, 70 Haw. 93, 762 P.2d 169 (1988); 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, ET AL., FED. PRAC. & PROC. CIV. § 1621 (3d ed. 2017) ("[W]hen all cotenants will be affected by the judgment or when the absence of some of

12170.10
12183.4
12183.6

them will prevent complete justice from being rendered to everyone interested in the land, all the cotenants must be joined.").

In addition, the court in *Reefshare* found creation of negative precedent is enough to find a party's interest may be impaired or impeded. Each of the Lot Owners has essentially the same claim against the Lexon Defendants based on the same facts. If these actions proceed individually, courts in any other actions, while not bound by an earlier decision, will "undoubtedly consider and possibly respect any such . . . ruling." *See Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1310 (5th Cir. 1986). Because individual adjudications would impair or impede the interests of other lot owners, certification under Rule 23(b)(1)(B) is appropriate here.

   7. **General Applicability to the Class:** Rule 23(b)(2) provides that a class action is appropriate when a party against whom class allegations have been made "has acted or refused to act on grounds that apply generally to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). Certification of a class under Rule 23(b)(2) is appropriate where the remedy sought is "an indivisible injunction" that applies to all class members "at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

The Settlement will create a common fund that will be used to build infrastructure improvements in Phase I of the Subdivision, without which Phase II would remain landlocked. The improvements are common to all Lot Owners in that they may be used by (and will provide a benefit to) any person who owns a lot in the Subdivision - in Phase I or Phase II. In allegedly failing to complete/fund these improvements, the Lexon Defendants acted in a way that is "generally applicable" to the entire Settlement Class. An injunction requiring Lexon to perform

12170.10
12183.4
12183.6

under the Bonds would provide a common fund for the construction by the Association of infrastructure in the Subdivision. This is a form of "indivisible relief" that would flow to the Settlement Class as a whole "at once." Finally, the Lot Owners in this Action specifically requested injunctive relief. For these reasons, certification under Rule 23(b)(2) is appropriate here.

B.     **The Notice Provided Complied with Fed. R. Civ. P. 23 and Due Process**

Upon preliminary certification of a class pursuant to Fed. R. Civ. P. 23(b)(1) or (b)(2), the Court may direct appropriate notice to the Class. Fed. R. Civ. P. 23(c)(2).

The Settlement Class was provided with adequate notice of the Court's Preliminary Approval Order and the Settlement Agreement. This Court previously reviewed the proposed Class Notice procedures and approved them as adequate under Rule 23(e).

The Notice Program set forth in the Settlement preliminarily approved by this Court and described in the Declaration and Supplemental Declaration of L. Stephens Tilghman of Tilghman & Co., P.C., has now been implemented and completed. (Docs. 109 & 110 Ex. C). As previously found by this Court, the Class Notice includes: (1) a description of the class; (2) a description of the proposed settlement; (3) the identity of Class Counsel; (4) the date and time of the Fairness Hearing;[9] (5) a statement of the procedures and deadlines for filing objections to the proposed settlement; and (6) how to obtain further information about this case.

The Class Notice was mailed via First Class U.S. Mail to all Settlement Class Members by United States Mail. (Docs. 109 & 110 Ex. C). For Class Notice packages that were returned

---

[9] The original date of the Final Fairness Hearing was February 20, 2019. It was rescheduled by this Court to February 28, 2019. The new date (and time) were posted on the Settlement Website.

12170.10
12183.4
12183.6

as undeliverable by the USPS, the Settlement Administrator searched for updated address information through the United States Postal Service for that Settlement Class Member, and re-mailed the Class Notice package to that Settlement Class Member. *Id.* The Settlement Administrator also emailed Class Notice packages to every class member -- some 300 -- for whom he had obtained email addresses from Class Counsel. *Id.* The Settlement Administrator testified by declaration that he sent every Class Member a Class Notice package at a correct USPS or email address or both. *Id.* The Settlement Administrator also established, with the Parties' assistance, a Settlement Website explaining the nature of the lawsuit, providing information about objecting, and providing ready access to relevant pleadings and orders. *Id.* The Settlement Website address was printed in the Class Notice[10].

None of the Settlement Class Members objected to the Class Settlement. No objections were filed in Court and no one appeared at the Fairness Hearing voicing an objection.

The Court finds that the Notice Program implemented in this matter constitutes reasonable notice as required under Rule 23(c)(2) and 23(e).

C.    **The Settlement is Fair, Reasonable and Adequate**

Approval of a class-action settlement is a two-step process. In the first step, the Court determines whether the proposed settlement should be preliminarily approved. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION 21.632 (4th ed. 2004). At the preliminary approval stage in the process, the Court is required to "make a preliminary

---

[10] In addition to representing the Class Representatives and Class Members, Class Counsel represents the owners of approximately 375 lots in the Subdivision pursuant to written consent, and the Association, which has authority to settle claims for itself and owners of all lots in the Subdivision. Class Counsel were available to discuss the Settlement with these owners (who are also Class Members).

12170.10
12183.4
12183.6

determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* A proposed settlement should be preliminarily approved if it "is 'within range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Horton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980)). This Court found that the proposed Settlement met this standard in its Preliminary Approval Order.

In the second stage, following appropriate notice to the class and after hearing from any potential objectors, the Court makes a final decision whether to approve the proposed settlement. *See* ANNOTATED MANUAL FOR COMPLEX LITIGATION 21.633-35.

It is well settled that judicial policy favors settlements of class actions. *See Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) (5th Cir. 1977); *see also Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 538 (S.D. Fla. 1988) (citations omitted). "[Settlement] has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice. . . ." *Behrens*, 118 F.R.D at 538. "Litigants should be encouraged to determine their respective rights between themselves." *Id.* (quoting *Cotton*, 559 F.2d at 1331) (citation omitted). "Moreover, where, as here, the [settlement] previously has been preliminarily approved, the [settlement] is presumptively reasonable." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co*., 211 F.R.D. 457, 467 (S.D. Fla. 2002) (citations omitted).

In making the overall determination of whether a settlement is fair, reasonable, and adequate, the Court recognizes that it must not try the case on the merits. *Amoco*, 211 F.R.D. at

467 (citations omitted). "Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (citations omitted).

Also, "[i]n evaluating a settlement's fairness, 'it should not be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Amoco,* 211 F.R.D. at 467 (citing *Cotton,* 559 F.2d at 1330). "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.* (citation omitted).

With these principles in mind, this Court considered several components of the proposed Settlement, including: "1) the likelihood of success at trial; 2) the range of possible recovery; 3) the point over or below the range of possible recovery at which the settlement is fair, adequate and reasonable; 4) the complexity, expense, and duration of the litigation; 5) the substance and amount of opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved." *Id.; see Myers v. State,* 866 So. 2d 103 (Fla. 1st DCA 2004) (citing *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)). "The trial court must also consider the reasonableness of attorneys' fees and costs and the adequacy of notice to the class." *Id.; see Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980); *Hoffman La-Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

Turning to the specific terms of the Settlement Agreement, the Lexon Defendants have agreed to provide substantial relief in the form of a $11.75 million common fund to be used for the construction of infrastructure improvements in the Subdivision and payment of attorneys' fees of Class Counsel and Service Awards of Class Representatives -- $3.75 million of which

has already been paid into the Registry of the Court and is on deposit in the CRIS; $250,000.00 of which has been paid to the Association and used to pay some attorneys' fees of Class Counsel; and $7.75 million of which is to be paid into the Registry of the Court under the terms of the Settlement Agreement.

The Court finds that three mediations covering four days, as well as the ensuing months of negotiations, demonstrate that there is no collusion in the Settlement. Counsel vigorously and professionally represented the interests of their respective clients throughout this litigation.

The Court recognizes the Parties faced significant risks from continued litigation, which also favors the settlement achieved. Among other things, the Plaintiffs would have had to overcome several defenses interposed by the Lexon Defendants, including: (i) whether and the extent to which the Lexon Defendants would be liable to Class Representatives and Class Members to construct infrastructure improvements in the Subdivision, (ii) the standing of a lot owner who is not a party to the Bonds to enforce the obligations of the surety, and (iii) whether the County's alleged release of the Bonds was binding on Class Members.

The Court also finds the complexity, expense, and likely duration of this litigation weigh in favor of approval of the proposed Settlement as fair, reasonable, and adequate. Were this matter to continue, numerous, complex issues of law would have to be resolved at the cost of considerable time and expense to the Parties and the Court.

The Court finds that the nature of the Settlement, which provides funds to construct infrastructure improvements in the Subdivision, will confer substantial benefit on all members of the Settlement Class.

Consideration of the stage of the litigation and the judgment of experienced counsel for the Parties also supports the Court's approval of the Settlement in this case. The Parties have

engaged in substantial investigation and produced and reviewed thousands of documents, exchanged information and legal positions, debated the strengths and weaknesses of their cases, and mediated (three times) with mediators with significant experience in class action litigation. Therefore, the Parties are well-positioned to assess the strength of this case and the comparative benefits of the proposed Settlement. Class Representatives are represented by highly respected attorneys with significant experience in other complex litigation, including representing collectives and condominium and association members. Defendants are also represented by attorneys from a well-respected law firm experienced in class action litigation. The unanimous support of counsel for this settlement weighs strongly in favor of its approval. *Amoco*, 211 F.R.D. at 467.

The reaction of the class is another important factor. The reaction has been overwhelmingly positive. Notice of the Settlement was sent via first class mail, email or both, to all Settlement Class Members, in addition to being posted on a Settlement Website and provided by Class Counsel to some 375 Class Members, whom Class Counsel represents individually. In response to the extensive Notice Program in this case, there were no objections to the terms of the Settlement. No objections were filed in Court and no one appeared at the Fairness Hearing voicing an objection.

The Court finds that the overwhelming support of Class Members reflects the fairness, adequacy and reasonableness of the Settlement and weighs in support of this Court's approval of the Settlement.

Finally, the Court finds that substantial benefits for Settlement Class Members under the Settlement Agreement are well within the range of reasonableness for resolution of this case and, therefore, determines that the Settlement is fair, adequate and reasonable.

12170.10
12183.4
12183.6

D.     **Class Representative Service Awards and Class Counsel Attorneys' Fees and Expenses.**

This Court has carefully reviewed, weighed, and considered Class Counsel's motions for attorney's fees and reasonable costs and expenses, and the arguments and evidence presented relative to said motions.   The Settling Parties report they did not discuss the payment of attorneys' fees, costs, expenses, and a Service Award to Class Representatives, until after the substantive terms of the Settlement had been agreed upon.   This Court has considered, inter alia: the benefit conferred on the Class, the complexity of the issues, the duration of the case, the risks to which Plaintiff's Counsel were exposed, the experience, reputation, and skill of the attorneys involved, awards in similar cases, time and labor required, lodestar cross-check, and reaction of Class Members.   The attorneys' fees, costs and expenses, and Service Award sought are to be paid from the Final Settlement Fund.

At the February 28, 2019 Fairness Hearing, this Court heard from Class Counsel concerning an award of attorneys' fees, reimbursement of reasonable costs and expenses, and Service Awards to the Class Representatives.

Class Counsel requested the payment of Service Awards to the Class Representatives in the amount of $5,000 each for their time and efforts spent in the pursuit and management of this litigation.   The Court finds a Service Award in the amount of $5,000 for each of the Class Representatives to be fair, reasonable, and adequate under the circumstances.   Accordingly, the Court recommends approval of Class Counsel's Motion for a Service Award in the amount of $5,000 each for Class Representatives Porcelli and Mumford, which shall be paid from the Settlement Fund per the terms of the Settlement Agreement. Class Representative Moronese has declined to accept a Service Award.

12170.10
12183.4
12183.6

This Court recognizes the Class Representatives and Class Counsel timely filed their Amended Request for Class Representatives' Service Awards and Class Counsel Attorneys' Fees and Expenses Pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2), (Doc. 111, ("Amended Request")), on February 1, 2019, and that no objections were filed at or prior to the Fairness Hearing.  In addition, this Court recognizes that Class Counsel have updated their respective billing through March 15, 2019, as embodied in the Supplemental Request for Class Counsel Attorneys' Fees and Expenses (Doc. 117), wherein Austin & Sparks, P.C. has requested $97,724.19 and Aitkens & Aitkens, P.C. has requested $246,725.23 for total Class Counsel Attorneys' Fees and Expenses of $344,449.42 ("Final Class Counsel Attorneys' Fees and Expenses").  Prior to submission of the Supplemental Request, Class Counsel explained they "presently estimate that the total for attorneys' fees and expenses to be invoiced for the services rendered in connection with pursuit of the claims against with [sic] the Lexon Defendants and Camden County to total approximately $1,108,721 ($1,092,721.00 plus $16,000) through February 28, 2019." (Doc. 111, p. 16 (footnote omitted)).  Even considering the grand total, the Court finds the fee request to be reasonable and well below the Eleventh Circuit's "25% benchmark."  *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1217 (11th Cir. 2018); *see also* Doc. 111, p. 10 & n.9 (explaining percentage calculation of less than 10% of Common Fund).

This Court recommends payment from the Final Settlement Fund of such Final Class Counsel Attorneys' Fees and Expenses as embodied in Class Counsels' Supplemental Request for Class Counsel Attorneys' Fees and Expenses identifying unpaid Final Class Counsel Attorneys' Fees and Expenses (which have remained less than the identified upper-limit of $400,000), and recommends payment from the Final Settlement Fund in accordance with the

24

Settlement Agreement directly out of CRIS as described below. The Court further recommends the original motion for attorneys' fees be denied as moot. (Doc. 96).

E.     **<u>Petitioner Qualified Settlement Fund</u>**

The Court has received and reviewed the Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund and has assessed the need for a Qualified Settlement Fund and retention of jurisdiction over the Qualified Settlement Fund through and until its use or exhaustion pursuant to Treasury Regulation Section 1.468B-1(c)(1). (Doc. 112). Counsel for the Lexon Defendants and Camden County have received and reviewed Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund and identified in the Fairness Hearing on February 28, 2019, that neither had an objection to nor opposed the Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund. The Court hereby recommends approval of the Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund and treatment of the Final Settlement Fund plus accrued interest, less the approved and paid Class Representative Service Awards and Final Class Counsel Attorneys' Fees and Expenses, becoming a part of the Escrow Fund under the Escrow Agreement dated February 18, 2019 attached as Exhibit "A" to the Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund and hereby recommends execution of the Proposed Order Approving Petitioner Qualified Settlement Fund.

## IV. CONCLUSION

Accordingly, the Court Reports and Recommends the United States District Judge **DENY AS MOOT** the original Request for Class Representatives Service Awards and Class Counsel Attorneys' Fees and Expenses Pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2), (Doc. 96), **GRANT** Class Representatives' Motion for Final Approval of Class

12170.10
12183.4
12183.6

Settlement, Amended Request for Attorneys' Fees and Service Awards, as supplemented, and Petition for Approval of Qualified Settlement Fund, (Docs. 110, 111, 112 & 117), and **FIND** as follows in a final appealable order:

A.      Notice to the Settlement Class Members has been provided as directed by this Court in the Preliminary Approval Order, and such Notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.

B.      The Settlement Class, as set forth above and in the Preliminary Approval Order, is finally certified as a non-opt out class pursuant to Rule 23(b)(1) and 23(b)(2).  The Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a), (b)(1) and (b)(2).

C.      The final certification of the Settlement Class is for settlement purposes only and shall not constitute, nor be construed as, evidence or an admission on the part of the Defendants that this Action, or any other proposed or certified class action is appropriate for class treatment pursuant to the Federal Rules of Civil Procedure or any other class action statute or rule.

D.      If any appeal is taken from the Final Order and the approval of the Settlement is not upheld on appeal, or the Settlement Agreement is terminated pursuant to its terms, the Settlement Class shall be decertified, the Settlement Agreement and all negotiations, proceedings and documents prepared, and statements made in connection with the Settlement shall be without prejudice to any Party, and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, issue or proposition of law; all Parties shall stand in the same procedural posture as if the Settlement Agreement had not been negotiated, made, signed or filed with the Court; and the Final Order, any judgment, any dismissal with prejudice,

12170.10
12183.4
12183.6

and other order entered in connection with the Settlement and releases delivered in connection with the Settlement shall be vacated and treated as if they are null and void, notwithstanding the principles of res judicata, collateral estoppel, or claim preclusion. Jurisdiction is reserved, without affecting the finality of the Final Order, to allow the Court to vacate the Final Order in the event approval of the Settlement is not upheld on appeal or the Settlement Agreement is terminated pursuant to its terms.

E. The Settlement, as set forth in the Settlement Agreement, is in all respects fair, reasonable, and adequate, and in the best interests of the Settlement Class Members, and is approved in all respects in accordance with Rule 23 and applicable law. The Parties shall comply with the terms of the Settlement Agreement, which is incorporated herein by reference. There was no fraud or collusion behind the Settlement. Absent the Settlement, the Parties and the Court would incur further substantial time and expense over a long period of litigation and any appeals. Sufficient investigation and discovery was conducted, both informally and by formal confirmatory discovery, in order to make an informed and reasoned decision regarding the Settlement. Class Representatives faced substantial risk in the Action that could have resulted in the Settlement Class receiving nothing. The realistic range for this case is anywhere from no relief at all, and therefore no infrastructure improvements in the Subdivision, to the face amount of the Bonds plus attorneys' fees and litigation costs. Class Counsel, who have substantial experience with complex litigation, are of the opinion that the Settlement is fair, reasonable, and adequate. The Settlement provides substantial benefits for the Settlement Class which are fair, reasonable, and adequate.

12170.10
12183.4
12183.6

F.     The Settlement shall not constitute an admission or finding of liability or wrongdoing on the part of the Lexon Defendants, Class Representatives, or Settlement Class Members.

G.     Attorneys Robert Aitkens, John Sparks and their respective firms are appointed finally and recognized as having acted as Class Counsel for the Settlement Class.  The Court is familiar with the efforts by Class Counsel in this action and finds that they have vigorously investigated and pursued this litigation on behalf of the Class Representatives and the Settlement Class. Class Counsel have, at all times, fairly and adequately represented Class Representatives and the Settlement Class; diligently and competently performed all their duties owed to Class Representatives and the Settlement Class; and considered and pursued the appropriate avenues of relief for Class Representatives and the Settlement Class.

H.     The Court has carefully reviewed, weighed, and considered Class Counsels' Amended Request for Class Representatives' Service Awards and Class Counsel Attorneys' Fees and Expenses Pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2) and Supplemental Request for Class Counsel Attorneys' Fees and Expenses, (Docs. 111, 117), and the arguments and evidence presented relative to said motions.  The Settling Parties report they did not discuss the payment of attorneys' fees, costs, expenses, and a Service Award to Class Representatives, until after the substantive terms of the Settlement had been agreed upon. The Court has considered, *inter alia*: the benefit conferred on the Class, the complexity of the issues, the duration of the case, the risks to which Class Counsel were exposed, the experience, reputation, and skill of the attorneys involved, awards in similar cases, time and labor required, lodestar cross-check, other sources of payment and reaction of Class Members.  The Final Class Counsel Attorneys' Fees and Expenses, and Service Awards sought are to be paid from the

Final Settlement Fund. Based on the foregoing, the Court hereby grants the Amended Request for Class Representatives Service Awards and Class Counsel Attorneys' Fees and Expenses Pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2) as amended by the Supplemental Request for Class Counsel Attorneys' Fees and Expenses, and awards Class Counsels' Final Class Counsel Attorneys' Fees and Expenses in the amount of $344,449.42, which shall be paid from the Final Settlement Fund as provided in the Settlement Agreement and as directed below. The original Request for Class Representatives Service Awards and Class Counsel Attorneys' Fees and Expenses Pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2) is denied as moot. (Doc. 96).

I.      Douglas Porcelli, Joseph Moronese, Jr., and Richard Mumford are finally appointed and recognized as having acted as Class Representatives for the Settlement Class. Class Counsel has also requested the payment of Service Awards to the Class Representatives in the amount of $5,000 each for their time and efforts spent in pursuit of this litigation. The Court finds a Service Award in the amount of $5,000 for each of the Class Representatives is fair, reasonable, and adequate under the circumstances. Accordingly, the Court hereby grants Class Counsel's motion for a Service Award in the amount of $5,000 each for Class Representatives Porcelli and Mumford, which shall be paid from the Settlement Fund per the terms of the Settlement Agreement. Class Representative Joseph Moronese, Jr. has declined a Service Award.

J.      The Court notes there were no objections to the Settlement, or any matters related thereto or to the Class Representatives' Motion for Final Approval of Class Settlement, or their Request for Class Representative Service Awards and Class Counsel Attorneys' Fees and Expenses Pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2).

12170.10
12183.4
12183.6

K.      The Court further orders that, within ten (10) business days of the entry of the Final Order Approving the Class Action Settlement and the exhaustion of any appeal of such Final Order ("Final Approval Order"), the Lexon Defendants shall pay the Lexon Settlement Fund Payment in the amount of $7,750,000.00 into the Registry of the Court for immediate transfer to CRIS and the Registry of the Court shall pay from CRIS, within ten (10) days of receipt of written request from Robert G. Aitkens of Aitkens & Aitkens, P.C., the following amounts to the identified payees: (1) $10,000 for Class Representative Service Awards to Aitkens & Aitkens, P.C. at 1827 Powers Ferry Road, Building One, Suite 100, Atlanta, Georgia 30339 for payment to each of the two Class Representatives, respectively, in the amount of $5,000 each, and (2) $246,725.23 for the portion of the Final Class Counsel Attorneys' Fees and Expenses payable to Aitkens & Aitkens, P.C. to be mailed to 1827 Powers Ferry Road, Building One, Suite 100, Atlanta, Georgia 30339, (3) $97,724.19 for the portion of the Final Class Counsel Attorneys' Fees and Expenses payable to Austin & Sparks, P.C. to be mailed to 2974 Lookout Place, NE, Suite 200, Atlanta, Georgia 30305, and (4) the balance in CRIS, including all accrued interest thereon to Fidelity Bank, the Escrow Agent, care of Mr. William W. Keith, Senior Vice President, Fidelity Bank, Trust Services, 3490 Piedmont Road, NE, Suite 700, Atlanta, Georgia 30305, completing payment of the Final Settlement Fund.

L.      The Court approves the Plaintiffs' and Petitioner's Petition for Petitioner Qualified Settlement Fund, and the escrow agreement attached thereto, and will issue a separate order regarding that Petition.

M.      Upon the payment of the Lexon Settlement Fund Payment into the Registry of the Court each Settlement Class Member shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever released, relinquished, and discharged all claims

12170.10
12183.4
12183.6

against each of the Lexon Defendants, as set forth in the Settlement Agreement. Upon payment of the Lexon Settlement Fund Payment into the Registry of the Court, each Settlement Class Member shall be permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the claims against the Lexon Defendants as set forth in the Settlement Agreement.

N.      By reason of the Settlement, and approval hereof, there is no just reason for delay and the Final Order shall be deemed an appealable final order.

O.      The Action is hereby dismissed, with prejudice, as against all Defendants, on the terms and conditions set forth in the Settlement Agreement and without costs to any party, except as provided herein or in a separate order of the Court, in the Preliminary Approval Order, or in the Settlement Agreement.

P.      Jurisdiction is reserved, without affecting the finality of the Final Order, over:

1.      Effectuating, enforcing, and administering the Settlement and the terms of the Settlement Agreement, including but not limited to: (i) restoring all rights, claims, and defenses, to their exact same status as immediately prior to execution of the Term Sheet, as described in Paragraph 14 of the Settlement Agreement, (ii) altering, amending, or vacating the Final Order and Judgment; and (iii) vacating the dismissal with prejudice, in the event approval of the Settlement is not upheld on appeal or if the Settlement Agreement is terminated pursuant to its terms; and

2.      Determining whether, in the event an appeal is taken from any aspect of the Final Order, notice should be given at the appellant's expense to the Settlement Class Members

apprising them of the pendency of the appeal and such other matters pertaining to the Settlement Class as the Court may order.

SO REPORTED and RECOMMENDED this 26th day of March, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12170.10
12183.4
12183.6